LATHAM & WATKINS LLP
Timothy L. O'Mara (Bar No. 212731)
  *tim.o'mara@lw.com*
Kirsten M. Ferguson (Bar No. 252781)
  *kirsten.ferguson@lw.com*
Robin L. Gushman (Bar No. 305048)
  *robin.gushman@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600
Facsimile: +1.415.395.8095

*Attorneys for Defendants Live Nation*
*Entertainment, Inc. and Ticketmaster L.L.C.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIE BARFUSS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> LIVE NATION ENTERTAINMENT, INC., TICKETMASTER L.L.C., and DOES 1 to 100, <br><br> Defendants. | Case No. 2:23-cv-1114 <br><br> **DEFENDANTS LIVE NATION ENTERTAINMENT, INC. AND TICKETMASTER L.L.C.'S NOTICE OF REMOVAL** <br><br> *From the Superior Court of California, County of Los Angeles, Case No. 22STCV37958* |

**TO THE CLERK OF COURT, PLAINTIFFS, AND COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendants Live Nation Entertainment, Inc. ("Live Nation") and Ticketmaster L.L.C. ("Ticketmaster") (each a "Defendant" and collectively "Defendants"), through undersigned counsel, hereby file this Notice of Removal to remove the above-captioned action—with reservation of all defenses and rights—from the Superior Court of California, County of Los Angeles, to the United States District Court for the Central District of California, Western Division, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, based on the following:

**I.    THE COMPLAINT**

1.    On December 5, 2022, Plaintiffs Julie Barfuss, Randy Floyd Barfuss, Selena Monette Miller, Rumer Henry, Christy Labonne, Kris Labonne, Courtney Butler, Danielle Lips, Mark Burton, Cassandra Diamond, Edward Hakobjanyan, Jose R. Hernandez, Melissa Quintero, Jennifer Uselton, Clay Murray, Joseph Akmakjian, Lauren Michele Gotthelf, Kelli Hernandez, Michael Collins, Venisha Jardin, Emily Niklaus Davis, Jennifer Baggett, Sarah Chattin, Darcy Rubino, Jennifer Tierney, Karen Brandel, Jessica Beeker, Jennifer Beeman, Betsy Wanner, Katy Johnson, Andrew Gauteri, Aytza Gauteri, Michael Vitulli, Melony Pugh, Ashleigh Camacho, Anthony Lanni, Anthony Leblanc, Denise Hull, Jennifer Landry, Kelly Melton, Kathleen Milligan, Morgan Smallwood, Sean Smallwood, Crystal Willis, Alyssa Mccoy, Rebecca Cole, Ashley Bove, Rummer Henry, Dawn Weiczorek, and Maranda Gomez filed a Complaint in the Superior Court of California, County of Los Angeles, captioned *Julie Barfuss, et al. v. Live Nation Entertainment, Inc., et al.*, Case No. 22STCV37958.

2.    On December 14, 2022, Plaintiffs Julie Barfuss, et al. ("Plaintiffs") filed a First Amended Complaint ("Amended Complaint") in the Superior Court of California, County of Los Angeles, captioned *Julie Barfuss, et al. v. Live Nation*

1  *Entertainment, Inc., et al.*, Case No. 22STCV37958 ("State Court Action").  Among

2  other changes, the Amended Complaint added 206 additional named Plaintiffs—

3  bringing the total number of Plaintiffs to 256.

4        3.     On January 12, 2023, Plaintiffs served the Summons and Amended

5  Complaint on Defendants.

6  **II.     THIS COURT HAS DIVERSITY JURISDICTION PURSUANT TO**

7           **THE CLASS ACTION FAIRNESS ACT**

8        4.     This Court has diversity jurisdiction over this action pursuant to the

9  Class Action Fairness Act ("CAFA").  *See* 28 U.S.C. § 1332(d).  CAFA's

10  "provisions should be read broadly," and there is a "strong preference" that interstate

11  actions like this one "should be heard in a federal court if properly removed by any

12  defendant."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89

13  (2014) (quoting S. Rep. No. 109-14 at 43 (2005)).  In particular, CAFA allows

14  federal courts to exercise jurisdiction over "mass actions," defined as "any civil

15  action … in which monetary relief claims of 100 or more persons are proposed to be

16  tried jointly on the ground that the plaintiffs' claims involve common questions of

17  law or fact," 28 U.S.C. § 1332(d)(11)(B)(i), where certain requirements are satisfied.

