LATHAM & WATKINS LLP
  Timothy L. O'Mara (Bar No. 212731)
    *tim.o'mara@lw.com*
  Kirsten M. Ferguson (Bar No. 252781)
    *kirsten.ferguson@lw.com*
  Robin L. Gushman (Bar No. 305048)
    *robin.gushman@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone:  +1.415.391.0600
Facsimile:  +1.415.395.8095

*Attorneys for Defendants Live Nation
Entertainment, Inc. and Ticketmaster L.L.C.*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIE BARFUSS, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>LIVE NATION ENTERTAINMENT, INC., TICKETMASTER L.L.C., KROENKE SPORTS & ENTERTAINMENT, LLC, SOFI TECHNOLOGIES, INC. and DOES 1 through 10, inclusive,<br><br>    Defendants. | Case No. 2:23-cv-01114-GW-KK<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**<br><br>Judge: Honorable George H. Wu<br><br>Hearing Date: July 20, 2023<br><br>Hearing Time: 8:30 a.m. |

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFS.' OPP. TO
PLS.' MOT. TO REMAND
CASE NO. 2:23-cv-01114-GW-KK

1
2

# TABLE OF CONTENTS

3  I.    INTRODUCTION ................................................................................. 1

4  II.   FACTUAL BACKGROUND ................................................................ 2

5  III.  LEGAL FRAMEWORK ...................................................................... 3

6  IV.   ARGUMENT ....................................................................................... 7

7        A.    Defendants Made a Plausible Allegation That the
             Amount in Controversy Exceeds CAFA's Thresholds for
8             Mass Actions ............................................................................... 7

9        B.    Plaintiffs Mount Only a Facial Attack on Defendants'
             Amount-in-Controversy Assessment ......................................... 9
10

11       C.    Plaintiffs' Estimate of $45,000 in Individual Damages
             Improperly Excludes Many of the Claims in the
             Complaint ................................................................................... 11
12

13 V.    CONCLUSION .................................................................................. 16

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFS.' OPP. TO
PLS.' MOT. TO REMAND
CASE NO. 2:23-cv-01114-GW-KK

1

2

# TABLE OF AUTHORITIES

3

**CASES**

4

5

*Aana v. Pioneer Hi-Bred Intern., Inc.*,
   2012 WL 3542503 (D. Haw. July 24, 2012) .........................................................4

6

7

*Arias v. Residence Inn by Marriott*,
   936 F.3d 920 (9th Cir. 2019) ...................................................................4, 5, 8

8

9

*Chavez v. JPMorgan Chase & Co.*,
   888 F.3d 413 (9th Cir. 2018) ...........................................................4, 6, 7, 12, 13

10

*Corral v. Select Portfolio Servicing, Inc.*,
   878 F.3d 770 (9th Cir. 2017) ........................................................................4, 7

11

12

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
   574 U.S. 81 (2014) ........................................................................5, 6, 7, 9, 11

13

14

*Ehrman v. Cox Commc'ns, Inc.*,
   932 F.3d 1223 (9th Cir. 2019) ..................................................................6, 10, 11

15

16

*Fierro v. Cap. One, N.A.*,
   2022 WL 17486364 (S.D. Cal. Dec. 6, 2022) .....................................................11

17

18

*In re Ford Motor Co./Citibank (S. Dakota), N.A.*,
   264 F.3d 952 (9th Cir. 2001) ........................................................................16

19

20

*Giannattasio v. McLaren Auto., Inc.*,
   2023 WL 3138979 (N.D. Cal. Mar. 26, 2023) ...................................................11

21

22

*Greene v. Harley-Davidson, Inc.*,
   965 F.3d 767 (9th Cir. 2020) ...................................................................4, 5, 9

23

*Harris v. KM Indus., Inc.*,
   980 F.3d 694 (9th Cir. 2020) ................................................................2, 5, 6, 8

24

25

*Pagel v. Dairy Farmers of Am., Inc.*,
   986 F. Supp. 2d 1151 (C.D. Cal. 2013) ...........................................................16

26

27

*Salter v. Quality Carries, Inc.*,
   974 F.3d 959 (9th Cir. 2020) .......................................................1, 2, 5, 6, 9, 10, 11

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFS.' OPP. TO
PLS.' MOT. TO REMAND
CASE NO. 2:23-cv-01114-GW-KK

*St. Paul Mercury Indem. Co. v. Red Cab Co.*,
303 U.S. 283 (1938) ........................................................................... 4, 13

*Sylvester v. Menu Foods, Inc.*,
2007 WL 4291024 (D. Haw. Dec. 5, 2007) ........................................ 5

*Vasquez v. RSI Home Prod., Inc.*,
2020 WL 6778772 (C.D. Cal. Nov. 12, 2020) .............................. 11, 12

*Whitehurst v. Dollar Tree Stores, Inc.*,
2022 WL 462937 (E.D. Cal. Feb. 15, 2022) ...................................... 13

*Williams v. Costco Wholesale Corp.*,
471 F.3d 975 (9th Cir. 2006) ............................................................ 4

*Yocupicio v. PAE Grp., LLC*,
2014 WL 7405445 (C.D. Cal. Dec. 29, 2014), *rev'd on other
grounds*, 795 F.3d 1057 (9th Cir. 2015) .......................................... 16

**STATUTES**

28 U.S.C.
§ 1332(d) ............................................................................................ 3
§ 1446(a) ............................................................................................ 5

