BERRY SILBERBERG STOKES PC
ROBERT P. BERRY, SBN 220271
CAROL M. SILBERBERG, SBN 217658
JOSHUA C. STOKES, SBN 220214
11600 Washington Place, Suite 202C
Los Angeles, CA 90066
Telephone:  (213) 986-2690
Facsimile:  (213) 986-2677
rberry@berrysilberberg.com
jstokes@berrysilberberg.com
csilberberg@berrysilberberg.com

Attorneys for Defendant SoFi
Technologies, Inc.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIE BARFUSS, et al.<br><br>Plaintiffs,<br><br>v.<br><br>LIVE NATION ENTERTAINMENT, INC., TICKETMASTER L.L.C., KROENKE SPORTS & ENTERTAINMENT, LLC, SOFI TECHNOLOGIES, INC., and DOES 1 through 10, inclusive.<br><br>Defendants. | Case No. 2:23-cv-01114-GW-KK<br><br>Assigned to the Hon. George H. Wu<br><br>**NOTICE OF MOTION AND MOTION TO STAY UNTIL RESOLUTION OF HECKMAN APPEAL OR IN THE ALTERNATIVE MOTION TO DISMISS PLAINTIFFS' CLAIMS AGAINST DEFENDANT SOFI TECHNOLOGIES, INC. )**<br><br>Courtroom: 9D (1st St. Courthouse)<br>Date:  February 26, 2024<br>Time: 8:30 a.m. |

**TO THE CLERK OF COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on February 26, 2024, at 8:30 a.m.[1] or as soon thereafter as the matter may be heard in the above entitled Court, located at 350 W. 1st Street, Los Angeles, CA 90012, Department 9D, Defendant SoFi Technologies, Inc. ("SoFi") will move the Court to fully stay the proceedings as to SoFi until the conclusion of the appeal in *Heckman v. Live Nation Entertainment Inc*., Case No. 2:22-CV-00047-GW-GJS, consistent with the stay provided to Defendants Ticketmaster and Live Nation; or in the alternative, and without waiving any right to arbitrate, move to dismiss the action pursuant to Rules 12(b)(6), 8(a), and 9(b) of the Federal Rules of Civil Procedure.

SoFi moves to fully stay this action in light of the ongoing arbitration issues, which also may implicate the claims against SoFi. As such, based on Court's inherent powers and in light of case law such as *Kramer v. Toyota Motor Corp*., 705 F.3d 1122, 1128-29 (9th Cir. 2013) (holding that a non-signatory may be able to enforce an arbitration provision where "the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and 'the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement.'") (quoting *Goldman v. KPMG LLP*, 173 Cal. App. 4th 209, 219 (2009)), and for efficiency and consistency, this action as against SoFi should be stayed consistent with the stay provided to Ticketmaster and Live Nation.

In the alternative, and without waiving any of its right to arbitrate, SoFi moves to dismiss this action because Plaintiff's Second Amended Complaint fails to state a claim upon which relief can be granted, includes shotgun pleadings with

---

[1] Defendant SoFi Technologies, Inc., noticed this Motion for February 26, 2024, for electronic filing purposes, but recognizes that the Court indicated at the November 6, 2023 Status Conference that the Motion will not be heard until after the Ninth Circuit rules on Ticketmaster and Live Nation's Motion to Compel Arbitration in the *Heckman* litigation.

1

respect to SoFi, and fails to plead fraud with particularity. Specifically, Plaintiffs include vague allegations against SoFi, which do not meet the requisite elements on any of the claims alleged against it under the Cartwright Act and Business and Professions Code § 17200, et seq. Plaintiffs have failed to plead viable claims with sufficient factual detail as required by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Kendall v. Visa U.S.A. Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008).

The motion will be based on this Notice of Motion and Motion, the Memorandum of Points and Authorities filed herewith, and the pleadings and papers filed herein.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on November 17, 2023, and thereafter on December 8 and December 12, 2023.

Dated: December 15, 2023                    Respectfully submitted,

BERRY SILBERBERG STOKES PC


 */s/ Joshua C. Stokes*
Robert P. Berry
Carol M. Silberberg
Joshua C. Stokes
Attorneys for Defendant SoFi
Technologies, Inc.

## MEMORANDUM OF POINTS AND AUTHORITIES
## MOTION TO STAY

Defendant SoFi Technologies, Inc. ("SoFi") moves the Court to stay its obligation to respond to Plaintiffs' Second Amended Complaint ("SAC") until after the Ninth Circuit rules on Ticketmaster and Live Nation's appeal from this Court's denial of their motion to compel arbitration in *Heckman v. Live Nation Entertainment Inc*., Case No. 2:22-CV-00047-GW-GJS, and any potential motion to compel arbitration is filed and decided in this case. At the November 6, 2023 status conference in this matter, the Court stayed the proceedings in this case until the Ninth Circuit rules on the *Heckman* appeal, with the exception of requiring SoFi and Defendant Kroenke Sports & Entertainment, LLC ("KSE") to file a responsive pleading. Defendant SoFi simply requests that its obligation to respond to the SAC be stayed until Defendants Ticketmaster and Live Nation's motion to compel is ruled upon and/or their responsive pleadings are due.

This Court has the power to stay proceedings in this matter under "the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In determining whether to grant a stay, the Court weighs the competing interests of the parties. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (granting stay during pendency of other proceedings affecting the resolution of the litigation in the district court). Those competing interests include "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Id*.; *see also*, *Leyva v. Certified Grocers of Cal., Ltd*., 593 F.2d 857, 863-64 (9th Cir. 1979) (a district court may "find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent

1    proceedings which bear upon the case.").