18  Specifically, jurisdiction is proper if: (1) *any* plaintiff is a citizen of a state different

19  from *any* defendant (i.e., minimal diversity exists), and (2) the amount in

20  controversy exceeds $5 million in the aggregate and $75,000 for individual

21  plaintiffs.  28 U.S.C. §§ 1332(d)(2), (d)(6), (d)(11)(B)(i).  These requirements are

22  satisfied here.

23       **A.    This Case is a Mass Action**

24        5.     The Amended Complaint identifies 256 Plaintiffs who seek monetary

25  relief—more than double the amount required to qualify as a mass action under

26  CAFA.  *See* Am. Compl. ¶¶ 29, 32–287.  Further, the Amended Complaint does not

27  allege any facts or raise any legal questions specific to any individual Plaintiff;

28

1   rather, every allegation is made, and every claim is asserted, on behalf of all

2   Plaintiffs. *See, e.g.*, *id.* at 4 (stating that all "Plaintiffs allege as follows," before

3   setting forth all allegations in the Amended Complaint). There can be no dispute

4   that this case is a "mass action" as defined by CAFA.

5       **B.    Minimal Diversity Is Satisfied**

6       6.    For purposes of establishing federal jurisdiction, CAFA requires only

7   minimal diversity—that is, at least one plaintiff must be a citizen of a state different

8   from the state of citizenship of any named defendant. 28 U.S.C. § 1332(d)(2)(A).

9       7.    "[A] corporation shall be deemed to be a citizen of every State and

10  foreign state by which it has been incorporated and of the State or foreign state where

11  it has its principal place of business." 28 U.S.C. § 1332(c)(1). At the time of the

12  filing of this lawsuit, and at the time of removal, Defendant Live Nation was and is

13  a corporation incorporated under the laws of Delaware, with its principal place of

14  business in Beverly Hills, California. Am. Compl. ¶ 289. Live Nation is therefore

15  a citizen of Delaware and California under 28 U.S.C. § 1332(c)(1).

16      8.    "[A]n unincorporated association shall be deemed to be a citizen of the

17  State where it has its principal place of business and the State under whose laws it is

18  organized." 28 U.S.C. § 1332(d)(10). For the purpose of determining minimal

19  diversity under CAFA, a limited liability company ("LLC") is deemed an

20  "unincorporated association." *Jack v. Ring LLC*, 553 F. Supp. 3d 711, 714–16 (N.D.

21  Cal. 2021) (in a matter of first impression, "it seems likely that the Ninth Circuit

22  would consider an LLC an unincorporated association under § 1332(d)(10)); *see*

23  *also Lethgo v. CP IV Waterfront, LLC*, 2022 WL 2177125, at *6 (D. Haw. June 16,

24  2022) ("Although an LLC ordinarily shares the citizenships of all of its

25  owners/members in diversity cases, courts treat LLCs as unincorporated associations

26  under CAFA, so they are citizens of the states under whose laws they are organized

27  and the states where they have their principal places of business.") (citations

28

1   omitted).   At the time of the filing of this lawsuit, and at the time of removal,
2   Defendant Ticketmaster was and is an LLC organized and existing under the laws
3   of the Commonwealth of Virginia, with its principal place of business in Beverly
4   Hills, California.  Am. Compl. ¶ 290.  Ticketmaster is therefore a citizen of Virginia
5   and California under 28 U.S.C. § 1332(d)(10).

6       9.      A person's state citizenship is determined by her state of domicile.
7   Many of the Plaintiffs in this case are domiciled in states *other* than Delaware,
8   California, and Virginia—such as Utah, Alabama, Arkansas, Arizona, Colorado,
9   Florida, and Georgia, just to name a few—and so are diverse from both Live Nation
10  and Ticketmaster.  *See* Am. Compl. ¶¶ 32–287.