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
SAN FRANCISCO

DEFS.' OPP. TO
PLS.' MOT. TO REMAND
CASE NO. 2:23-cv-01114-GW-KK

# I.      INTRODUCTION

This Court has diversity jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), which allows federal courts to exercise jurisdiction over "mass actions" like this one.   Plaintiffs admit that all but one of CAFA's requirements for jurisdiction are satisfied here; the only disputed issue is whether the amount in controversy exceeds $5 million in the aggregate and $75,000 for the individual Plaintiffs.  The law is clear that, to establish the amount in controversy and remove a case, evidentiary submissions are <u>not</u> required; rather, a defendant need only provide a "short and plain" statement that the amount in controversy could plausibly exceed CAFA's thresholds, considering all of the relief requested in the operative complaint at the time of removal, and based on reasonable assumptions about the allegations and claims for relief.  Defendants' Notice of Removal more than satisfied that requirement: it carefully analyzed the allegations and claims for relief in the operative complaint at the time of removal, compared the aggregate damages in other, similar antitrust cases, and demonstrated how the allegations and claims in this case could plausibly exceed CAFA's amount-in-controversy thresholds.

In their motion, Plaintiffs do not argue that Defendants misrepresented the complaint or made unreasonable assumptions in assessing the plausible amount in controversy—indeed, Plaintiffs do not even address Defendants' assessment <u>at all</u>. Instead, they simply demand that Defendants prove that the amount in controversy exceeds the jurisdictional threshold.  *See* Mot. to Remand at 7–10, ECF No. 54 ("Mot.").  The law, however, demands much more from Plaintiffs than a bare denial before Defendants must present additional evidence of the amount in controversy. *See Salter v. Quality Carries, Inc.*, 974 F.3d 959, 964–65 (9th Cir. 2020). Specifically, to shift an evidentiary burden to Defendants, Plaintiffs were required to actually challenge Defendants' factual assertions, interpretations of the complaint, and/or underlying assumptions.  "Instead, [Plaintiffs' motion] only argued that [Defendants] must support [their] assertion with competent proof"; as the Ninth

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEFS.' OPP. TO
PLS.' MOT. TO REMAND
CASE NO. 2:23-cv-01114-GW-KK

Circuit has (repeatedly) made clear, that's not enough to "contest" a defendant's allegation of the amount in controversy.  *Id.* at 964; *see also Harris v. KM Indus., Inc.*, 980 F.3d 694, 700 (9th Cir. 2020).

Plaintiffs do offer their own, back-of-the-envelope estimate of the amount in controversy.  But that estimate only underscores why Plaintiffs' motion should be denied.  In particular, Plaintiffs estimate that their compensatory and punitive damages, together with attorneys' fees, amount to as much as $45,000 per Plaintiff. Plaintiffs' estimate, however, is expressly limited to their claim "that defendants' conduct prevented them from buying [Taylor Swift] tickets at all or at the initial price offered … which ranged from $49 to $449."  Mot. at 9.  <u>That claim is merely one (of many) claims asserted in the operative complaint at the time of removal</u>. Indeed, Plaintiffs' $45,000 "estimate" fails to account for the most significant relief requested—including, *inter alia*, Plaintiffs' claims for disgorgement of "ill-gotten gains," compensation for "deadweight loss to the economy," "mandatory injunctions as … necessary to restore and preserve fair competition," civil penalties of $2,500 per violation of California's Unfair Competition Law, and costs of suit on <u>all</u> claims (including attorneys' fees).  *See* First Am. Compl. at 58–59 (Prayer for Relief), ECF No. 1-1 ("FAC").  Those requests for relief could plausibly—and easily—exceed CAFA's amount-in-controversy thresholds.  And yet Plaintiffs ignore them entirely when estimating the amount in controversy.  The law is clear, however, that Plaintiffs cannot ignore or disclaim allegations and claims in their complaint in order to evade federal jurisdiction.

All of CAFA's jurisdictional requirements for a mass action are met here.  The Court has jurisdiction over this action, and Plaintiffs' motion should be denied.

## II.   FACTUAL BACKGROUND

On December 5, 2022, Plaintiffs filed their Complaint in the Superior Court of California, County of Los Angeles; that initial complaint included 50 individual Plaintiffs.  Plaintiffs subsequently filed a First Amended Complaint on December

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEFS.' OPP. TO
PLS.' MOT. TO REMAND
CASE NO. 2:23-cv-01114-GW-KK

14, 2022; that complaint (served on January 12, 2023) added an additional 206 individual Plaintiffs, bringing the total to 256. Because adding hundreds of Plaintiffs brought this case squarely within the jurisdictional requirements of CAFA's mass action provisions, *see* 28 U.S.C. § 1332(d), Defendants removed the action to this Court on February 14, 2023. Notice of Removal, ECF No. 1 ("Notice").

Following removal, on April 6, 2023, Plaintiffs unilaterally filed a Second Amended Complaint, without Defendants' stipulation or the Court's permission.[1] ECF No. 44. Plaintiffs subsequently filed the instant motion on June 5, 2023. *See* Mot. at 3.

## III.   LEGAL FRAMEWORK

CAFA allows federal courts to exercise jurisdiction over "mass actions" where (1) "monetary relief claims of 100 or more persons are proposed to be tried jointly," (2) minimal diversity is satisfied, and (3) the amount in controversy exceeds $5 million in the aggregate and $75,000 for individual plaintiffs. 28 U.S.C. §§ 1332(d)(2), (d)(6), (d)(11)(B)(i). Plaintiffs do not contest that the first and second requirements are satisfied here. *See* Mot. at 5 n.1. They allege only that Defendants have not produced sufficient proof of the amount in controversy. *See id.* at 3. Specifically, Plaintiffs claim that Defendants bear the sole burden of proving, via "competent proof … such as affidavits or declarations, or other summary-judgment-type evidence," that the amount in controversy exceeds the jurisdictional minimums, while Plaintiffs "need not and thus do not" offer any proof of their own. Mot. at 8–9. That's not the law.