2         Here, all of the factors militate in favor of a stay. First, there is no possible

3    damage to the non-moving party. The main thrust of the allegations in the SAC are

4    against Ticketmaster and Live Nation. The Court has already stayed the proceedings

5    in this case, pending the Ninth Circuit's ruling in the *Heckman* case. In the event that

6    the Ninth Circuit overrules the Order denying the motion to compel arbitration in the

7    *Heckman* matter, Ticketmaster and Live Nation are likely to move to compel

8    arbitration in this case. Defendant SoFi reserves the right to move to compel

9    arbitration against Plaintiffs, who are signatories to the written contracts containing

10   the arbitration provisions, under an equitable estoppel theory. *Franklin v. Community*

11   *Regional Medical Center*, 998 F.3d 867, 870-71 (9th Cir. 2021) (holding that plaintiff

12   signatory to employment contract with an arbitration agreement was equitably

13   estopped from avoiding arbitration against non-signatory defendant); *Kramer v.*

14   *Toyota Motor Corp.*, 705 F.3d 1122, 1128-29 (9th Cir. 2013) (holding that a non-

15   signatory may be able to enforce an arbitration provision where "the signatory alleges

16   substantially interdependent and concerted misconduct by the nonsignatory and

17   another signatory and 'the allegations of interdependent misconduct [are] founded in

18   or intimately connected with the obligations of the underlying agreement.'") (quoting

19   *Goldman v. KPMG LLP*, 173 Cal. App. 4th 209, 219 (2009)). Second, Defendant

20   SoFi will suffer hardship and inequity if it is forced to move forward with this

21   litigation now. Without a stay, Defendant SoFi is forced to respond to the SAC

22   despite the fact that its ability to compel arbitration is dependent on the enforceability

23   of Ticketmaster and Live Nation's arbitration clauses. And SoFi may also seek to

24   further stay the litigation in this Court until after any arbitration between Plaintiffs

25   and Defendants Ticketmaster and Live Nation is completed pursuant to 9 U.S.C. § 3.

26   SoFi should not be obligated to challenge the SAC while Ticketmaster and Live

27   Nation, the principal defendants in this action, are not. Finally, a stay will simplify

28   the issues, proof, and questions of law in the matter. Given that the allegations against

4

MOTION TO STAY AND MOTION TO DISMISS COMPLAINT
AGAINST SOFI TECHNOLOGIES, INC.

SoFi are—at best—derivative of the allegations against Ticketmaster and Live Nation, having those issues briefed at the same time will foster judicial economy for the Court and the parties.

In light of the stay that the Court has already ordered, and given that the Court has already ordered that any hearing on Defendant SoFi's Motion to Dismiss will not be heard until after the Ninth Circuit rules in the *Heckman* case, SoFi respectfully requests that the Court stay SoFi's obligation to respond to the SAC until after any motion to compel arbitration is ruled upon in this matter.

Dated: December 15, 2023                    Respectfully submitted,

                                            BERRY SILBERBERG STOKES PC


                                             */s/ Joshua C. Stokes*
                                            Robert P. Berry
                                            Carol M. Silberberg
                                            Joshua C. Stokes
                                            Attorneys for Defendant SoFi
                                            Technologies, Inc.

5

MOTION TO STAY AND MOTION TO DISMISS COMPLAINT
AGAINST SOFI TECHNOLOGIES, INC.

# TABLE OF CONTESNTS

I.    INTRODUCTION .................................................................................. 1

II.   ALLEGED FACTS .............................................................................. 2

    A.    General Allegations Regarding Ticketing. ........................................ 2

    B.    Scant Allegations Against SoFi. ....................................................... 4

III.  LEGAL STANDARD .......................................................................... 5

IV.   ARGUMENT ....................................................................................... 6

    A.    Antitrust Claims. ............................................................................... 6

        1.    Tying. ....................................................................................... 8

        2.    Exclusive Dealing. ................................................................... 9

        3.    Price Fixing. ........................................................................... 10

        4.    Group Boycott. ....................................................................... 12

        5.    Market Division Scheme. ....................................................... 13

    B.    Violations of Section 17200 ............................................................ 13

    C.    Plaintiffs Should Not Be Given Leave to Amend Against SoFi. ...... 16

V.    CONCLUSION .................................................................................. 16

MOTION TO STAY AND MOTION TO DISMISS COMPLAINT
AGAINST SOFI TECHNOLOGIES, INC.

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ........................................................................14, 16, 19, 22

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ........................................................................14, 19, 20, 22

*Dayton Time Lock Serv., Inc. v. Silent Watchmen Corp.,*
  52 Cal. App. 3d 1 (1975).........................................................................18

*Foman v. Davis,*
  371 U.S. 178 (1962) .................................................................................25

*Freeman v. San Diego Ass'n of Realtors,*
  77 Cal. App. 4th 171 (2000)...............................................................20, 22

*Kendall v. Visa U.S.A. Inc.,*
  518 F.3d 1042 (9th Cir. 2008).................................................14, 15, 17, 20

*Kidron v. Movie Acquisition Corp.,*
  40 Cal. App. 4th 1571 (1995) .............................................................23, 24

*Korea Supply Co. v. Lockheed Martin Corp.,*
  29 Cal. 4th 1134 (2003) .......................................................................24, 25

*Monsanto Co. v. Spray-Rite Service Corp.,*
  465 U.S. 752 (1984) ............................................................................15, 20

*Morris v. Sun Pharma Global Inc.,*
  2021 WL 3913191 (C.D. Cal. May 13, 2021) ......................................19

*Morrison v. Viacom, Inc.,*
  66 Cal. App. 4th 534 (1998)...................................................................17

*Moss v. U.S. Secret Serv.,*
  572 F.3d 962 (9th Cir. 2009)...................................................................14

*Stansfield v. Starkey,*
  220 Cal. App. 3d 59 (1990).....................................................................24