11      10.     Minimal diversity therefore exists because at least one Plaintiff is a
12  citizen of a different state than either Defendant.  *See* 28 U.S.C. § 1332(d)(2)(A).

13  **C.    The Alleged Amount in Controversy Exceeds $5 Million in the**
14  **       Aggregate and $75,000 for Each Plaintiff**

15      11.     CAFA provides that, "[i]n any class [or mass] action, the claims of the
16  individual class members [or plaintiffs] shall be aggregated to determine whether
17  the matter in controversy exceeds the sum or value of $5,000,000, exclusive of
18  interest and costs."  28 U.S.C. §§ 1332(d)(6), (d)(11)(A).  In the case of mass actions
19  (as opposed to traditional class actions), there is an additional requirement that
20  "jurisdiction shall exist only over those plaintiffs whose claims in a mass action
21  satisfy the jurisdictional amount requirements under [28 U.S.C. § 1332(a)]," which
22  requires that the amount in controversy exceed $75,000.    28 U.S.C.
23  § 1332(d)(11)(B)(i).  In other words, CAFA confers federal jurisdiction over a mass
24  action where the aggregate amount in controversy exceeds $5 million, and over
25  individual plaintiffs participating in that mass action where their individual amount
26  in controversy exceeds $75,000.

27

28

12.    The amount in controversy is first assessed by reviewing the allegations of the operative complaint. *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 998 (9th Cir. 2007), *overruled on other grounds as recognized by Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013) ("Our starting point is 'whether it is "facially apparent" from the complaint that the jurisdictional amount is in controversy.'") (citation omitted).  Where, as here, "the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so." *Dart Cherokee*, 574 U.S. at 84.  Evidentiary submissions are not required to establish the amount in controversy.  *Id*. at 81; *see also Salter v. Quality Carriers, Inc.,* 974 F.3d 959, 963 (9th Cir. 2020) (same).  Rather, Defendants need only provide "a short and plain statement of the grounds for removal," 28 U.S.C. § 1446(a), containing "only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 574 U.S. at 89.  As the Ninth Circuit has explained, the amount in controversy under CAFA is the "amount *at stake*" in the litigation; it "does not mean likely or probable liability [but] rather … refers to possible liability." *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 772 (9th Cir. 2020)

13.    Plaintiffs do not allege a specific dollar amount of damages in their Amended Complaint, but they do seek damages and attorneys' fees—plus numerous other forms of relief—based on sweeping allegations of anticompetitive conduct that touch on virtually every aspect of Defendants' business.  These allegations are entirely without merit, and Defendants deny any and all liability.  But for purposes of this Notice of Removal, taking Plaintiffs' allegations as true and correct, Defendants believe and allege that the "possible" amount in controversy could easily exceed $5,000,000 in aggregate, and $75,000 for each individual Plaintiff, exclusive of interest and costs.  *See Dart Cherokee*, 574 U.S. at 89; *Greene*, 965 F.3d at 772.

14.    Plaintiffs' allegations include, for example, that: "Ticketmaster is the dominant online venue for concert presale, sale, and resale in the United States," and "has violated the policy, spirit, and letter of [the California antitrust laws] by imposing agreements and policies at the retail and wholesale level that have prevented effective price competition across a wide swath of online ticket sales," Am. Compl. ¶ 26; that "Ticketmaster is a monopoly that is only interested in taking every dollar it can from a captive public," *id.* ¶ 27; that "Ticketmaster has allied with stadiums to entrench its dominance to harm consumers in California and across the United States," *id.* ¶ 28; and that "Defendant's anticompetitive behavior has substantially harmed and will continue to substantially harm … competition in the ticket sales marke[t] and the Secondary Ticket Services Market," *id.* ¶ 1, "affecting a not insubstantial volume of commerce," *id.* ¶ 337.  In addition to all that, Plaintiffs also claim that Defendants have engaged in unlawful tying arrangements, exclusive dealings, price discrimination, price fixing, and various group boycotts and market division schemes with competitors. *See id.* ¶¶ 332–88.  As a result of that alleged conduct, Plaintiffs claim that Ticketmaster has "remov[ed] competition from both the Primary and Secondary [ticketing] markets," and "gained inflated revenues otherwise unavailable to it." *Id.* ¶ 6.  Plaintiffs do not allege the specific amount of these supposedly "inflated revenues," but they do claim that "Ticketmaster is the largest ticketing company and the dominant provider of Primary Ticket Platform services in the U.S. with 2014 revenues of approximately $1.55 billion." *Id.* ¶ 291.