The amount in controversy is first assessed by reviewing the allegations of the operative complaint at the time of removal—specifically, by considering all of Plaintiffs' requested relief together, including actual damages, punitive damages,

---

[1] Plaintiffs' Motion notes that the Second Amended Complaint "adds defendants Kroenke Sport & Entertainment, LLC and SoFi Technologies, Inc.," as well as additional named Plaintiffs. Mot. at 2. To Defendants' knowledge, neither Kroenke Sport & Entertainment, LLC nor SoFi Technologies, Inc. have been served.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEFS.' OPP. TO
PLS.' MOT. TO REMAND
CASE NO. 2:23-cv-01114-GW-KK

treble damages, injunctive relief, attorneys' fees, and any other requests for relief that would entail a payment by Defendants. *See Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018) (explaining that the amount in controversy includes all amounts "at stake" in the litigation at the time of removal, "whatever the likelihood that [the plaintiff] will actually recover them"); Notice at 5, 9–10 (collecting cases).[2]  If that plausibly could exceed $5 million, the first part of CAFA's amount-in-controversy requirement is satisfied.  *See Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 772 (9th Cir. 2020); *see also Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019) (explaining that defendants merely need to show, using plausible assumptions, that the potential recovery "could exceed" the CAFA thresholds).  The next step is to calculate the individual amount in controversy.  Where (as here) the complaint makes <u>all</u> allegations on behalf of <u>all</u> plaintiffs, the individual amount in controversy may be calculated by dividing the aggregate amount in controversy by the total number of plaintiffs.[3]  *See, e.g.*, *Aana v. Pioneer Hi-Bred Intern., Inc.*, 2012 WL 3542503, at *2 (D. Haw. July 24, 2012)

---

[2]  "[T]he operative complaint at the time of removal" is the relevant complaint for purposes of the remand and removal analysis.  *Corral v. Select Portfolio Servicing, Inc.*, 878 F.3d 770, 774 (9th Cir. 2017); *see also Chavez*, 888 F.3d at 417 ("[W]e consider damages that are claimed at the time the case is removed by the defendant.").  Amended complaints filed after removal are not considered.  *See, e.g.*, *Williams v. Costco Wholesale Corp.*, 471 F.3d 975, 976 (9th Cir. 2006) ("post-removal amendments to the pleadings cannot affect whether a case is removable"); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 292 (1938) (if "plaintiff after removal … by amendment of his pleadings, reduces the claim below the requisite amount, this does not deprive the district court of jurisdiction.").

[3]  Plaintiffs advance what they claim is a novel interpretation of CAFA's individual amount-in-controversy requirement—one which would require Defendants to provide individualized evidence of the amount in controversy for <u>each</u> of 100 or more named Plaintiffs (e.g., for Julie Barfuss, and for Randy Floyd Barfuss, and for Selena Monette Miller, etc.), and would not allow Defendants to calculate the individual amount in controversy by dividing the aggregate amount by the total number of plaintiffs.  *See* Mot. at 7–9.  The district court in *Aana v. Pioneer Hi-Bred Intern* rejected this argument.  2012 WL 3542503, at * 2.  There, the court reasoned that, in light of the total alleged aggregate damages, the per-plaintiff damages would be higher than $75,000.  *Id.*  Consequently, because the amount in controversy plausibly exceeded CAFA's thresholds, the onus was on <u>plaintiffs</u> to "show[] that this action consists of <u>less</u> than 100 plaintiffs claiming damages of at least $75,000." *Id.* (emphasis added).  Since the plaintiffs (like Plaintiffs here) had not done so, the court found that the case "meets the statutory requirements for a mass action."  *Id.*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

DEFS.' OPP. TO
PLS.' MOT. TO REMAND
CASE NO. 2:23-cv-01114-GW-KK

(calculating individual amount in controversy by tallying the total, aggregate damages—i.e., $20M plus $8M plus $9M—and reasoning that, in light of that total amount, "[t]he per plaintiff damages sought are much higher than $75,000, and in the absence of evidence indicating that particular plaintiffs fall below that threshold, this action meets the statutory requirements of a mass action"); *Sylvester v. Menu Foods, Inc.*, 2007 WL 4291024 at *6 (D. Haw. Dec. 5, 2007) (calculating the amount in controversy as follows: "$150,000 [in aggregate compensatory damages] ÷ 10 [the number of individual plaintiffs] = $15,000 per Plaintiff in compensatory damages; $500,000 [in aggregate punitive damages] ÷ 10 [the number of individual plaintiffs] = $50,000 per Plaintiff in punitive damages; $15,000 + $50,000 + $6,750 = $71,750 total amount in controversy per Plaintiff."). If that individual amount plausibly could exceed $75,000, the second part of CAFA's amount-in-controversy requirement is satisfied, and removal is proper. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).