*Tampa Elec. Co. v Nashville Coal Co.,*
  365 U.S. 320 (1961) ...........................................................................18, 19

*Vess v. Ciba–Geigy Corp. USA,*
  317 F.3d 1097 (9th Cir. 2003)...........................................................15, 24

**Statutes**

Cal. Bus. & Prof. Code § 16727 .......................................................................17, 19

**Rules**

Fed. R. Civ. P. 12(b)(6) .................................................................................14

Fed. R. Civ. P. 9(b) .....................................................................................15

MOTION TO STAY AND MOTION TO DISMISS COMPLAINT
AGAINST SOFI TECHNOLOGIES, INC.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**MOTION TO DISMISS UNDER RULE 12(B)(6)**

## I.      INTRODUCTION

Plaintiffs, who claim to have been frustrated buying tickets to Taylor Swift concerts, filed the Second Amended Complaint ("SAC") alleging that Ticketmaster and Live Nation have engaged in anticompetitive actions in connection with the primary and secondary ticketing services offered to venues in the U.S. And, on information and belief (and only in the most conclusory fashion), Plaintiffs lumped Defendant SoFi Technologies, Inc. ("SoFi"), into their claims against the other Defendants alleging fraud, negligent misrepresentation, antitrust violations under the Cartwright Act (under multiple theories), and violations of California's Unfair Competition Law.[1]

Although Plaintiffs' SAC is over 50 pages long and includes nearly 500 numbered paragraphs, there are ***no*** substantive allegations against SoFi. None. The only allegations against SoFi are that "Plaintiffs are ***informed and believe*** and on that basis allege that SoFi pays considerable sums to have its names on and to sponsor the stadium and the events held there, and receives substantial benefits from such investment, including from Taylor Swift and other concert sales." (SAC ¶ 367.) In the rest of the SAC, Plaintiffs improperly group both SoFi and Defendants Kroenke Sports & Entertainment, LLC ("KSE") together into the definition of "SoFi Stadium" despite the fact that there are no allegations anywhere in the SAC that SoFi does anything more than pay to have its name on a stadium

---

[1] Plaintiffs have alleged six causes of action, but have only brought four claims against SoFi: Second Claim for Relief – Fraud, Third Claim for Relief – Negligent Misrepresentation, Fifth Claim for Relief – Antitrust Violations, and Sixth Claim for Relief – Section 17200 violations. The First and Fourth causes of action are only alleged against Ticketmaster and Live Nation. In the meet and confer process prior to filing this Motion, Plaintiffs agreed to dismiss the fraud and negligent misrepresentation claims against SoFi in the Second and Third Claims for Relief, and the price discrimination antitrust claims within the Fifth Claim for Relief, and, thereafter, filed a Notice of Withdrawal of Claims consistent with that agreement. *See* ECF No. 102.

1

building. There are no allegations that SoFi has any role whatsoever in the management of the ticketing at stadium, that it had any role in selecting Ticketmaster as the ticketing services provider, that it had any role in the Taylor Swift ticket sales at issue in the SAC, or that it had any role in any of the other facts alleged in the SAC. There are no SoFi employees identified as having made any agreements with any other Defendant. There are no SoFi employees identified as having made any statements to the public about the presales for Taylor Swift shows that form the basis of Plaintiffs' claims. There are no allegations that SoFi is anything other than what it has publicly stated it is: a financial services company that allows its members to "borrow, save, spend, invest and protect their money." SoFi's only potential connection to the allegations in the SAC is as the stadium's naming rights sponsor.

Under both federal pleading standards and California law, all of Plaintiffs' claims fail. On the pleading side, all the claims alleged against SoFi must be pled with particularity, alleging specifically who agreed with whom about what and when, which the Plaintiffs simply failed to do. Additionally, because the only factual allegations against SoFi are that, on information and belief, SoFi allegedly receives economic benefits from ticket sales at the stadium, Plaintiffs' threadbare allegation is insufficient to meet the elements of any of the claims. There are simply no allegations *at all* of any actions taken by SoFi related to the Plaintiffs' claims. Accordingly, Plaintiffs' claims against SoFi for "antitrust violations" and unfair competition under Section 17200 fail and should be dismissed with prejudice.

## II.   ALLEGED FACTS[2]

### A.   General Allegations Regarding Ticketing.

The central premise of the allegations in the SAC is that Plaintiffs were unable to buy tickets to Taylor Swift concerts because "[t]hey experienced a well-

---

[2] For the purposes of this motion to dismiss only, SoFi treats the properly pled factual allegations as true.

publicized ticket presale disaster that occurred on November 15 and 16, 2022, continued with the cancellation of general sale tickets hitherto scheduled for November 18, 2022 . . . ." (SAC ¶ 5.) Plaintiffs then claim that the "presale disaster" was not simply a mismatch between supply and demand for the tickets, but instead part of some sweeping intentional scheme by Ticketmaster and Live Nation. According to Plaintiffs, Ticketmaster and Live Nation made agreements "with the stadiums in every location of the Taylor Swift tour" to be the primary ticketing services provider. (SAC ¶ 376.) Ticketmaster, according to Plaintiffs, requires that those venues also use Ticketmaster's Secondary Ticket Exchange, which in turn means that resellers and ticket purchasers must use Ticketmaster's Secondary Ticket Exchange. (SAC ¶ 377.) However, Plaintiffs also acknowledge that ticket resellers and ticket buyers could actually use other secondary ticket exchanges outside of Ticketmaster's Secondary Ticket Exchange, but because purchasers on those other exchanges run a higher risk of being scammed, Ticketmaster's Exchange is "the only real choice for buying tickets previously sold to others." (SAC ¶ 379.)[3]