15.    Plaintiffs use these sweeping allegations as the basis for their claims for damages and attorneys' fees in each of their Causes of Action:

a.    The First, Second, Third, and Fourth Causes of Action (for breach of contract, intentional misrepresentation, fraud, and fraudulent inducement, respectively) each allege that Plaintiffs "sustained damages proximately caused by Ticketmaster … in

the amount of thousands of dollars."  Am Compl. ¶¶ 299, 309, 316, 321.  Additionally, the Third and Fourth Causes of Action (for fraud and fraudulent inducement) also each allege that "Plaintiffs should recover, in addition to actual damages, damages to make an example of and to punish Ticketmaster in an amount to be proven at trial."  *Id.* ¶¶ 318, 323.  Plaintiffs also allege in each of these Causes of Action that they are entitled to attorneys' fees.  *Id.* ¶¶ 300, 310, 317, 322.

b.    The Fifth Cause of Action asserts six separate claims for purported "antitrust violations" (i.e., unlawful tying, exclusive dealings, price discrimination, price fixing, group boycotting, and market division scheme), each of which alleges that: (1) "Ticketmaster's antitrust violations have caused substantial economic injury to Plaintiffs in an amount not presently known with precision, but which is, at minimum, thousands of dollars" and (2) "Plaintiffs should recover, in addition to actual damages, damages to make an example of and to punish Ticketmaster in an amount to be proven at trial."  *Id.* ¶¶ 344, 346, 353, 355, 362, 364, 371, 373, 378, 380, 386, 388.  Plaintiffs also allege in each of these antitrust claims that they are entitled to attorneys' fees. *Id.* ¶¶ 345, 354, 363, 372, 379, 387.

c.    The Sixth Cause of Action (for alleged violation of "California UCL Section 17200") alleges that: (1) "Ticketmaster's unlawful, unfair, and deceptive business practices have caused substantial economic injury to Plaintiffs in an amount not presently known with precision, but which is, at minimum, thousands of dollars," and (2) "Plaintiffs should recover, in addition to actual damages,

damages to make an example of and to punish Ticketmaster in an amount to be proven at trial." *Id.* ¶¶ 401, 403. Plaintiffs also allege in this Cause of Action that they are entitled to attorneys' fees. *Id.* ¶ 402.

16.    Plaintiffs use their sweeping allegations of anticompetitive conduct to support numerous additional forms of relief in their Prayer for Relief, including:

a.    Treble damages, *id.* at 43;

b.    That the Court order "such mandatory injunctions as may reasonably be necessary to restore and preserve fair competition," *id.* at 43–44;

c.    That Ticketmaster "disgorg[e] ill-gotten gains arising from its anticompetitive acts," *id.* at 44;

d.    That "Ticketmaster be ordered to compensate Plaintiffs for the deadweight loss to the economy caused by these acts," *id.* at 44;

e.    That the Court "enter all orders or judgments as may be necessary to restore to any person in interest any money or other property that Ticketmaster may have acquired by violations of [California] Business and Professions Code section 17200," *id.* at 44;

f.    That the Court assess a civil penalty of $2,500 against Ticketmaster for *each* violation of California Business and Professions Code section 17200, *id.* at 44;[1] and

---

[1]    Plaintiffs allege that virtually every aspect of Ticketmaster's business constitutes a violation of California's Unfair Competition Law—including Ticketmaster's contracts with venues, how Ticketmaster enforces its contractual rights, how Ticketmaster sells primary tickets, how Ticketmaster sells secondary tickets, the manner in which Ticketmaster delivers tickets, the fact that Ticketmaster uses digital tickets, and representations that Ticketmaster makes about its tickets and sales. *See id.* ¶¶ 389–403.

g.    That Plaintiffs recover their costs of suit, including attorneys' fees, *id.* at 44.