Evidentiary submissions are <u>not</u> required to establish these amounts and remove a case. *Id.* at 87; *Salter*, 974 F.3d at 963. Rather, Defendants need only provide "a short and plain statement of the grounds for removal," 28 U.S.C. § 1446(a), containing a "plausible allegation" that the amount in controversy meets the jurisdictional thresholds. *Dart Cherokee*, 574 U.S. at 89; *see also Arias*, 936 F.3d at 925 (holding that, "in assessing the amount in controversy, a removing defendant is permitted to rely on a chain of reasoning that includes assumptions" that are "founded on the allegations of the complaint"); *Harris*, 980 F.3d at 701 ("A defendant may rely on reasonable assumptions to prove that it has met the statutory threshold. A defendant need not make the plaintiff's case for it or prove the amount in controversy beyond a legal certainty.") (internal citations omitted). Further, as the Ninth Circuit has explained, the amount in controversy under CAFA is the "amount at stake" in the litigation; it "does not mean likely or probable liability [but] rather … refers to <u>possible</u> liability." *Greene*, 965 F.3d at 772 (emphasis added);

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEFS.' OPP. TO
PLS.' MOT. TO REMAND
CASE NO. 2:23-cv-01114-GW-KK

1   *see also Chavez*, 888 F.3d at 417 ("The amount in controversy is not a prospective

2   assessment of a defendant's liability.   Rather, it is the amount at stake in the

3   underlying litigation.") (internal citations and modifications omitted).

4          After a removing defendant makes a plausible allegation that the amount in

5   controversy could exceed CAFA's thresholds, "the plaintiff can contest the amount

6   in controversy by making either a 'facial' or 'factual' attack on the defendant's

7   jurisdictional allegations." *Harris*, 980 F.3d at 699.  A <u>facial</u> attack "accepts the

8   truth of the defendant's allegations but asserts that they are insufficient on their face

9   to invoke federal jurisdiction," while a <u>factual</u> attack "contests the truth of the ...

10  allegations themselves." *Id.* (quotations omitted).  To mount a factual attack, a

11  plaintiff can "contest the factual assertions in the … notice of removal, or assert that

12  the defendant misinterpreted the thrust of his complaint, or offer any declaration or

13  evidence that challenge[s] the factual bases of the defendant's plausible allegations."

14  *Id.* (quotations omitted).  <u>Only</u> "[w]hen a plaintiff mounts a factual attack [is] the

15  burden … on the defendant to show, by a preponderance of the evidence, that the

16  amount in controversy exceeds" the jurisdictional threshold.  *Id.*  A plaintiff who

17  instead "argue[s] only that [the defendant] must support its assertion with competent

18  proof" mounts a only facial attack, which is not enough to "contest" the defendant's

19  allegation—and thus does not shift the burden to the defendant.  *Salter*, 974 F.3d at

20  964 (quotations omitted).   In such cases, "the court accept[s] the [defendant's]

21  allegations as true and draw[s] all reasonable inferences in the defendant's favor."

22  *Id.*   As a result, unless independently questioned by the court, "the defendant's

23  amount-in-controversy allegation should be accepted," and the case should not be

24  remanded.  *Dart*, 574 U.S. at 87; *see also Ehrman v. Cox Commc'ns, Inc.*, 932 F.3d

25  1223, 1228 (9th Cir. 2019) ("Because no antiremoval presumption attends cases

26  invoking CAFA, courts should be especially reluctant to *sua sponte* challenge a

27  defendant's [jurisdictional allegations].") (internal citations and quotation omitted).

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

DEFS.' OPP. TO
PLS.' MOT. TO REMAND
CASE NO. 2:23-cv-01114-GW-KK

# IV.  ARGUMENT

## A.  Defendants Made a Plausible Allegation That the Amount in Controversy Exceeds CAFA's Thresholds for Mass Actions

Defendants' Notice more than satisfied the requirement of a "short and plain" statement that the amount in controversy could plausibly exceed CAFA's thresholds. *Dart Cherokee*, 574 U.S. at 87.  First, Defendants carefully analyzed the allegations in the First Amended Complaint,[4] including (*inter alia*) that: "Ticketmaster is the dominant online venue for concert presale, sale, and resale in the United States," and "has violated the policy, spirit, and letter of [the California antitrust laws] by imposing agreements and policies at the retail and wholesale level that have prevented effective price competition across a wide swath of online ticket sales," FAC ¶ 26; that "Ticketmaster is a monopoly that is only interested in taking every dollar it can from a captive public," *id.* ¶ 27; that "Ticketmaster has allied with stadiums to entrench its dominance to harm consumers in California and across the United States," *id.* ¶ 28; that "Defendant's anticompetitive behavior has substantially harmed and will continue to substantially harm … competition in the ticket sales marke[t] and the Secondary Ticket Services Market," *id.* ¶ 1, "affecting a not insubstantial volume of commerce," *id.* ¶ 337; and that Defendants have "remov[ed] competition from both the Primary and Secondary [ticketing] markets," "gained inflated revenues otherwise unavailable to [them]," and engaged in unlawful tying arrangements, exclusive dealings, price discrimination, price fixing, and various group boycotts and market division schemes with competitors, *id.* ¶¶ 332–88.  *See* Notice ¶ 14.

Next, Defendants analyzed <u>each</u> of the six causes of action (and six subsidiary antitrust claims) based on those sweeping allegations—i.e., breach of contract,

---

[4]  As explained above, because the First Amended Complaint was "the operative complaint at the time of removal," it is the relevant complaint for purposes of the remand and removal analysis.  *Corral*, 878 F.3d at 774; *see also Chavez*, 888 F.3d at 417.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEFS.' OPP. TO
PLS.' MOT. TO REMAND
CASE NO. 2:23-cv-01114-GW-KK

intentional misrepresentation, fraud, fraudulent inducement, unlawful tying, exclusive dealings, price discrimination, price fixing, group boycotting, market division, and "unlawful, unfair, and deceptive business practices" in violation of Section 17200—and each of the concomitant requests for relief, including actual damages, "damages to make an example of and to punish Ticketmaster;" treble damages, disgorgement of "ill-gotten gains," compensation for "deadweight loss to the economy," "mandatory injunctions as … necessary to restore and preserve fair competition," civil penalties of $2,500 per violation of Section 17200, and costs of suit (including attorneys' fees). *See* Notice ¶¶ 15–16 (citing FAC at 57–59).