Plaintiffs also allege that Ticketmaster "controlled the registration and access to Taylor Swift's 'The Eras' Tour tickets," and promised "preferred access" for ticket purchasers of Ms. Swift's previously cancelled "Lover Fest" concert tour to participate in this sale as 'verified' fans." (SAC ¶ 375.) Fans who purchased a certain amount of Taylor Swift merchandise could also get a "verified" code. (SAC ¶¶ 411, 440.) On November 14, 2022, "'verified' fans of TaylorSwiftTix presale were sent a code" that would allow them to participate in the presale. (SAC ¶ 380.) But based on information and belief, "thousands of 'verified' fans were not sent codes or were sent codes that did not work." (SAC ¶ 380.) On information and belief, Plaintiffs allege that "millions of 'verified' fans that had received codes were

---

[3] A simple search for Taylor Swift concert tickets on websites such as StubHub or SeatGeek will clearly reveal tickets available in the secondary ticket market beyond Ticketmaster.

MOTION TO STAY AND MOTION TO DISMISS COMPLAINT
AGAINST SOFI TECHNOLOGIES, INC.

unable to purchase tickets," due to "the excessive distribution of codes and the addition of 14 million non-verified Ticketmaster users that were allowed access to the TaylorSwiftTix presale." (SAC ¶ 381.) Plaintiffs contend that Ticketmaster intentionally allowed ticket scalpers and bots into the presales, depriving Plaintiffs and other fans the opportunity to buy tickets, and allowed ticket resales during the presales, which resulted in Plaintiffs and other ticket purchasers paying more than face price for these tickets. (SAC ¶¶ 384-88.) Plaintiffs further contend that Ticketmaster, not SoFi, sold obstructed view tickets without disclosing them as such, sold VIP tickets knowing that portion of the package would be voided, sold ADA-compliant seats without verification of disability or need, and allowed bots and scalpers to remove tickets from a fan's online cart before the fan could complete the sale. (SAC ¶¶ 389-94.)

Plaintiffs, apparently frustrated with the prices they had to pay for tickets to Taylor Swift concerts due to high demand, allege that they were each individually damaged in the "thousands of dollars" that they spent purchasing Taylor Swift merchandise and tickets. (SAC ¶ 419.)

## B.   Scant Allegations Against SoFi.

Notably, despite its length, the SAC contains hardly any reference to Defendant SoFi at all. This is not surprising being that SoFi has nothing to do with ticketing for concerts. Rather SoFi is a financial services company whose only connection to the allegations in the SAC is that it pays "considerable sums to have its name on and to sponsor the stadium and the events held there." (SAC ¶ 367.) Thus, there are no substantive allegations that Defendant SoFi was involved at all, on any level, with the ticket sales complained of. While Plaintiffs use the term "SoFi Stadium" as including both Defendant KSE and SoFi (SAC ¶ 368)—and utilize that aggregated term to lump SoFi into various allegations—in the entire SAC, the only claim about SoFi's relationship to these Taylor Swift concerts is, on information and belief only, that SoFi "receives substantial benefits from such

4

MOTION TO STAY AND MOTION TO DISMISS COMPLAINT
AGAINST SOFI TECHNOLOGIES, INC.

[sponsorship] investment, including from Taylor Swift and other concert ticket sales." (SAC ¶¶ 367, 376.) While that is simply not true, for purposes of this motion to dismiss, such allegations come nowhere close to alleging an actionable claim against SoFi under the Cartwright Act and Section 17200. As such, the claims against SoFi should be dismissed.

### III.   LEGAL STANDARD

On a motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must take all well-pleaded allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (Rule 8(a) "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions"); *see also Kendall v. Visa U.S.A. Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). Where, as here, Plaintiffs allege concerted efforts by multiple defendants, courts require "a complaint with enough factual matter (taken as true) to suggest an agreement was made"; the factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). It is not enough that a complaint show "a sheer possibility that a defendant has acted unlawfully"; rather, a court must determine whether a complaint states a "plausible" claim for relief, and this determination must be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678-79. Thus, a complaint must include not only legally sufficient allegations that each defendant made a "'conscious commitment to a common scheme designed to achieve an unlawful objective,'" *Monsanto Co. v. Spray-Rite Service Corp.*, 465 U.S. 752, 764 (1984) (quoting *Edward J. Sweeney & Sons, Inc. v. Texaco, Inc.*, 637 F.2d 105, 111 (3rd Cir. 1980)), but also "facts such as a 'specific time, place, or person involved in the alleged conspiracies' to give a defendant seeking to respond to allegations of a

5

MOTION TO STAY AND MOTION TO DISMISS COMPLAINT
AGAINST SOFI TECHNOLOGIES, INC.

conspiracy an idea of where to begin," *Kendall*, 518 F.3d at 1047 (quoting *Twombly*, 550 U.S. at 565 n.10). Where the plaintiff seeks to infer agreement from parallel conduct, the complaint must plead factual allegations establishing that that conduct would have been against the defendants' independent self-interest absent an unlawful agreement. *Twombly*, 550 U.S. at 553-54; *Kendall*, 518 F.3d at 1049 (citing *Twombly*, 550 U.S. at 553-557 & n.5).

Furthermore, under Rule 9(b), a party alleging fraud "must state with particularity the circumstances constituting the fraud or mistake." Fed. R. Civ. P. 9(b). Where a claim contains "averments of fraud," as in Plaintiffs' Sixth Claim for Relief for Section 17200 violations, Rule 9(b)'s particularity requirement applies to those specific allegations. *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1103, 1106 (9th Cir. 2003) ("Rule 9(b) applies to 'averments of fraud' in all civil cases in federal district court, and that in cases in which fraud is not an essential element of the claim, Rule 9(b) applies, but only to particular averments of fraud.").