17.    All of Plaintiffs' requested relief may be considered in calculating the amount in controversy—including actual damages, punitive damages, treble damages, injunctive relief, attorneys' fees, etc. *See, e.g., Davenport v. Mut. Benefit Health & Accident Ass'n*, 325 F.2d 785, 787 (9th Cir. 1963) (punitive damages may be considered in calculating the amount in controversy); *Borgeson v. Archer-Daniels Midland Co.*, 909 F. Supp. 709, 719 (C.D. Cal. 1995) (treble damages under the Cartwright Act may be considered in calculating the amount in controversy); *Cohn v. Petsmart, Inc.,* 281 F.3d 837, 840 (9th Cir. 2002) (injunctive relief in the form of "the object of the litigation" may be considered in calculating the amount in controversy); *Goldberg v. CPC Intern., Inc.*, 678 F.2d 1365, 1367 (9th Cir. 1982) (attorney's fees can be taken into account in determining the amount in controversy if a statute authorizes fees to a successful litigant, and the Cartwright Act so authorizes under Cal. Bus. & Prof. Code § 16750(a)); *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) (projected future amount of attorneys' fees required to litigate the case through trial counts toward the amount in controversy calculation). Moreover, in addition to Plaintiffs' requests for damages, injunctive relief, and attorneys' fee, any requests for relief that would entail a payment by Defendants—including, for example, disgorgement of "ill-gotten gains," compensation "for the deadweight loss to the economy," restoration of "any money or other property … acquired by violations of … section 17200," and "a civil penalty of two thousand five hundred dollars ($2,500) against Ticketmaster for each violation of … section 17200," Am. Compl. at 43–44—must also be included in calculating the amount in controversy. *See Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007) (even though certain relief sought by plaintiffs (such as back payment of benefits and taxes, and an accounting of moneys due to plaintiffs)

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFS.' NOTICE OF REMOVAL
CASE NO. 2:23-cv-1114

"do not fall comfortably within the realm of 'damages' and are not labeled as such in the Prayer for Relief," such relief must be included in calculating the amount in controversy because "the recovery sums would entail a payment by [defendant]").

18.    Since Plaintiffs do not allege a specific dollar amount (or even a ballpark range) of damages in their Amended Complaint, a look at other antitrust cases that have been filed against Defendants is illustrative.  For example, in *Oberstein, et al. v. Live Nation Entertainment, Inc., et al.*, No. 2:20-cv-03888-GW-GJS (C.D. Cal.) and *Heckman, et al. v. Live Nation Entertainment, Inc., et al.*, No. 2:22-cv-00047-GW-GJS (C.D. Cal.), plaintiffs allege that Defendants Live Nation and Ticketmaster have engaged in an "anticompetitive scheme" (similar to what Plaintiffs allege here)[2] in violation of Sections 1 and 2 of the Sherman Act, affecting "*billions* of dollars of commerce."  *Oberstein* Am. Compl. ¶ 136(d), ECF No. 81; *Heckman* Compl. ¶ 142(d), ECF No. 1 (emphasis added).  Plaintiffs in *Oberstein* and *Heckman* further allege that "Live Nation's 2019 revenues were approximately $11.5 billion," that "Ticketmaster's 2019 revenues were "approximately $1.54 billion," and that Ticketmaster's profit margin exceeds 80%.  *See Oberstein* Am. Compl. ¶¶ 16-17, 18(b); *Heckman* Compl. ¶¶ 21-22, 23(b); *compare* Am. Compl. ¶ 291 (alleging, in this case, that Ticketmaster's revenues in 2014 were $1.55 billion).  Consider these numbers in light of the sweeping allegations in this case—which claim that virtually every aspect of Defendants' ticketing business is somehow unlawful—and the requested disgorgement of alleged "ill-gotten gain" alone could exceed the amount in controversy required for removal.

---

[2]    Defendants are concurrently filing a Notice of Related Cases to relate the present action to *Oberstein* and *Heckman*—both of which, like this case, allege that Live Nation and Ticketmaster violated antitrust laws by (*inter alia*) conditioning the provision of primary ticketing services on the use of secondary ticketing services, entering into long-term exclusive dealing contracts for the provision of primary and secondary ticketing services, and agreeing with and/or coercing ticket brokers and other ticket resellers to boycott Ticketmaster's competitors.  *See* Notice of Related Cases at 2.  These similarities inform the possible damages at stake in this case.