Since Plaintiffs did not allege a specific dollar amount (or even a ballpark range) of damages in their First Amended Complaint, Defendants' Notice examined other antitrust cases that have been filed against Defendants—as well as other antitrust lawsuits asserting similar causes of action against large companies such as Defendants—where the alleged aggregate damages were well above the jurisdictional threshold (potentially in the billions of dollars).[5] *See id.* ¶¶ 18–19. "Given the damages claims in similar cases, and considering Plaintiffs' sweeping allegations and all of the relief requested," Defendants' Notice asserted that "it is certainly plausible that the amount in controversy could far exceed $5,000,000 in the aggregate, and $75,000 for each Plaintiff, if Plaintiffs prevail." *Id.* ¶ 20. The law is clear that this is more than enough to support removal. *See, e.g.*, *Harris*, 980 F.3d at 701 (removing defendant is not required to "make the plaintiff's case for it," or "perform a detailed mathematical calculation"); *Arias*, 936 F.3d at 925 ("in assessing the amount in controversy, a removing defendant is permitted to rely on a chain of

---

[5] Take, for example, *INDMEX, Inc. v. L3Harris Techs., Inc*., one of the analogous cases cited in Defendants' Notice. No. 1:20-cv-00727 (E.D. Va.), Am. Compl. ¶¶ 194–281, ECF No. 34; Notice ¶ 19. At $47 million, *INDMEX* had the smallest aggregate damages claim of all the comparable cases cited. But still, $47 million easily exceeds CAFA's $5 million threshold for aggregate claims. And take $47 million and divide it by 256 (i.e., the number of Plaintiffs in the First Amended Complaint); that yields a per-Plaintiff amount in controversy of more than $183,000—far in excess of CAFA's $75,000 threshold.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

DEFS.' OPP. TO
PLS.' MOT. TO REMAND
CASE NO. 2:23-cv-01114-GW-KK

reasoning that includes assumptions … founded on the allegations of the complaint"); *Greene*, 965 F.3d at 772–73 (removing defendant may show that it's "reasonably possible" that the amount in controversy exceeds CAFA's thresholds by "cit[ing] to a case based on the same or a similar statute in which the jury or court awarded" comparable relief; defendant need not "analogize or explain how the cited cases are similar to the instant action"; it is sufficient to "cite a prior case showing that such [relief] is possible").

## B. Plaintiffs Mount Only a Facial Attack on Defendants' Amount-in-Controversy Assessment

Plaintiffs' motion does not take issue with Defendants' reading of the First Amended Complaint.  It does not contest Defendants' analysis of the allegations, claims, or prayers for relief.  It does not argue that the analogous cases that Defendants relied upon to benchmark the amount in controversy were inapposite— or that there were better options with lower damages.  Indeed, it does not argue that Defendants' analytical approach was in any way deficient.  To the contrary, in the entire motion, Plaintiffs only cite Defendants' Notice one time, to complain that Defendants' assessment of the amount in controversy is based only on "allegations." *See* Mot. at 1.  But that's exactly what the law directs a removing defendant to do: to put forth "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," based on reasonable assumptions about the allegations in the operative complaint at the time of removal.  *Dart Cherokee*, 574 U.S. at 89; *see also Salter*, 974 F.3d at 964.  Nothing more is required to remove a case.

Something more, however, is required in order to contest removal. Specifically, as explained above, a plaintiff is required to properly contest the removing defendant's factual assertions, interpretations of the complaint, and/or underlying assumptions.  *See, e.g.*, *Salter*, 974 F.3d at 965 (finding that plaintiff did not properly contest defendant's assessment of the amount in controversy where plaintiff had "not challenged any of [defendant's] essential assumptions or shown

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

DEFS.' OPP. TO
PLS.' MOT. TO REMAND
CASE NO. 2:23-cv-01114-GW-KK

that any one was unreasonable").  Here, however, Plaintiffs "do not challenge the rationality, or the factual basis," of Defendants' plausible allegations; indeed, they do not even address those allegations in their motion, let alone "really challeng[e] the truth" of them, as required.  *See id.* at 964.  Instead, Plaintiffs "argue only that [Defendants] must support [their] assertion with competent proof." *Id.*  Under Ninth Circuit law, such arguments are nothing more than "facial" attacks, which are not enough to "contest" Defendants' plausible allegations—and thus do <u>not</u> shift the burden to Defendants.  *Id.* (reversing grant of motion to remand where plaintiff "did not assert that [defendant] misinterpreted the thrust of [the] complaint and did not offer any declaration or evidence that challenged the factual bases of [defendant's] plausible allegations"; defendant was not required to proffer any evidence); *see also Ehrman*, 932 F.3d at 1227–28 (holding that a defendant is not required to present evidence in support of its jurisdictional allegations when the plaintiff asserted a <u>facial</u>, rather than <u>factual</u>, challenge to the notice of removal).