## IV.    ARGUMENT

### A.    Antitrust Claims.

Plaintiffs' Fifth Claim for Relief alleges a kitchen sink of unsupportable antitrust violations under the Cartwright Act against all Defendants, including claims of unlawful tying arrangements, exclusive dealing arrangements, price discrimination, price fixing, group boycotts, and market division.[4] As an initial matter, Plaintiffs' claims—that they were not able to get tickets to the biggest, most popular tour in 2023, or that they had to pay more for those tickets than they wanted to—do not rise to the level of antitrust claims. Plaintiffs have attempted to spin up simple ticket buying frustrations into something they are not, an antitrust scheme to harm competition in the ticketing market. Putting aside the factual

---

[4] In the meet and confer process, Plaintiffs agreed to drop the Price Discrimination based claims against SoFi.  *See* ECF No. 102.

MOTION TO STAY AND MOTION TO DISMISS COMPLAINT
AGAINST SOFI TECHNOLOGIES, INC.

inconsistencies in some of these allegations,[5] Plaintiffs claims fail because they do not include any substantive allegations against SoFi.

The SAC repeatedly states that the only connection between SoFi and the allegations in the SAC are that SoFi is the naming rights sponsor and that SoFi allegedly receives some indirect economic benefit from ticket sales at SoFi Stadium. (SAC ¶¶ 367, 376.) SoFi is merely the naming rights partner—a sponsor that pays the stadium to have the SoFi name and logo on the stadium. It does not have—and is not alleged to have—any involvement whatsoever in the management of the ticketing for events at the stadium, or any involvement in the selection of ticketing service providers. It has no role—and is not alleged to have any role—in putting on live events, such as the Taylor Swift concerts at issue in this case. And it has no role—and is not alleged to have any role—in managing ticketing presales or onsales for events at the stadium or even the secondary resale of tickets.

The allegations in the SAC only tangentially reference SoFi and appear to suggest that SoFi is some sort of co-conspirator in the alleged antitrust violations. However, Plaintiffs' claims are patently insufficient under *Twombly*, *Iqbal*, and *Kendall* because they do not allege any acts taken by SoFi at all, let alone in furtherance of some alleged antitrust violation. These allegations are precisely what the Supreme Court referred to as improper threadbare recitals and conclusory allegations. *Iqbal*, 556 U.S. at 678. In order to set out a claim against SoFi, Plaintiffs must allege "facts such as a 'specific time, place, or person involved in the alleged conspiracies,' to give a defendant seeking to respond to allegations of a conspiracy an idea of where to begin." *Kendall*, 518 F.3d at 1047 (quoting *Twombly*, 550 U.S. at 565 n.10). Plaintiffs have done nothing of the sort here.

---

[5] For example, Plaintiffs allege that Ticketmaster has exclusive primary and secondary ticketing contracts with all the venues on the Taylor Swift tour (SAC ¶¶ 436-38), but then also allege that Ticketmaster has engaged in horizontal price fixing with its competitors, including SeatGeek (SAC ¶ 466), that SeatGeek has primary ticketing venues of its own (SAC ¶ 481), and that SeatGeek is also involved in a group boycott of other competitors who do not agree to Ticketmaster's demands (SAC ¶ 474).

7

1

### 1.     Tying.

2      In order to allege a tying claim under the Cartwright Act, Plaintiffs must

3  allege "'(1) a tying agreement, arrangement or condition existed whereby the sale

4  of the tying product was linked to the sale of the tied product or service; (2) the

5  party had sufficient economic power in the tying market to coerce the purchase of

6  the tied product; (3) a substantial amount of sale was affected in the tied product;

7  and (4) the complaining party sustained pecuniary loss as a consequence of the

8  unlawful act.'" *Morrison v. Viacom, Inc.*, 66 Cal. App. 4th 534, 541-42 (1998)

9  (quoting *Classen v. Weller*, 145 Cal. App. 3d 27, 37-38 (1983)).

10      Plaintiffs allege that "Ticketmaster and all the venues part [sic] of the Taylor

11  Swift's upcoming tour, including SoFi Stadium, and those owned or controlled by

12  Live Nation, have agreed to and do mandate that all Taylor Swift tickets sold in the

13  Primary Ticket Market are not resold in the Secondary Ticket market other than

14  through Ticketmaster's Secondary Ticket Exchange." (SAC ¶ 438.) To the extent

15  Plaintiffs' bring their claims under California Business & Professions Code section

16  16727 (SAC ¶ 435), those claims fail because Section 16727 only applies to goods

17  and does not apply to services. *Morrison*, 66 Cal. App. 4th at 546-48 ("appellants

18  have failed to state a cause of action under section 16727 because the alleged tying

19  product in this case, cable television, is a service and section 16727 does not apply

20  when the tying product is a service."). Beyond that initial, fatal pleading failure,

21  Plaintiffs claims do not include any suggestion that SoFi had any role whatsoever in

22  the selection of Ticketmaster as the primary or secondary ticketing services

23  provider at SoFi Stadium or any role at all in any ticketing decisions for any Taylor

24  Swift shows. The allegations, at best, allege that Ticketmaster required its

25  Secondary Ticket Exchange to be used; SoFi is not alleged to be involved in those

26  decisions at all.

27      Plaintiffs also allege that Ticketmaster separately tied presale ticket code

28  eligibility to the purchase of Taylor Swift merchandise. (SAC ¶ 440.) Again, there

is no allegation that SoFi, as simply the naming rights sponsor of the stadium, had any role whatsoever in determining how members of the public received any presale codes (or any other code) to Taylor Swift concerts. Nor can Plaintiffs make any such allegation because SoFi had no such role.

Plaintiffs' tying claim against SoFi should be dismissed. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555-56.