19.     Other antitrust lawsuits asserting similar claims and causes of action—e.g., market allocation, exclusive dealing, price-fixing, price discrimination, group boycotting, tying, and violations of the Cartwright Act and California's Unfair Competition Law—against other large companies likewise claim massive possible damages. *See, e.g.*, *Ackers v. Google*, No. 5:19-cv-05537 (N.D. Cal.), Compl. at 3–5, ECF No. 1-1 (plaintiffs, Google customers, alleged violations of the Cartwright Act—including for alleged price discrimination—and California's Unfair Competition Law, and prayed for ***$1 billion*** in damages); *Rumble, Inc. v. Google LLC*, No. 4:21-cv-00229, Compl. ¶¶ 1, 71–105, ECF No. 1 (antitrust lawsuit against Google for Sherman Act violations, including for alleged tying arrangements, alleged ***$2 billion*** in damages); *INDMEX, Inc. v. L3Harris Techs., Inc.*, No. 1:20-cv-00727 (E.D. Va.), Am. Compl. ¶¶ 194–281, ECF No. 34 (antitrust lawsuit against L3Harris, a large aerospace and defense company, alleged market allocation, exclusive dealings, price fixing, group boycott and tying, and claimed ***$47 million*** in damages); *In re: Google Play Store Antitrust Litig.*, No. 3:21-md-02981-JD (N.D. Cal.), Consolidated Second Am. Class Action Compl. ¶¶ 282–362, ECF No. 172, and Order re Consumer Pls.' Class Certification Mot. and Defs.' Mot. to Exclude Expert Testimony at 18, ECF No. 383 (in consumer antitrust class action against Google for violations of the Cartwright Act and California's Unfair Competition Law—including for alleged "establishment and maintenance of supra-competitive pricing," tying, "imposing unnecessary technological barriers" to exclude competition, and "fraudulent" conduct—plaintiffs' expert calculated an aggregate alleged damage figure of ***$4.71 billion***); *Donald R. Cameron, et. al. v. Apple Inc.*, No. 4:19-cv-03074-YGR (N.D. Cal.), Compl. ¶¶ 118–53, ECF No. 1, and Order Granting Mot. for Final Approval of Class Action Settlement at 14, ECF No. 491 (antitrust class action of application developers against Apple alleging violations of the Sherman Act, including for alleged price fixing, and California's Unfair

Competition Law settled for ***$100 million***); *In re: Blue Cross Blue Shield Antitrust Litig.*, No. 2:13-cv-20000-RDP (N.D. Ala.), Final Order Granting Approval of Subscriber Class Action Settlement at 1–2, 9, ECF No. 2931 (antitrust class action by subscribers against Blue Cross Blue Shield alleging Sherman Act violations, including for alleged market division scheme, settled for ***$2.67 billion***); *In re: Urethane Antitrust Litig.*, No. 2:04-md-01616-JWL (D. Kan.), First Am. Consolidated Compl. ¶¶ 43–46, ECF No. 307, and Am. Judgment at 1, ECF No. 2964 (antitrust class action against the Dow Chemical Company for Sherman Act violations—including for alleged price fixing and market division scheme— obtained a jury verdict award of ***$1 billion***).  The possible damages for these kinds of antitrust cases (like this one) are so large because of the size of the companies being sued, the amount of commerce and revenue potentially impacted by the alleged conduct, and the availability of treble damages.