There's no question here that Plaintiffs are mounting a facial attack.  That attack is a nearly word-for-word recitation of the one that the plaintiff made in *Salter*—i.e., defendants must provide "competent proof" of the amount in controversy—and that the Ninth Circuit specifically rejected.  *Compare Salter*, 974 F.3d at 964 (rejecting plaintiff's argument that removal was improper because the defendant "must support its assertion with competent proof" of the amount in controversy), *with* Mot. at 8–9 (arguing that removal is improper because Defendants "must provide 'competent proof'" to support their assertions about the amount in controversy).  The law is clear that, in such cases: the plaintiff has <u>not</u> properly contested removal; "the court accept[s] the [defendant's] allegations as true and draw[s] all reasonable inferences in the defendant's favor," *Salter*, 974 F.3d at 964; and (unless independently questioned by the court)[6] "the defendant's amount-

---

[6]  *See Ehrman*, 932 F.3d at 1228 ("Because no antiremoval presumption attends cases invoking CAFA, courts should be especially reluctant to *sua sponte* challenge

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

DEFS.' OPP. TO
PLS.' MOT. TO REMAND
CASE NO. 2:23-cv-01114-GW-KK

in-controversy allegation should be accepted," and the case should <u>not</u> be remanded, *Dart*, 574 U.S. at 87.  The Court's inquiry should end here.[7]

### C.   Plaintiffs' Estimate of $45,000 in Individual Damages Improperly Excludes Many of the Claims in the Complaint

Plaintiffs' own estimate of the amount in controversy—a two-paragraph, back-of-the-envelope calculation tacked on to the end of their motion—does not change the outcome.  *See* Mot. at 9–10.  First, it does not transform Plaintiffs' facial attack into a factual one.  It does not, because Plaintiffs' estimate makes <u>no</u> mention of Defendants' comprehensive assessment of the amount in controversy, nor does it "challenge[] any of [Defendants'] essential assumptions or show[] that any one was unreasonable," as required for a factual attack.  *Salter*, 974 F.3d at 965; *see also Fierro v. Cap. One, N.A.*, 2022 WL 17486364, at *4 (S.D. Cal. Dec. 6, 2022) (plaintiff's estimate of amount in controversy that did "not address … two items used in Defendant's Notice of Removal—the cost to comply with the injunctive relief and … attorneys' fees"—did not convert facial attack into a factual attack), *Vasquez v. RSI Home Prod., Inc.*, 2020 WL 6778772, at *4 (C.D. Cal. Nov. 12, 2020) ("[Plaintiff] fails adequately to address the fact that [defendant's] assumptions are derived from the Complaint's allegations, which [plaintiff] pleaded in a general and expansive way …. [Plaintiff] cannot use his Complaint as both a sword and a shield.").  Moreover, and in any event, Plaintiffs' $45,000 estimate glaringly does

---

a defendant's [jurisdictional allegations]." ) (internal citations and quotation omitted).

[7]  In their motion, Plaintiffs chose to make a facial attack on Defendants' allegation of the amount in controversy by refusing to make any arguments or raise any factual issues contesting Defendants' assessment.  If, in reply, Plaintiffs should attempt to mount a factual attack by improperly raising new arguments, when Defendants will have no chance to respond, the Court should disregard them.  *See, e.g., Giannattasio v. McLaren Auto., Inc.*, 2023 WL 3138979, at *5 (N.D. Cal. Mar. 26, 2023) (refusing to allow plaintiff who made only facial attack on defendant's jurisdictional allegations in motion to remand to introduce new factual issues in reply brief in attempt to mount factual challenge).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

DEFS.' OPP. TO
PLS.' MOT. TO REMAND
CASE NO. 2:23-cv-01114-GW-KK

not account for the most significant forms of relief requested at the time of removal.[8]

Specifically, Plaintiffs' estimate is based on their claim that the 45-page First Amended Complaint merely seeks relief for the following allegation: "that defendants' conduct prevented them from buying [Taylor Swift] tickets at all or at the initial price offered … which ranged from $49 to $449." Mot. at 9. Plaintiffs then eyeball the current resale prices of those tickets, subtract the purported primary sale price, and announce (for the first time) that their per-Plaintiff damages are "between one and three thousand dollars." *Id.* at 10. Multiplying this number by a maximum of "approximately nine times actual damages" to account for possible punitive damages and adding a 50% attorneys' fee on top, Plaintiffs conclude that the maximum individual amount in controversy is $45,000 "soaking wet." *Id.* at 9–10. But Plaintiffs' complaint is <u>not</u> limited to damages for their inability to purchase Taylor Swift tickets (plus punitive damages and attorneys' fees on that claim). It also seeks, *inter alia*:

- disgorgement of "ill-gotten gains arising from [Defendants' alleged] anticompetitive acts," FAC at 58–59 (Prayer for Relief), including unlawful tying arrangements, exclusive dealings, price discrimination, price fixing, and various group boycotts and market division schemes with competitors, *id.* ¶¶ 332–88

- compensation for "deadweight loss to the economy caused by these [anticompetitive] acts," *id.*;

- injunctive relief "necessary to prevent Ticketmaster as well as Ticketmaster's successors, agents, representatives, employees, and all

---

[8]  To be clear, Plaintiffs' allegations in the First Amended Complaint are entirely without merit, and Defendants therefore agree with Plaintiffs that the true likelihood (and true amount) of actual damages is miniscule.  Nonetheless, "[t]he amount in controversy is not a prospective assessment of a defendant's liability.… Rather, it is the amount at stake in the underlying litigation.… whatever the likelihood that [the plaintiff] will actually recover them." *Chavez*, 888 F.3d at 417.  Defendants examine plausible damages for purposes of this brief and reserve the right to contest the appropriate measure of damages.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