### 2.    Exclusive Dealing.

In order to allege an illegal exclusive dealing arrangement, Plaintiffs must allege an actual agreement in a relevant product market and geographic market, and must allege that the exclusive dealing agreements in question foreclose competition in a substantial share of the relevant market such that "opportunities for other traders to enter into or remain in that market must be significantly limited . . . ." *Tampa Elec. Co. v Nashville Coal Co.*, 365 U.S. 320, 327-29 (1961); *Dayton Time Lock Serv., Inc. v. Silent Watchmen Corp.*, 52 Cal. App. 3d 1, 6-7 (1975) (citing *Tampa Electric*, 365 U.S. at 327-28). While Plaintiffs allege that they were injured by higher prices stemming from exclusive dealing arrangements between Ticketmaster and the venues at which Taylor Swift concerts were held, (SAC ¶¶ 447-49), this theory also fails for a number of reasons. First, SoFi is not alleged to be a party to any agreement with Ticketmaster or any other ticketing services company. SoFi is not alleged to have any control or authority over the ticketing operations of any stadium or in the selection of ticketing service providers. The only substantive allegations against SoFi are that it pays the stadium to put its name and logo on the building. (SAC ¶ 367.) Those allegations are insufficient to state a claim against SoFi. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555-56. Thereafter, Defendant SoFi is simply aggregated in the definition of "SoFi Stadium" with Defendant KSE. Such shotgun pleading, both in this claim and throughout the SAC, is inappropriate. *See, e.g., Morris v. Sun Pharma Global Inc.*, 2021 WL 3913191, at *3 (C.D. Cal. May 13, 2021) (dismissing complaint due to

"shot-gun" and vague pleadings). Ultimately, Plaintiffs have not alleged and cannot allege the fundamental aspect of an exclusive dealing claim, which is an agreement between SoFi and any other Defendant related to the allegations in the SAC. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555-56.

Second, Plaintiffs have failed to allege any facts supporting the notion that other ticketing companies have been unable to enter or remain in the market. *Tampa Elec.*, 365 U.S. at 327-29. That failure of pleading is not surprising in light of their other allegations that there are competing primary and secondary ticketing services providers like SeatGeek and StubHub. (SAC ¶¶ 438, 465, 474, 481, 493.)

Finally, Plaintiffs bring their exclusive dealing claims under California Business & Professions Code section 16727 (*see* SAC ¶ 447) and these claims fail for the same reason the tying claims fail: Section 16727 only applies to the sale of "goods, merchandise, machinery, supplies, commodities." Cal. Bus. & Prof Code § 16727. It does not apply, by its own terms, where the alleged exclusive dealing contract is one for services, like the ticketing services contracts alleged here. The exclusive dealing claims should likewise be dismissed.

### 3. Price Fixing.

Although Plaintiffs also attempt to allege a price fixing scheme among ticketing companies, such allegations, once again, have absolutely nothing to do with SoFi. As the Supreme Court held in *Twombly*, where a plaintiff alleges concerted efforts by multiple parties, courts require "a complaint with enough factual matter (taken as true) to suggest an agreement was made;" the factual allegations "must be enough to raise a right to relief above the speculative level." 550 U.S. at 555-56. In order to plead this type of unlawful agreement, Plaintiffs must allege facts sufficient to show that each defendant made a "conscious commitment to a common scheme designed to achieve an unlawful objective," *Monsanto*, 465 U.S. at 764, and "facts such as a 'specific time, place, or person involved in the alleged conspiracies,' to give a defendant seeking to respond to

10

allegations of a conspiracy an idea of where to begin," *Kendall*, 518 F.3d at 1047 (quoting *Twombly*, 550 U.S. at 565 n.10). It is not sufficient to allege merely parallel conduct; a plaintiff must plead factual allegations establishing that that conduct would have been against the defendants' independent self-interest absent an unlawful agreement. *Twombly*, 550 U.S. at 553-54 & n.7; *Kendall*, 518 F.3d at 1049 (citing *Twombly*, 550 U.S. at 553-557 & n.5); *see also*, *Freeman v. San Diego Ass'n of Realtors*, 77 Cal. App. 4th 171, 189 (2000) ("A complaint for unlawful price fixing must allege facts demonstrating that separate entities conspired together . . . . A general demurrer will be sustained where the complaint makes conclusory allegations of a combination and does not allege with factual particularity that separate entities maintaining separate and independent interests combined for the purpose to restrain trade.")

Despite these black letter law requirements, the entirety of Plaintiffs' horizontal price fixing allegation, states:

> This agreement has allowed Ticketmaster to raise prices above what it would be able to otherwise. Because Ticketmaster has competitors like SeatGeek charge ticket prices at the same cost as Ticketmaster, it prevents buyers from being able to find a cheaper alternative. The only way prices could stay this high for both Ticketmaster and its competitors is through an agreement between them in violation of California antitrust laws.

(SAC ¶ 466.) Plaintiffs completely fail to meet their burden to allege the who, what, when, and where of any agreement between Defendants and any other entity to fix prices. The only allegation is that the price of tickets to see the same artist on the same tour were the same in different venues, and there is no allegation that it would be against any of the Defendants' individual self-interest for the tour to have the same prices to tickets in multiple cities, as is required under *Twombly* and its progeny. But even more importantly, there are no allegations that SoFi had any involvement in any agreement between ticketing companies regarding the price of Taylor Swift tickets. Plaintiffs again fail to plead any claims against SoFi for horizontal price fixing.

1    Plaintiffs also allege that "Ticketmaster committed vertical price fixing," by

2    forcing ticket buyers to resell on its platform and controlling "what prices the buyer

3    can resell at." (SAC ¶ 468.) Putting aside for a moment that this allegation directly

4    contradicts the prior admission in the SAC that Ticketmaster in fact does not force

5    primary ticket purchasers to sell through its secondary ticket service (SAC ¶ 379),

6    and further putting aside that Plaintiffs do not allege any facts supporting its

7    allegation that Ticketmaster controls or even agrees with the primary ticket buyer to

8    set the price to any secondary ticket purchasers, Plaintiffs once again fail to allege

9    that SoFi had anything to do with that alleged vertical price fixing scheme.