20.    Again, to support removal, there need "only [be] a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 574 U.S. at 89.  That standard is easily satisfied here.  As discussed above, antitrust lawsuits against Defendants with similar allegations, as well as other antitrust lawsuits against large companies such as Defendants, have alleged aggregate damages well above the jurisdictional threshold—potentially in the billions of dollars.  Given the damages claims in similar cases, and considering Plaintiffs' sweeping allegations and all of the relief requested—including, a minimum of "thousands of dollars" of actual damages allegedly suffered by Plaintiffs under each Cause of Action, treble damages and "damages to make an example of and to punish Ticketmaster," "such mandatory injunctions as may reasonably be necessary to restore and preserve fair competition," disgorgement of "ill-gotten gains," compensation for "deadweight loss to the economy," restoration of "any money or other property" that Ticketmaster allegedly illegally acquired, civil penalty of $2,500

DEFS.' NOTICE OF REMOVAL
CASE NO. 2:23-cv-1114

1  for each violation of alleged violation of unfair competition laws, *plus* attorneys'

2  fees (Am. Compl. at 42–44)—it is certainly plausible that the amount in controversy

3  could far exceed $5,000,000 in the aggregate, and $75,000 for each Plaintiff, if

4  Plaintiffs prevail. *See Dart Cherokee*, 574 U.S. at 89; *Greene*, 965 F.3d at 772; *Aana*

5  *v. Pioneer Hi-Bred Intern., Inc.,* 2012 WL 3542503, at *2 (D. Haw. 2012)

6  (calculating individual amount in controversy by dividing the aggregate amount in

7  controversy by the number of plaintiffs).    Accordingly, the amount in controversy

8  requirements of CAFA are satisfied here.    *See* 28 U.S.C. §§ 1332(d)(2),

9  1332(d)(11)(B)(i).

10  **III.    VENUE AND INTRA-DISTRICT ASSIGNMENT**

11         21.    Because Plaintiffs' First Amended Complaint was filed in the Superior

12  Court of California, County of Los Angeles, this district and its Western Division

13  are the proper venue and intra-district assignment for this action upon removal, as

14  they encompass the location in which the State Court Action is currently pending

15  (i.e., Los Angeles, California).  *See* 28 U.S.C. § 1441(a) ("any civil action brought

16  in a State court of which the district courts of the United States have original

17  jurisdiction, may be removed by the defendant or the defendants, to the district court

18  of the United States for the *district* and *division* embracing the place where such

19  action is pending") (emphasis added).

20         22.    For the purpose of efficiency, Defendants are concurrently filing a

21  Notice of Related Cases to relate the action to *Oberstein, et al. v. Live Nation*

22  *Entertainment, Inc., et al.*, No. 2:20-cv-03888-GW-GJS (C.D. Cal.), *Heckman, et al.*

23  *v. Live Nation Entertainment, Inc., et al.*, No. 2:22-cv-00047-GW-GJS (C.D. Cal.),

24  and *Sterioff v. Live Nation Entertainment, Inc., et al.*, 2:22-cv-09230-GW-GJS (C.D.

25  Cal.), over all of which Hon. George H. Wu presides.  Defendants respectfully

26  request that this case be assigned to Judge Wu upon removal.

27

28

## IV.    COMPLIANCE WITH 28 U.S.C. § 1446

23.    This Notice of Removal is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure. *See* 28 U.S.C. § 1446(a).

24.    The Summons and Amended Complaint were personally served on Defendants on January 12, 2023. Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of the Summons, Amended Complaint, Notice of Service of Process, and other pleadings are attached hereto as Exhibits 1–12. Exhibits 1–12 constitute all of the process, pleadings, and orders served on Defendants to date in the State Court Action.

25.    This Notice of Removal is timely, as it is filed within thirty (30) days of Defendants' receipt of the Summons and Amended Complaint. *See* 28 U.S.C. § 1446(b)(2)(B); *Murphy Bros v. Michetti Pipe Stringing*, 526 U.S. 344, 347–48 (1999) ("service of the summons and complaint" triggers removal deadline).

26.    Defendants will serve written notice of the removal of this action upon all adverse parties promptly, and will file such notice with the Clerk of the Superior Court of California, County of Los Angeles, as required by 28 U.S.C. § 1446(d).

27.    Defendants do not waive, and expressly reserve, all objections, defenses, and exceptions to the Amended Complaint authorized by law, including but not limited to those permitted pursuant to Rule 12 of the Federal Rule of Civil Procedure.

Dated: February 14, 2023            Respectfully Submitted,

LATHAM & WATKINS LLP

By:    */s/* Timothy L. O'Mara
Timothy L. O'Mara

*Attorneys for Defendants Live Nation Entertainment, Inc. and Ticketmaster L.L.C.*