DEFS.' OPP. TO
PLS.' MOT. TO REMAND
CASE NO. 2:23-cv-01114-GW-KK

persons who act in concert with Ticketmaster from engaging in any act or practice that constitutes a violation of the Cartwright Act, section 16720, et. seq., of the Business and Professions Code, including such mandatory injunctions as may reasonably be necessary to restore and preserve fair competition," *id.* at 58–59 (Prayer for Relief);

- "a civil penalty of $2,500 against Ticketmaster for each violation of" California UCL Section 17200, *id.* at 59 (Prayer for Relief); and

- treble damages for the antitrust claims, *id.* ¶ 331, and attorneys' fees for all of their claims (not just their claim "that defendants' conduct prevented them from buying [Taylor Swift] tickets at all or at the initial price offered"), *id.* at 59 (Prayer for Relief).

Plaintiffs' calculation of the amount in controversy conveniently ignores each of these claims for relief. But the law is clear that the amount in controversy includes all amounts "at stake" in the litigation at the time of removal, "whatever the likelihood that [the plaintiff] will actually recover them." *Chavez*, 888 F.3d at 417 (amount in controversy includes damages—compensatory, punitive, or otherwise— and the cost of complying with an injunction, as well as attorneys' fees damages, asserted at the time of removal). The law is equally clear that Plaintiffs cannot ignore or disclaim allegations and claims in their complaint in order to evade federal jurisdiction. *See St. Paul*, 303 U.S. at 292 (if "plaintiff after removal, by stipulation, by affidavit, or by amendment of his pleadings, reduces the claim below the requisite amount, this does not deprive the district court of jurisdiction"); *cf. Whitehurst v. Dollar Tree Stores, Inc.*, 2022 WL 462937, at *1 (E.D. Cal. Feb. 15, 2022) (even post-removal joint stipulation by plaintiff and defendant capping damages below threshold cannot divest federal court of jurisdiction).

Adding the missing forms of relief—even just one of them—to Plaintiffs' $45,000 estimate of damages and attorneys' fees for their claim that "defendants' conduct prevented them from buying [Taylor Swift] tickets at all or at the initial

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

DEFS.' OPP. TO
PLS.' MOT. TO REMAND
CASE NO. 2:23-cv-01114-GW-KK

1  price offered" yields an amount in controversy which plausibly exceeds CAFA's

2  thresholds.[9]  Take, for example, the First Amended Complaint's request for "a civil

3  penalty of $2,500 against Ticketmaster for <u>each</u> violation of" Section 17200.  FAC

4  at 59 (Prayer for Relief) (emphasis added).  Plaintiffs claim that those violations

5  include (*inter alia*) inflated ticket fees, delayed delivery of tickets, and forced ticket

6  resales on Defendants' secondary ticketing platform.  *Id.* ¶¶ 391–97.  Defendants

7  sold over 550,000,000 tickets in 2022 alone.[10]  Assuming the alleged violations

8  impacted just 5% of those sales (a low estimate in light of Plaintiffs' allegation, for

9  example, that Defendants' alleged conduct impacts "a wide swath of online ticket

10  sales,"[11] *id.* ¶ 26), that amounts to more than 25,000,000 tickets impacted.  The First

11  Amended Complaint seeks to recover $2,500 for <u>each</u> of those alleged violations.

12  That alone far exceeds CAFA's $5M and $75,000 amount in controversy

13  thresholds.[12]

14      Or take Plaintiffs' claim for disgorgement of "ill-gotten gains arising from

15  [Defendants' alleged] anticompetitive acts."  FAC at 59.  Live Nation's reported

16

17

---

18  [9]  To be clear, Plaintiffs' own underinclusive estimate of the amount in controversy

19  already greatly exceeds CAFA's $5 million aggregate threshold ($45,000 x 256 Plaintiffs = $11,520,000), undermining their assertion that "[t]he FAC certainly does not suggest any figure close to … $5 million combined." Mot. at 9.  If the remaining

20  requests for relief account for an additional aggregate amount in controversy of at least $7,680,000.01, then—together with Plaintiffs' own $45,000 estimate for their

21  claim that "defendants' conduct prevented them from buying [Taylor Swift] tickets at all or at the initial price offered"—the per-Plaintiff jurisdictional threshold is met

22  (i.e., $45,000 + ($7,680,000 ÷ 256) = $75,000).

23  [10]  Gushman Decl., Ex. B at 10, Live Nation Ent. Reports Fourth Quarter & Full Year Results, Feb. 23, 2023.

24  [11]  Indeed, Plaintiffs' allege that virtually every aspect of Defendants' ticketing business constitutes a violation of Section 17200—including Ticketmaster's

25  contracts with venues, how Ticketmaster enforces its contractual rights, how Ticketmaster sells primary tickets, how Ticketmaster sells secondary tickets, the

26  manner in which Ticketmaster delivers tickets, the fact that Ticketmaster uses digital tickets, and representations that Ticketmaster makes about its tickets and sales.  FAC

27  ¶¶ 389–403.

    [12]  Specifically: 25,000,000 x $2,500 = $62.5B (i.e., the aggregate amount for this

28  one claim).  $62.5B ÷ 256 = $244,140,625 (i.e., the individual amount for this one claim).