10   Therefore, Plaintiffs' price fixing claims against SoFi should be dismissed.

11       **4.    Group Boycott.**

12       Plaintiffs' group boycott claim is difficult to parse, but it appears to be that

13   Ticketmaster is alleged to have a set of unspecified demands that it imposes on its

14   competitors through a group boycott that includes SeatGeek and some unnamed set

15   of stadiums. (SAC ¶¶ 473-74.) According to Plaintiffs, "[a]ny competitor of

16   Ticketmaster that does not conform to its demands will be barred from doing

17   business with most if not all large concert venues." (SAC ¶ 474.)

18       As with all of Plaintiffs' other concerted action claims, the group boycott

19   claims fail to allege who participated in a group boycott, who was boycotted, and

20   how the boycott produced any damages to the Plaintiffs. That failure falls well short

21   of the federal pleading standards for conspiracy claims, and it falls well short of the

22   requirements for alleging group boycotts in violation of the Cartwright Act.

23   California courts require "a 'high degree of particularity' in the pleading of

24   Cartwright Act violations', and therefore generalized allegations of antitrust

25   violations are usually insufficient." *Freeman*, 77 Cal. App. 4th at 196 (internal

26   citations omitted). Merely asserting general allegations of a conspiracy

27   "unaccompanied by factual allegations of overt acts in furtherance of the conspiracy

28   are insufficient to state a group boycott antitrust claim." *Id.* That is particularly true

MOTION TO STAY AND MOTION TO DISMISS COMPLAINT
AGAINST SOFI TECHNOLOGIES, INC.

as to SoFi, which is not a ticketing company or alleged to have any involvement in ticketing. There are precisely zero allegations in the SAC that SoFi participated in any agreement with any party to boycott any entity if they did not accede to the unspecified "demands."

These claims should be dismissed.

### 5. Market Division Scheme.

In the final antitrust theory Plaintiffs throw against the wall, Plaintiffs allege some type of market division. Plaintiffs allege that Ticketmaster has "specifically carved out small territories to give to competitors like SeatGeek in an attempt to hide the level of monopolistic power and control Ticketmaster has," and in exchange, "Ticketmaster has made SeatGeek set ticket prices at the same high price as Ticketmaster." (SAC ¶ 481.) Plaintiffs do not allege anything further about this alleged market division scheme; there are no allegations regarding who participated in the scheme, what "territories" are at issue, or who the customers are who fall into these alleged territories. And, once again, there are no allegations as to any participation whatsoever by SoFi, as the naming rights sponsor, even assuming arguendo any such scheme. Plaintiffs' market division claim fails because they have not even attempted to meet their pleading burdens as to SoFi. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555-56; *Freeman*, 77 Cal. App. 4th at 196.

### B. Violations of Section 17200.

Plaintiffs style their Sixth Claim for Relief as "Against All Defendants" but none of the allegations pertain to SoFi at all. Rather, the allegations are exclusively against Ticketmaster, claiming that it engaged in unfair practices to make it "difficult for a primary ticket purchaser to resell his or her ticket on competitive non-Ticketmaster Secondary Ticket Exchanges." (SAC ¶ 492.) There is only one passing reference to SoFi in this claim, with a vague and unsupported assertion that Ticketmaster acted "in collusion with its parent Live Nation as well as stadiums not owned by Live Nation, including SoFi Stadium . . . ." (SAC ¶ 488.) But, again, the

13

term "SoFi Stadium," as used in the SAC includes both Defendant KSE, alleged to be the owner of the physical stadium, and Defendant SoFi, which is alleged to be nothing more than the naming rights sponsor of the stadium. There are no allegations in the Sixth Claim for Relief that SoFi had any role or involvement in any of the acts alleged in the Sixth Claim for Relief, and there are no particular factual allegations of collusion or conspiracy sufficient to state a claim. Under California law, to plead a claim for civil conspiracy, Plaintiffs are required to allege: "(1) the formation and operation of the conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct." *Kidron v. Movie Acquisition Corp.,* 40 Cal. App. 4th 1571, 1582 (1995). "An entity that engages in legitimate business with a party that is acting tortiously cannot be deemed a co-conspirator, absent clear evidence of an agreement to join in the tortious conduct." *Id*. at 1590. Despite these clear requirements, the SAC lacks any such allegations.[6]

Furthermore, there are no allegations of fraud or misrepresentation by SoFi in the Sixth Claim for Relief. The only allegations of fraud are against Ticketmaster, which Plaintiffs claim "has made deceptive and/or false statements intended to mislead consumers about the reliability of other Secondary Ticket Exchange, the authenticity of Taylor Swift tickets sold on other Secondary Ticket Exchange, and the ability of purchasers to obtain secondary Taylor Swift tickets from sources other than Ticketmaster." (SAC ¶ 488.) There is no allegation in the Sixth Claim for Relief that SoFi was at all involved in any of those alleged false statements. To the extent that Plaintiffs are asserting that SoFi should be held liable for any such statements, they have not met their pleading obligations under California law or under Rule 9(b) of the Federal Rules of Civil Procedure. *Kidron,* 40 Cal. App. 4th at 1582; *Vess*, 317 F.3d at 1103, 1106 (9th Cir. 2003) ("Rule 9(b) applies to

---

[6] To the extent Plaintiffs are relying upon their antitrust claims to support their claim under Section 17200, such claim would fail for the same reasons set forth *supra*. *See supra* § IV.A.