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

DEFS.' OPP. TO
PLS.' MOT. TO REMAND
CASE NO. 2:23-cv-01114-GW-KK

revenue was \$16.68B in 2022; \$2.238B of that revenue was attributed to ticketing.[13] Looking only at the ticketing revenue, and assuming that only 5% of that revenue arose from the alleged anticompetitive acts (a low estimate in light of Plaintiffs' claim that virtually every aspect of Defendants' ticketing business is anticompetitive,[14] and that Defendants have "succeeded in removing competition from both the Primary and Secondary [ticketing] markets," *id.* ¶ 6), that amounts to more than \$100M. Again, that alone far exceeds CAFA's \$5M and \$75,000 amount in controversy thresholds.[15]

Plaintiffs' sweeping claims for injunctive relief—including (*inter alia*) "such mandatory injunctions as may reasonably be necessary to restore and preserve fair competition," *Id.* at 58–59—are also enough, standing alone, to push the amount in controversy over CAFA's thresholds. Again, Plaintiffs claim that virtually every aspect of Defendants' ticketing business is unfair and anticompetitive. Indeed, Plaintiffs' counsel have publicly stated that their "actual intent … is to change the ticket purchasing experience for every live entertainment fan in the United States." Gushman Decl., Ex. A (quoting Plaintiffs' counsel). The cost "to change the ticket purchasing experience" for the hundreds of millions of tickets sold in the U.S. each year would be enormous.[16] To take another conversative estimate: let's assume that

---

[13] Gushman Decl., Ex. B at 9, Live Nation Ent. Reports Fourth Quarter & Full Year Results, Feb. 23, 2023.

[14] For example, Plaintiffs allege that Defendants' anticompetitive conduct includes: Ticketmaster's contracts with venues, how Ticketmaster enforces its contractual rights, how Ticketmaster sells primary tickets, how Ticketmaster sells secondary tickets, how Ticketmaster deals with competitors, etc. *See, e.g.*, FAC ¶¶ 390–97.

[15] Specifically: 5% of \$2.238B = \$111,900,000 (i.e., the aggregate amount for this one claim). \$111,900,000 ÷ 256 = \$437,109 (i.e., the individual amount for this one claim). Plaintiffs' claim for "deadweight loss to the economy" could likewise—given the sheer amount of revenues at issue here, and given the sheer size of the ticketing markets—plausibly result in aggregate and individual amounts in controversy that far exceed CAFA's thresholds. *Id.* at 59 (Prayer for Relief).

[16] For injunctive relief, "the test for determining the amount in controversy is the pecuniary result to either party which the judgment would directly produce." *In re Ford Motor Co./Citibank (S. Dakota), N.A.*, 264 F.3d 952, 958 (9th Cir. 2001). This is referred to as the "either viewpoint" rule. *Id.* Under this rule, courts may examine

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

DEFS.' OPP. TO
PLS.' MOT. TO REMAND
CASE NO. 2:23-cv-01114-GW-KK

the Court issued an injunction that added only 5 cents to Defendants' transaction costs for selling each ticket; that alone would amount to more than $27.5M in the aggregate (and more than $100,000 individually) for this one claim alone.[17]   And that does not include Plaintiffs' $45,000 estimate of damages and attorneys' fees for their claim that "defendants' conduct prevented them from buying [Taylor Swift] tickets at all or at the initial price offered."  Or their claim for civil penalties.  Or their claim for disgorgement.  Or their claim for deadweight loss to the economy. Or the host of other equitable and legal remedies demanded in the First Amended Complaint.

## V.   CONCLUSION

There's simply no colorable claim here that, considering <u>all</u> of Plaintiffs' requested relief at the time of removal, the amount in controversy cannot plausibly exceed $5 million in the aggregate and $75,000 per Plaintiff.  Removal was—and is—proper.  This Court has jurisdiction under CAFA, and Plaintiffs' motion should be denied.

Dated:  June 22, 2023

Respectfully submitted,

LATHAM & WATKINS LLP

By: _Timothy L. O'Mara_

Timothy L. O'Mara

*Attorneys for Defendants Live Nation Entertainment, Inc. and Ticketmaster L.L.C.*

---

the potential cost (to a removing defendant) of complying with injunctive relief.  *Id.* Courts have held that the "either viewpoint" rule is "a valid method for assessing the value of the matter in controversy to determine whether jurisdiction lies under 28 U.S.C. § 1332(d)(2)," as in this case.  *Pagel v. Dairy Farmers of Am., Inc.*, 986 F. Supp. 2d 1151, 1161 (C.D. Cal. 2013); s*ee also Yocupicio v. PAE Grp., LLC*, 2014 WL 7405445, at *5 (C.D. Cal. Dec. 29, 2014), *rev'd on other grounds*, 795 F.3d 1057 (9th Cir. 2015) (in CAFA cases, the "either viewpoint" rule "is undoubtedly a fair measure of what the plaintiff has put 'in controversy'").

[17]   Specifically: 0.05 x 550M (the number tickets sold in 2022) = $27.5M (i.e., the aggregate amount for this one claim).  $27.5M ÷ 256 = $107,422 (i.e., the individual amount for this one claim).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

DEFS.' OPP. TO
PLS.' MOT. TO REMAND
CASE NO. 2:23-cv-01114-GW-KK

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants Ticketmaster L.L.C. and Live Nation Entertainment, Inc., certifies that this brief contains 5,661 words, which complies with the word limit of L.R. 11-6.1.

Dated: June 22, 2023

*Timothy L. O'Ma*

Timothy L. O'Mara

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

DEFS.' OPP. TO
PLS.' MOT. TO REMAND
CASE NO. 2:23-cv-01114-GW-KK