MOTION TO STAY AND MOTION TO DISMISS COMPLAINT
AGAINST SOFI TECHNOLOGIES, INC.

'averments of fraud' in all civil cases in federal district court, and that in cases in which fraud is not an essential element of the claim, Rule 9(b) applies, but only to particular averments of fraud.").[7]

Finally, Plaintiffs have not alleged facts that they are entitled to any restitution from Defendant SoFi. Plaintiffs allege that "Ticketmaster's unlawful, unfair, and deceptive business practices have caused Plaintiffs to part with value in an amount not presently known with precision, but which is, at minimum, in the thousands of dollars per plaintiff, to which each is entitled to restitution." (SAC ¶ 498.) But the Sixth Claim for Relief alleges "consumer harm" from Ticketmaster's alleged steps to discourage ticket holders from reselling their tickets on other Secondary Ticket Exchanges (SAC ¶¶ 491-96), which is a claim for damages, not restitution. Damages are not an available remedy under the UCL. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144, 1148 (2003) ("We hold that nonrestitutionary disgorgement of profits is not an available remedy in an individual action under the UCL.") As the California Supreme Court held in *Korea Supply*, restitution only allows for restitution of "'money obtained through an unfair business practice to those persons in interest from whom the property was taken, that is to persons who had an ownership interest in the property or those claiming through that person.'" *Id.* at 1149 (quoting *Kraus v. Trinity Mgmt. Servs., Inc.*, 23 Cal.4th 116, 126-127 (2000)). It does not allow for damages flowing from a lost business opportunity such as being able to sell tickets on a different secondary ticket exchange. *Korea Supply*, 29 Cal. 4th at 1150 (citing *MAI Systems Corp. v. UIPS*, 856 F. Supp. 538, 542 (N.D. Cal. 1994).

Nor have Plaintiffs alleged any facts suggesting that they gave any monies or property to Defendant SoFi. Plaintiffs' only allegation as to SoFi is, on information

---

[7] The same is true under California procedures and law. *See, e.g.*, *Stansfield v. Starkey*, 220 Cal. App. 3d 59, 72-73 (1990) ("This particularity requirement necessitates pleading *facts* which 'show how, when, where, to whom, and by what means the representations were tendered.'") (quoting *Hills Transp. Co. v. Sw. Forest Indus. Inc.*, 266 Cal. App. 2d 702, 707 (1968), emphasis in original).

and belief, that Defendant SoFi somehow indirectly "benefits" from ticket sales at the stadium. But Plaintiffs do not allege (and in fact could not allege) what those alleged "benefits" were, that Plaintiffs have a vested interest in such monies, or that they claim to have paid to Ticketmaster that were transferred or paid, directly or indirectly, to Defendant Sofi. (SAC ¶¶ 367, 487-498.) In fact it is implausible that SoFi would receive funds under an agreement where it pays to have its name used with a stadium. Accordingly, Plaintiffs have no claim for restitution from Defendant SoFi under the UCL.

**C.      Plaintiffs Should Not Be Given Leave to Amend Against SoFi.**

The SAC is Plaintiffs' third attempt at alleging viable claims and it should not be granted any additional attempts to rope in SoFi, who has nothing to do with the claims alleged. Plaintiffs first filed in Superior Court for the County of Los Angeles and then amended their Complaint. After removal, Plaintiffs again amended their Complaint. However, in doing so, Plaintiffs only added the most threadbare of allegations against Defendant SoFi. And there is no basis on which to allege that SoFi is at all involved in any of the claims Plaintiffs allege within the confines of Rule 11, and after the SAC was served on SoFi, counsel for SoFi wrote to Plaintiffs' counsel informing them that SoFi has nothing whatsoever to do with the ticketing operations at the stadium. Leave to amend should be denied when any such amendments would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962) (leave to amend should be freely given unless amendment would be futile).

**V.      CONCLUSION**

Plaintiffs have failed at any point to include a single asserted fact suggesting that SoFi Technologies had any role whatsoever in the allegations of the SAC. Aside from the myriad substantive deficiencies in the claims put forward, Plaintiffs have failed under California and federal law to meet their basic pleading burden by alleging facts showing who at SoFi agreed with whom from any other Defendant on any topic related to ticketing at SoFi Stadium. Defendant SoFi Technologies, Inc.

16

respectfully requests that the Court dismiss the claims against SoFi Technologies with prejudice.

Dated: December 15, 2023                    Respectfully submitted,

                                            BERRY SILBERBERG STOKES PC


                                             /s/ Joshua C. Stokes
                                            Robert P. Berry
                                            Carol M. Silberberg
                                            Joshua C. Stokes
                                            Attorneys for Defendant SoFi
                                            Technologies, Inc.

MOTION TO STAY AND MOTION TO DISMISS COMPLAINT
AGAINST SOFI TECHNOLOGIES, INC.

## <u>CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.1</u>

The undersigned, counsel of record for Defendant SoFi Technologies, Inc., certifies that this brief contains 6,768 words, which complies with the word limit of L.R. 11-6.1.

BERRY SILBERBERG STOKES PC


 */s/ Joshua C. Stokes*
Robert P. Berry
Carol M. Silberberg
Joshua C. Stokes
Attorneys for Defendant SoFi
Technologies, Inc.

MOTION TO STAY AND MOTION TO DISMISS COMPLAINT
AGAINST SOFI TECHNOLOGIES, INC.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I hereby certify that, on December 15, 2023, I electronically filed the foregoing document(s) using the CM/ECF system, which will send notification of such filing to the e-mail addresses registered in the CM/ECF system.

*/s/ Joshua C. Stokes*

Joshua C. Stokes

MOTION TO STAY AND MOTION TO DISMISS COMPLAINT
AGAINST SOFI TECHNOLOGIES, INC.