1   LATHAM & WATKINS LLP
        Timothy L. O'Mara (Bar No. 212731)
2           tim.o'mara@lw.com
        Alicia R. Jovais (Bar No. 296172)
3           alicia.jovais@lw.com
        Robin L. Gushman (Bar No. 305048)
4           robin.gushman@lw.com
        Samuel R. Jeffrey (Bar No. 347533)
5           sam.jeffrey@lw.com
    505 Montgomery Street, Suite 2000
6   San Francisco, California 94111-6538
    Telephone: +1.415.391.0600
7   Facsimile: +1.415.395.8095

8   *Attorneys for Defendants Live Nation*
    *Entertainment, Inc. and Ticketmaster L.L.C.*
9

10

11              **UNITED STATES DISTRICT COURT**

12              **CENTRAL DISTRICT OF CALIFORNIA**

13

    JULIE BARFUSS, et al.,                    | Case No. 2:23-cv-01114-GW-DTBx
14
                        Plaintiffs,           | **MEMORANDUM OF POINTS**
15                                            | **AND AUTHORITIES IN SUPPORT**
    v.                                        | **OF DEFENDANTS' MOTION TO**
16                                            | **DISMISS THIRD AMENDED**
    LIVE NATION ENTERTAINMENT,                | **COMPLAINT**
17  INC., TICKETMASTER L.L.C.,
    STADCO LA, LLC as DOE 1, and              | The Honorable George H. Wu
18  DOES 2 through 10, inclusive,
19                      Defendants.
20
                                              | Hearing Date: May 15, 2025
21
                                              | Hearing Time: 8:30 a.m.
22
                                              | Courtroom: 9D, 9th Floor
23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2
I.      INTRODUCTION ...............................................................................................1

3
II.     SUMMARY OF ALLEGATIONS ....................................................................2

4
        A.      The Parties ............................................................................................2

5
        B.      The Eras Tour Onsale ...........................................................................2

6
        C.      Plaintiffs' Claims .................................................................................4

7
III.    LEGAL STANDARD ........................................................................................6

8
IV.     ARGUMENT .....................................................................................................6

9
        A.      Plaintiffs Fail to Plausibly Allege Breach of Contract ........................7

10
                1.      Plaintiffs' Claim for Breach "During the Presale"
                        Fails.............................................................................................7

11

12
                2.      Plaintiffs' Claim for Breach "After Ticket
                        Purchase" Fails ...........................................................................8

13
        B.      Plaintiffs Fail to Plausibly Allege Fraud or Negligent
                Misrepresentation.................................................................................9

14

15
        C.      Plaintiffs Fail to Plausibly Allege Negligence...................................10

16
        D.      Plaintiffs Fail to Plausibly Allege Any Antitrust
                Violation.............................................................................................12

17
                1.      Plaintiffs Fail to Plausibly Allege Any Well-
                        Defined Market or Monopoly Power Within That
                        Market........................................................................................12

18

19
                2.      Plaintiffs Fail to Plausibly Allege Any Unlawful
                        Tie .............................................................................................14

20

21
                3.      Plaintiffs' Exclusive Dealing Claim Fails Under
                        Twombly or for Lack of Antitrust Standing..............................16

22
                4.      Dynamic Pricing Is Not Price Discrimination
                        Under § 17031 ...........................................................................17

23

24
                5.      Plaintiffs Do Not Allege Any Agreement to
                        Support Claims for Price Fixing, Group
                        Boycotting, or Market Division.................................................18

25

26
        E.      Plaintiffs Fail to Plausibly Allege a UCL Claim ...............................19

        F.      Dismissal With Prejudice Is Warranted..............................................21

27
V.      CONCLUSION.................................................................................................21

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

MEM. OF POINTS & AUTHS. ISO
DEFS.' MOTION TO DISMISS
CASE NO. 2:23-cv-01114-GW-DTBx

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Am. Ad. Mgmt., Inc. v. Gen. Tel. Co. of Cal.*,
190 F.3d 1051 (9th Cir. 1999) ................................................................. 16

*Ameri v. Ticketmaster LLC*,
No. 18-cv-06750-VC (N.D. Cal. Apr. 1, 2019) .................................... 2

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..................................................................... 6, 18

*Avakian v. Wells Fargo Bank, N.A.*,
827 F. App'x 765 (9th Cir. 2020) ............................................................ 9

*Bakay v. Apple Inc.*,
2024 WL 3381034 (N.D. Cal. July 11, 2024) .................................... 17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................ 16

*Big Bear Lodging Ass'n v. Snow Summit, Inc.*,
182 F.3d 1096 (9th Cir. 1999) ............................................................. 18

*Brantley v. NBC Universal, Inc.*,
675 F.3d 1192 (9th Cir. 2012) ............................................................. 14

*Cal. Crane Sch., Inc. v. Google LLC*,
722 F. Supp. 3d 1026 (N.D. Cal. 2024) ....................................... 20, 21

*Cal. Wholesale Elec. Co. v. Micro Switch*,
1983 WL 1790 (C.D. Cal. Jan. 12, 1983) ........................................... 18

*Cambridge Lane, LLC v. J-M Mfg. Co., Inc.*,
2020 WL 8410437 (C.D. Cal. May 14, 2020) (Wu, J.) ....................... 9

*Coast Surgery Ctr. v. United Healthcare Ins. Co.*,
2024 WL 650174 (C.D. Cal. Jan. 5, 2024) ......................................... 21

*Davis v. HSBC Bank Nev. N.A.*,
691 F.3d 1152 (9th Cir. 2012) ............................................................. 20

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

MEM. OF POINTS & AUTHS. ISO
DEFS.' MOTION TO DISMISS
CASE NO. 2:23-cv-01114-GW-DTBx

*Doe v. CVS Pharm., Inc.*,
  982 F.3d 1204 (9th Cir. 2020).................................................................20

*Eastman Kodak Co. v. Image Tech. Servs.*,
  504 U.S. 451 (1992) ...............................................................................14

*Evans v. Bekins Moving Sols.*,
  2024 WL 4404971 (C.D. Cal. Aug. 12, 2024)..........................................9

*Feitelson v. Google*,
  80 F. Supp. 3d 1019 (N.D. Cal. 2015) ....................................................17

*FlightBlitz, Inc. v. Tzell Travel, LLC*,
  2021 WL 6618640 (C.D. Cal. Nov. 29, 2021)........................................18

*Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*,
  209 Cal. App. 4th 1118 (2012)...............................................................12

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
  528 U.S. 167 (2000) .................................................................................2

*FTC v. Facebook*,
  560 F. Supp. 3d 1 (D.D.C. 2021) ............................................................14

*FTC v. Qualcomm Inc.*,
  969 F.3d 974 (9th Cir. 2020)............................................................12, 17

*Harris v. Capital Records Distrib.*,
  64 Cal. 2d 454 (1966)..............................................................................18

*Hernandez v. Select Portfolio*,
  2015 WL 3914741 (C.D. Cal. June 25, 2015)...........................................9

*Hicks v. PGA Tour, Inc.*,
  897 F.3d 1109 (9th Cir. 2018)................................................................12

*In re ATM Fee Antitrust Litig.*,
  768 F. Supp. 2d 984 (N.D. Cal. 2009) ....................................................13

*In re DRAM Indirect Purchaser Antitrust Litig.*,
  28 F.4th 42 (9th Cir. 2022)......................................................................20

*In re Future Motion, Inc. Prods. Liab. Litig.*,
  2024 WL 3408224 (N.D. Cal. July 12, 2024)..........................................10

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

MEM. OF POINTS & AUTHS. ISO
DEFS.' MOTION TO DISMISS
CASE NO. 2:23-cv-01114-GW-DTBx

*In re Gilead Scis. Sec. Litig.*,
  536 F.3d 1049 (9th Cir. 2008)..................................................................6

*Jefferson Par. Hosp. Dist. No. 2 v. Hyde*,
  466 U.S. 2 (1984), *abrogated on other grounds by Illinois Tool
  Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28 (2006).............................14

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009)..................................................................9

*Kendall v. Visa U.S.A.*,
  518 F.3d 1042 (9th Cir. 2008)..........................................................16, 19

*Kennedy Theater Ticket Serv. v. Ticketron*,
  342 F. Supp. 922 (E.D. Pa. 1972)...........................................................15

*Ladd v. County of San Mateo*,
  12 Cal. 4th 913 (1996)..............................................................................11

*Leegin Creative Leather Prod., Inc. v. PSKS, Inc.*,
  551 U.S. 877 (2007) ..................................................................................12

*Moore v. Kayport Package Exp., Inc.*,
  885 F.2d 531 (9th Cir. 1989)....................................................................21

*Nazemi v. Specialized Loan Servicing, LLC*,
  637 F. Supp. 3d 856 (C.D. Cal. 2022)....................................................20

*Nova Designs, Inc. v. Scuba Retailers Ass'n*,
  202 F.3d 1088 (9th Cir. 2000)..................................................................12

*Ohio v. Am. Express Co.*,
  585 U.S. 529 (2018)...................................................................................12

*Patriot Sci. Corp. v. Korodi*,
  504 F. Supp. 2d 952 (S.D. Cal. 2007) ......................................................7

*People v. Waisvisz*,
  221 Ill. App. 3d 667 (1991)......................................................................15

*Pirozzi v. Apple Inc.*,
  913 F. Supp. 2d 840 (N.D. Cal. 2012) ...................................................11

*Puri v. Khalsa*,
  674 F. App'x 679 (9th Cir. 2017)..............................................................9

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

MEM. OF POINTS & AUTHS. ISO
DEFS.' MOTION TO DISMISS
CASE NO. 2:23-cv-01114-GW-DTBx

*Redmond v. Mo. W. State Coll.*,
  1988 WL 142119 (W.D. Mo. Nov. 2, 1988) ....................................................... 14

*Rickards v. Canine Eye Registration Found., Inc.*,
  704 F.2d 1449 (9th Cir. 1983) .......................................................................... 18

*Rick-Mik Enters., Inc. v. Equilon Enters. LLC*,
  532 F.3d 963 (9th Cir. 2008) ............................................................................ 15

*Singman v. NBA Prop., Inc.*,
  2014 WL 7892049 (C.D. Cal. Jan. 17, 2014), *aff'd*, 656 F. App'x
  371 (9th Cir. 2016) ........................................................................................... 13

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020) ............................................................................. 21

*Spain v. EMC Mortg. Co.*,
  2008 WL 752610 (D. Ariz. Mar. 18, 2008) ......................................................... 6

*Stanislaus Food Prods. Co. v. USS-POSCO Indus.*,
  782 F. Supp. 2d 1059 (E.D. Cal. 2011) ............................................................. 18

*Stubhub, Inc. v. Golden State Warriors, LLC*,
  2015 WL 6755594 (N.D. Cal. Nov. 5, 2015) ..................................................... 14

*Sumotext Corp. v. Zoove, Inc.*,
  2016 WL 6524409 (N.D. Cal. Nov. 3, 2016) ....................................................... 7

*Tarasoff v. Regents of Univ. of Calif.*,
  17 Cal.3d 425 (1976) ........................................................................................ 11

*Ticketmaster L.L.C. v. RMG Techs., Inc.*,
  536 F. Supp. 2d 1191 (C.D. Cal. 2008) ............................................................. 13

*U.S. v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) .............................................................................. 8

*Walsh v. W. Valley Mission Cmty. Coll. Dist.*,
  66 Cal. App. 4th 1532 (1998) ............................................................................. 7

*Wilson v. Hewlett-Packard Co.*,
  668 F.3d 1136 (9th Cir. 2012) ........................................................................... 19

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v

MEM. OF POINTS & AUTHS. ISO
DEFS.' MOTION TO DISMISS
CASE NO. 2:23-cv-01114-GW-DTBx

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### STATUTES

Cal. Bus. Prof. Code § 17031 ........................................................................ 5, 17, 18

### TREATISES

30A C.J.S. Entertainment and Amusement (Dec. 2024 update) ............................ 15

Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* (2024)............................ 15

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

vi

# I.    INTRODUCTION

Plaintiffs are 355 fans of Taylor Swift, "[a] global superstar" and "one of the most, if not the most, iconic artists in the world."  Third Am. Compl., ECF No. 128 ("TAC") ¶ 372.  Like "millions of [other] fans," *id.*, Plaintiffs attempted to buy tickets during the primary onsale to see Ms. Swift perform in The Eras Tour.  But even in the largest stadiums in the country, there were simply "not...enough seats to meet the demand," and Plaintiffs allegedly did not secure tickets.  *Id.* ¶ 383.  Plaintiffs now allege that their failure to secure tickets to The Eras Tour, and their experience with The Eras Tour presale, was the product of a grab bag of contractual breaches, fraud, negligence, and violations of antitrust and unfair competition laws.

Plaintiffs' claims against Defendants Live Nation and Ticketmaster are nonsensical, contradict sources incorporated by reference in the TAC, and fail as a matter of law.  Specifically, Plaintiffs: (1) fail to plausibly allege the existence of any contract that could have been breached, requiring dismissal of Claim One for Breach of Contract; (2) do not plead any alleged misrepresentation with particularity, requiring dismissal of Claim Two for Fraud and Claim Three for Negligent Misrepresentation; (3) fail to allege any legally cognizable duty of care that Defendants could have been negligent in discharging, requiring dismissal of Claim Four for Negligence; (4) do not even attempt to plead any market definition to support their antitrust claims, and fail to allege basic elements of their many nebulous antitrust theories, requiring dismissal of Claim Five for Antitrust Violations; and (5) fail to allege any unlawful, unfair, or fraudulent conduct, nor an inadequate remedy at law, requiring dismissal of Claim Six for UCL violations.

The TAC is Plaintiffs' fourth attempt to plead plausible claims since December 2022.  Despite four tries over two years, the TAC remains fundamentally senseless and legally deficient.  Dismissal with prejudice is warranted.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

MEM. OF POINTS & AUTHS. ISO
DEFS.' MOTION TO DISMISS
CASE NO. 2:23-cv-01114-GW-DTBx

## II.     SUMMARY OF ALLEGATIONS

### A.     The Parties

*Plaintiffs.*  Plaintiffs are 355 Taylor Swift fans from across the United States and Canada.[1]  TAC ¶¶ 3, 8-363.

*Defendants Ticketmaster and Live Nation.*  Ticketmaster is a ticketing company—it provides primary ticketing services to venues, helping them sell and service tickets to the events that they host.  *Id.* ¶¶ 369-370.  It also provides secondary ticketing services to ticket resellers for certain events, allowing them to connect with (and resell to) potential purchasers.  *Id.* ¶ 371.

Live Nation is a concert promotion company—it works with artists to finance live events and tours, providing services and upfront funds to the artist in exchange for a portion of the revenue if the event turns a profit.  *Id.* ¶ 369.

Ticketmaster and Live Nation merged in 2010.  *Id.*

*Other Defendants.*  Defendant StadCo LA, LLC allegedly operates SoFi Stadium, "one of the venues for [The Eras Tour]."  *Id.* ¶ 366.  Plaintiffs also allege that there are nine "Doe" Defendants who are "in some way responsible for the[ir] damages and injuries."  *Id.* ¶¶ 367-368.

### B.     The Eras Tour Onsale

Taylor Swift recently concluded The Eras Tour, "her record-breaking, world-wide concert tour."  *Id.* ¶ 372.  In anticipation of huge demand, primary tickets

---

[1]     Defendants are concurrently moving to compel arbitration of the claims of five of these Plaintiffs—Clay Murray, Heather Slack, Eleana Villa, Elmer Bunger, and Virginia Spielman—who are bound to a valid agreement to arbitrate before JAMS.  Whether the Court grants or denies that Motion, the claims of these Plaintiffs should be dismissed either for the reasons herein or for lack of Article III standing, as they did not even attempt to participate in The Eras Tour onsale in November 2022. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000) (Article III standing requires that the plaintiff has been injured by "the challenged action of the defendant"); Remand Order, *Ameri v. Ticketmaster LLC*, No. 18-cv-06750-VC (N.D. Cal. Apr. 1, 2019), ECF No. 42 (court lacked subject matter jurisdiction over claim of anticompetitive practices inflating resale ticket prices when plaintiff "never purchased any resale tickets,…and neither party has adequately shown that [plaintiff] was otherwise injured by the alleged practices.").

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

2

MEM. OF POINTS & AUTHS. ISO
DEFS.' MOTION TO DISMISS
CASE NO. 2:23-cv-01114-GW-DTBx

1   to The Eras Tour were initially sold through two presales[2] in 2022: (1) the Capital

2   One presale, which was limited to Capital One cardholders, and (2) the

3   TaylorSwiftTix presale. *Id.* ¶¶ 373, 380. To participate in the TaylorSwiftTix

4   presale, a fan had to register with Ticketmaster's Verified Fan program—a fan sign-

5   up and authentication process for certain presales, designed to verify that a given

6   ticket purchaser is a real fan, not a bot or professional reseller. *See id.* ¶ 373.[3]

7   Plaintiffs claim that, despite registering with Verified Fan, Ticketmaster denied them

8   a "fair chance to get a ticket." *Id.* ¶ 399. For instance, Ticketmaster supposedly:

9   • Gave out too many (*id.* ¶¶ 379, 383) and also too few (*id.* ¶ 399) presale

10     access codes;

11   • Encouraged people to use their phones to access the presale when

12     computers would have been better (*id.* ¶ 411);

13   • Released an "insufficient [number of] ticket[s]" during the presales (*id.*

14     ¶¶ 380, 385), yet also sold out of all tickets too quickly (*id.* ¶ 381); and

15   • Allowed "scalpers and bots" to buy and resell tickets instead of real

16     fans (*id.* ¶ 384).

17       In addition, despite claiming to have been harmed by their inability to

18   purchase The Eras Tour tickets (*id.* ¶¶ 397-399), Plaintiffs also allege that they were

19   harmed when they *did* secure tickets. Specifically, Ticketmaster allegedly:

20   • Sent non-VIP tickets to buyers of VIP tickets (*id.* ¶ 387);

21   • Sold obstructed-view tickets to purchasers who did not realize what

22     they were buying (*id.* ¶ 388);

23   • Sold ADA-compliant seats without verification of need (*id.* ¶ 392);

24

25   _____

26   [2]    Both presales were part of the overall "onsale," an industry term of art that typically includes all manner of sales available to the public.

27   [3]    Ticketmaster developed Verified Fan in response to the widespread practice of professional resellers purchasing tickets in the initial onsale (often through bots),

28   only to turn around and resell those tickets at a premium. Verified Fan was employed to help distribute tickets more fairly by giving real fans who registered a chance at buying tickets.

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

MEM. OF POINTS & AUTHS. ISO
DEFS.' MOTION TO DISMISS
CASE NO. 2:23-cv-01114-GW-DTBx

- • Provided "tickets at seat locations other than those for which Plaintiffs purchased their tickets" (*id.* ¶ 404); and

- • Charged Plaintiffs "excessive service fees" (*id.* ¶ 394).

**C.    Plaintiffs' Claims**

Plaintiffs allege six claims for relief against various groups of Defendants.

***Claim One: Breach of Contract (Ticketmaster).***    Plaintiffs allege that Ticketmaster breached contracts both "during the presale" and "after ticket purchase." *Id.* ¶¶ 396-405.  During the presale, Ticketmaster supposedly "agreed that, in exchange for Plaintiffs purchasing a significant amount of merchandise and/or in exchange for their purchase of the canceled 'Lover's Fest' tickets, Plaintiffs would be entitled to participate in the presale of 'The Eras' tour tickets," and Ticketmaster "breached [this] Contract by failing to actually provide the proper presale it promised." *Id.* ¶¶ 397, 399.  Post-purchase, Ticketmaster allegedly agreed that "[i]n exchange for a stated price, a Plaintiff who completed a purchase online would receive tickets for that price," but "in breach of that contract," (1) "ticket prices increased during Plaintiffs' purchases," (2) Ticketmaster "[took] tickets away from certain Plaintiffs," and (3) Ticketmaster "provid[ed] tickets at seat locations other than those for which Plaintiffs purchased their tickets." *Id.* ¶¶ 401, 404.

***Claim Two: Fraud (All Defendants).***    Plaintiffs allege that Defendants misrepresented "how to and who could get 'codes' and/or otherwise establish themselves as 'verified' fans, how best to get tickets, and who could participate in the presale." *Id.* ¶ 407; *see generally id.* ¶¶ 406-418.

***Claim Three: Negligent Misrepresentation (All Defendants).***    Plaintiffs allege that the same "misrepresentations" that form the basis of Claim Two also constitute negligent misrepresentation. *Id.* ¶¶ 419-422.

***Claim Four: Negligence (Ticketmaster and Live Nation).***    Plaintiffs allege that Ticketmaster and Live Nation breached a "duty of reasonable care to allow [Plaintiffs] to use the [ticket sales] platform for the purpose for which [Ticketmaster]

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

MEM. OF POINTS & AUTHS. ISO
DEFS.' MOTION TO DISMISS
CASE NO. 2:23-cv-01114-GW-DTBx

provides it, and for the platform to function properly and not cause unreasonable delay, fail to process user input accurately (or at all) or 'crash' altogether." *Id.* ¶ 425; *see generally id.* ¶¶ 423-428.

***Claim Five: Antitrust Violations (All Defendants).*** Plaintiffs lump together six distinct antitrust theories into a single claim for "Antitrust Violations" under California's Cartwright Act. *Id.* ¶¶ 429-484. They use the phrases "Primary Ticket Market" and "Secondary Ticket Market," but never attempt to define such markets. Plaintiffs allege the following specific theories:

- ***Unlawful Tying***, under two theories: (1) "tying the sale of Taylor Swift tickets sold in the Primary Market to Ticketmaster's Secondary Ticket Exchange services for the resale of Taylor Swift tickets" (*id.* ¶ 436); and (2) tying the purchase of Taylor Swift merchandise and/or prior tour tickets to obtaining Verified Fan status (*id.* ¶ 438);

- ***Exclusive Dealings***, alleging unspecified exclusive arrangements between Ticketmaster, venues, artists, and ticket buyers (*id.* ¶¶ 444-452);

- ***Price Discrimination***, alleging that "Ticketmaster's conduct in changing pricing during sales on its Primary Ticket Platform and manipulation of its Secondary Ticket Market for Taylor Swift tickets constitutes price discrimination in violation of [California Business & Professions Code] § 17031," because seats with "the same view of the musician, at the same venue, and with the same amount of VIP benefits...should sell at a similar price" (*id.* ¶¶ 454-455);

- ***Price Fixing***, alleging that "Ticketmaster's conduct of allying with scalpers and venues such as SoFi Stadium has amounted to price fixing," yet failing to specify any agreement (*id.* ¶¶ 463);

- ***Group Boycotting***, alleging that Ticketmaster agreed "with competitors like SeatGeek…to refuse to conduct business with any competitor that

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

5

MEM. OF POINTS & AUTHS. ISO
DEFS.' MOTION TO DISMISS
CASE NO. 2:23-cv-01114-GW-DTBx

1    does not conform to Ticketmaster's demands," yet failing to specify

2    any such "demands" (*id.* ¶ 472); and

3    •   ***Market Division Scheme***, alleging that Ticketmaster "specifically

4      carved out small territories to give to competitors like SeatGeek in an

5      attempt to hide the level of monopolistic power and control

6      Ticketmaster has" (*id.* ¶ 479).

7      ***Claim Six: UCL Violations (All Defendants).*** Plaintiffs assert violations of

8 California's Unfair Competition Law because Ticketmaster allegedly "make[s] it

9 difficult for ticket holders to sell their tickets on competitive Secondary Ticket

10 Exchanges," "delay[s] the delivery" of primary tickets, issues "paperless tickets"

11 that can be resold "only...through Ticketmaster's Secondary Ticket Exchange," and

12 threatened StubHub with a tortious interference claim. *Id.* ¶¶ 485-496.

13      Plaintiffs seek actual damages, punitive damages, treble damages, injunctive

14 relief, restitution, and attorneys' fees. *Id.* at 48-49.

15 **III.**    **LEGAL STANDARD**

16      "To survive a motion to dismiss, a complaint must contain sufficient factual

17 matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

18 *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A court need not

19 accept "allegations that are merely conclusory, unwarranted deductions of fact, or

20 unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th

21 Cir. 2008).

22 **IV.**    **ARGUMENT**

23      Plaintiffs' "scattershot approach to pleading makes it extremely difficult, if

24 not impossible, to discern the precise nature of [their] claims, much less the facts

25 and legal authority which [they] allege[] support those claims." *Spain v. EMC*

26 *Mortg. Co.*, 2008 WL 752610, at *3 (D. Ariz. Mar. 18, 2008). Nonetheless, wading

27 through Plaintiffs' vague and often senseless allegations, each of Plaintiffs' claims

28 suffers from one or more fatal legal defects.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

MEM. OF POINTS & AUTHS. ISO
DEFS.' MOTION TO DISMISS
CASE NO. 2:23-cv-01114-GW-DTBx

### A.     Plaintiffs Fail to Plausibly Allege Breach of Contract

To state a plausible claim for breach of contract, Plaintiffs must allege: (1) a contract; (2) Plaintiffs' performance or excuse for non-performance; (3) Ticketmaster's breach; and (4) resulting damages to Plaintiffs.  *Walsh v. W. Valley Mission Cmty. Coll. Dist.*, 66 Cal. App. 4th 1532, 1545 (1998).  Plaintiffs fail out of the gate because they do not plead any contract with the requisite specificity.  And even if the Court construed the contract as the terms governing the Verified Fan program, Plaintiffs do not plausibly allege any breach.

### 1.     *Plaintiffs' Claim for Breach "During the Presale" Fails*

Plaintiffs allege two breach of contract theories: one "during the presale" and another "after ticket purchase."  TAC ¶¶ 396-405.  In the first theory, Plaintiffs claim that they "entered into a contract with Ticketmaster on November 15, 2022," pursuant to which "Ticketmaster agreed that, in exchange for Plaintiffs purchasing a significant amount of merchandise and/or in exchange for their purchase of the canceled 'Lover's Fest' tickets, Plaintiffs would be entitled to participate in the presale of 'The Eras' tour tickets."[4]  *Id.* ¶ 397.  Ticketmaster supposedly breached this contract "by failing to actually provide the proper presale it promised," *e.g.*, it failed to: "exclude those without codes," "give out codes to those who qualified," and "give those with codes the fair chance to get a ticket."  *Id.* ¶ 399.

A plaintiff's failure to attach the contract to the complaint or to plead its essential terms with adequate particularity is grounds for dismissal.  *See, e.g.*, *Sumotext Corp. v. Zoove, Inc.*, 2016 WL 6524409, at *2 (N.D. Cal. Nov. 3, 2016).  Here, Plaintiffs do neither.  What exactly did Ticketmaster promise?  To permit Plaintiffs "to participate in the presale"?  If so, then there is no breach; Plaintiffs

---

[4]     It is unclear how Plaintiffs could have entered a contract *in November 2022* in which they agreed to purchase tickets to "Taylor Swift's prior tour, 'Lover Fest,'" which was canceled due to COVID-19"—*i.e.*, *in 2021*.  *Id.* ¶ 438.  *See Patriot Sci. Corp. v. Korodi*, 504 F. Supp. 2d 952, 960 (S.D. Cal. 2007) ("[P]ast consideration cannot support a contract." (citation omitted)).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

MEM. OF POINTS & AUTHS. ISO
DEFS.' MOTION TO DISMISS
CASE NO. 2:23-cv-01114-GW-DTBx

never allege that they couldn't *participate* in the presale, only that they didn't secure tickets or didn't experience a "proper presale." TAC ¶ 399. And if the promise was instead to "provide a proper presale," when and how did Ticketmaster make that promise, and what constitutes a "proper presale" anyway? Plaintiffs never say.

If the Court construes Plaintiffs' claim as one for breach of the terms governing the Verified Fan sign-up program, it still fails. The Verified Fan terms— which Plaintiffs incorporate by reference (*id.* ¶ 438)—do *not* promise that Ticketmaster will "exclude those without codes" or "give out codes to those who qualified." *Id.* ¶ 399. To the contrary, those terms confirm that "*access codes are never guaranteed.*" Decl. of T. O'Mara in Supp. of Mot. to Dismiss ("O'Mara Decl."), Ex. 1 (emphasis added).[5] Nor do the terms promise a "fair chance" (TAC ¶ 399) for everyone with a code to get a ticket to a tour with unprecedented demand.

### 2.    Plaintiffs' Claim for Breach "After Ticket Purchase" Fails

Plaintiffs' claim for breach of contract "after ticket purchase" fares no better. According to Plaintiffs, Ticketmaster promised that, "[i]n exchange for a stated price, a Plaintiff who completed a purchase online would receive tickets for that price," but (1) "ticket prices increased during Plaintiffs' purchases," (2) Ticketmaster "[took] tickets away from certain Plaintiffs," and (3) Ticketmaster "provid[ed] tickets at seat locations other than those for which Plaintiffs purchased their tickets." *Id.* ¶¶ 401, 404.

To start, this second contract theory is inconsistent with the first. In their "during the presale" claim, Plaintiffs suggest that all 355 Plaintiffs were harmed because they did *not* secure tickets during the presale. *Id.* ¶¶ 397-399. Yet in their "after ticket purchase" claim, all 355 Plaintiffs also claim they *did* secure tickets— just not on the terms they were supposedly promised. This alone warrants dismissal.

---

[5]    Because the Verified Fan terms are incorporated by reference, the Court may consider them. *See U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("[W]ritten instruments…may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or [it] forms the basis of the plaintiff's claim.").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

MEM. OF POINTS & AUTHS. ISO
DEFS.' MOTION TO DISMISS
CASE NO. 2:23-cv-01114-GW-DTBx

1  *See Hernandez v. Select Portfolio*, 2015 WL 3914741, at *10 (C.D. Cal. June 25,

2  2015) ("Contradictory allegations...are inherently implausible.").

3      In any event, Plaintiffs again fail to plead any contract or breach with adequate

4  specificity.  When and how did Ticketmaster promise that ticket prices would remain

5  unchanged "during Plaintiffs' purchases," whatever time period that means?  Who

6  did Ticketmaster "take tickets away from" and when?  Who obtained a seat other

7  than the seat they believe they paid for?  Plaintiffs' allegations fail to provide basic

8  notice of the nature of their claim.

9      **B.    Plaintiffs Fail to Plausibly Allege Fraud or Negligent**

10     **Misrepresentation**

11     Plaintiffs' claims for fraud and negligent misrepresentation (which sounds in

12  fraud) must be pled with particularity under Rule 9(b).  *Avakian v. Wells Fargo Bank,*

13  *N.A.*, 827 F. App'x 765, 766 (9th Cir. 2020) (because "negligent misrepresentation"

14  is a "fraud-based claim[]," it "must meet the heightened pleading requirements of

15  Rule 9(b)"); *Puri v. Khalsa*, 674 F. App'x 679, 689 (9th Cir. 2017) (same);

16  *Cambridge Lane, LLC v. J-M Mfg. Co., Inc.*, 2020 WL 8410437, at *7 (C.D. Cal.

17  May 14, 2020) (Wu, J.) (If "specific allegations of fraud are made," then "heightened

18  pleading" is "required for a negligent misrepresentation claim.").   This means

19  Plaintiffs must plead the "who, what, when, where, and how" of the alleged

20  misrepresentations.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124-25 (9th Cir.

21  2009); *Evans v. Bekins Moving Sols.*, 2024 WL 4404971, at *4 (C.D. Cal. Aug. 12,

22  2024) (plaintiffs failed to "plead...negligent representation with the particularity

23  required by Rule 9(b).").  Plaintiffs do not meet this pleading standard.

24     Plaintiffs' overarching theory of fraud is that Defendants made false promises

25  about "how to and who could get 'codes' and/or otherwise establish themselves as

26  'verified' fans, how best to get tickets, and who could participate in the presale."

27  TAC ¶ 407.  But Plaintiffs' subsequent laundry list of "representations" does not

28  plead who said what to whom, when, where, and how.  For instance:

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

MEM. OF POINTS & AUTHS. ISO
DEFS.' MOTION TO DISMISS
CASE NO. 2:23-cv-01114-GW-DTBx

- • Ticketmaster supposedly "made it appear as if only those with codes would be able to join the presale" (*id.* ¶ 408), but what did Ticketmaster actually say?  When?  Who relied on it and how?

- • Ticketmaster supposedly "made out that spending enough would get a buyer a code" (*id.* ¶ 409), and that "purchases for [the prior Lover Fest tour] would advantage [fans] in acquiring tickets for The Eras [T]our." *Id.* ¶ 412.  These assertions lack a who, when, where, and how, but they also directly contradict the Verified Fan terms incorporated in the TAC, which provide that "a purchase or payment of any kind *will not increase your chances* of getting an access code." O'Mara Decl. Ex. 1 (emphasis added).

- • Ticketmaster supposedly "advised using a laptop or desktop computer" to participate in the onsale (*id.* ¶ 411), but Plaintiffs never say when or how this "misrepresentation" was made and to whom, or why anyone found it material.

- • Ticketmaster supposedly "caused prospective purchasers to believe that participating in [the Capital One presale] would increase their chance of getting tickets" (*id.* ¶ 413), but Plaintiffs do not allege any statements that Ticketmaster made in connection with that program at all.

Plaintiffs' fraud and negligent misrepresentation claims thus fail.  *See In re Future Motion, Inc. Prods. Liab. Litig.*, 2024 WL 3408224, at *6 (N.D. Cal. July 12, 2024) ("This scattershot approach to pleading is not adequate to give Defendant notice of the 'who, what, where, when, and why' of the misconduct alleged such that Defendant can defend against the charge.").

## C.    Plaintiffs Fail to Plausibly Allege Negligence

Plaintiffs next allege that Ticketmaster was negligent in maintaining its platform because it failed "to protect [the platform] from bot attacks and other unauthorized uses" and allowed third parties to run software that impeded its

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

MEM. OF POINTS & AUTHS. ISO
DEFS.' MOTION TO DISMISS
CASE NO. 2:23-cv-01114-GW-DTBx

1    functioning.  TAC ¶¶ 425-427.  To establish negligence, Plaintiffs must plausibly

2    allege: (1) a legal duty of care owed by the defendant to the plaintiff, (2) a breach of

3    that duty, (3) causation linking the breach to the plaintiff's injury, and (4) actual

4    damages.  *Ladd v. County of San Mateo*, 12 Cal. 4th 913, 917 (1996).  A legal duty

5    of care "means the duty to use ordinary care in activities from which harm to the

6    plaintiff might reasonably be anticipated."  *Pirozzi v. Apple Inc.*, 913 F. Supp. 2d

7    840, 851 (N.D. Cal. 2012).

8    Plaintiffs fail at the first element.  They contend that Ticketmaster's "claim to

9    provide superior service" somehow creates "a duty of reasonable care to allow

10   [buyers] to use the platform for the purpose for which Ticketmaster provides it, and

11   for the platform to function properly and not cause unreasonable delay, fail to

12   process user input accurately (or at all) or 'crash' altogether."  TAC ¶ 425.  But as a

13   matter of law, Ticketmaster does not owe any legal duty to Plaintiffs to ensure that

14   a high-demand onsale like The Eras Tour (or any onsale) will be free from a third

15   party's illicit attempt to attack the platform, or to ensure that third parties properly

16   run their software on the platform.  *See Pirozzi*, 913 F. Supp. 2d at 852 ("Plaintiffs

17   have not yet adequately pled or identified a legal duty on the part of Apple to protect

18   users' personal information from third-party app developers."); *Tarasoff v. Regents*

19   *of Univ. of Calif.*, 17 Cal.3d 425, 435 (1976) (A defendant "generally owes no duty

20   to protect another from the conduct of third-parties.").[6]  And if claiming to offer

21

22   [6]    Indeed, the Terms of Use to which every ticket purchaser agrees provide that
     Ticketmaster (1) "PROVIDES THE SITE…'AS IS' AND 'AS AVAILABLE,'" (2)
23   "DOES NOT GUARANTEE THAT THE SITE…WILL ALWAYS FUNCTION
     WITHOUT DISRUPTIONS, DELAYS, OR IMPERFECTIONS," and (3) "[IS]
24   NOT RESPONSIBLE FOR THE ACTIONS OR INFORMATION OF THIRD
     PARTIES." O'Mara Decl. Ex. 2.  These Terms of Use are incorporated by reference
25   in the TAC.  *See* TAC ¶ 389 (referring to Defendants' "waiver" to which Plaintiffs
     were required to agree).
26        In addition, the Terms of Use make clear that Defendants "WILL HAVE NO
     LIABILITY        OR        RESPONSIBILITY        WHATSOEVER
27   FOR…DAMAGE…RESULTING FROM YOUR ACCESS TO AND USE OF
     OUR    SITE,…ANY…DEFECTS,    [OR]    ANY    ERRORS,    MISTAKES,
28   INACCURACIES, OR OMISSIONS IN ANY CONTENT." O'Mara Decl. Ex. 2.
     Plaintiffs' negligence and breach of contract claims are barred by this limitation of

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

MEM. OF POINTS & AUTHS. ISO
DEFS.' MOTION TO DISMISS
CASE NO. 2:23-cv-01114-GW-DTBx

1  "superior service" was enough to create such a duty, then every platform would be

2  liable for negligence every time a user was unsatisfied. Plaintiffs' negligence claim

3  should be dismissed.

4      **D.**    **Plaintiffs Fail to Plausibly Allege Any Antitrust Violation[7]**

5      Plaintiffs next attempt to plead a series of distinct antitrust theories under a

6  single claim for "Antitrust Violations." All of these theories fail because Plaintiffs

7  do not even purport to define any relevant antitrust market. And each theory also

8  fails because it does not plead essential elements of the relevant antitrust claim.

9      ***1.***    ***Plaintiffs Fail to Plausibly Allege Any Well-Defined Market or***

10              ***Monopoly Power Within That Market***

11      All of Plaintiffs' antitrust claims fail for the threshold reason that they do not

12  even attempt to define relevant antitrust markets. A relevant antitrust market is "the

13  area of effective competition...within which significant substitution in consumption

14  or production occurs." *Ohio v. Am. Express Co.*, 585 U.S. 529, 543 (2018) (citation

15  omitted). "A threshold step in any antitrust case is to accurately define the relevant

16  market," *FTC v. Qualcomm Inc.*, 969 F.3d 974, 992 (9th Cir. 2020), because

17  "[w]ithout a definition of [the] market there is no way to measure [the defendant's]

18  ability to lessen or destroy competition," *Am. Express*, 585 U.S. at 543 (citation

19  omitted).[8] Failure to plead a plausible market is grounds for dismissal. *See Hicks v.*

20  *PGA Tour, Inc.*, 897 F.3d 1109, 1120-21 (9th Cir. 2018).

21

22

23  liability, which Defendants reserve all rights to enforce. *See Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*, 209 Cal. App. 4th 1118, 1126 (2012).

24  [7]    This section relies on case law interpreting both the Cartwright Act and the

25  Sherman Act because "[t]he Cartwright Act is patterned after the Sherman Act, and 'federal cases interpreting the Sherman Act are applicable to problems arising under the Cartwright Act.'" *Nova Designs, Inc. v. Scuba Retailers Ass'n*, 202 F.3d 1088,

26  1092 (9th Cir. 2000) (citation omitted).

27  [8]    Certain claims, such as horizontal price-fixing, are so "manifestly anticompetitive" that courts need not analyze the restraint with reference to a

28  relevant market—but Plaintiffs here have not plausibly alleged any such *per se* unlawful restraint. *See Leegin Creative Leather Prod., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886 (2007).

1    The entirety of Plaintiffs' market definition consists of the legal conclusion

2  that there is a "market for either initial or secondary ticket sales (referred to herein,

3  respectively, as the 'Primary Ticket Market' and the 'Secondary Ticket Market,' and

4  the services in those markets as 'Primary Ticket Services' and 'Secondary Ticket

5  Services,' respectively)."  TAC ¶ 2.  That is wildly insufficient to plead an antitrust

6  market.  Who are the customers in each market—venues?  Artists?  Fans?  Are any

7  of the markets limited to Taylor Swift tickets or to "touring musician" tickets, as

8  Plaintiffs sometimes suggest?  *See id.* ¶ 434 (alleging "market power over the sale

9  of *Taylor Swift and other touring musician tickets* in the Primary Ticket Market"

10  (emphasis added)); *id.* ¶ 435 ("For those seeking to purchase primary *Taylor Swift*

11  *tickets*, there is no other option but…Ticketmaster's Primary Ticket Platform."

12  (emphasis added)).[9]  Are the markets national or regional?  Why are primary and

13  secondary tickets not substitutes for one another?  The TAC answers none of these

14  questions, warranting dismissal.  *See Singman v. NBA Prop., Inc.*, 2014 WL

15  7892049, at *3-4 (C.D. Cal. Jan. 17, 2014) (dismissing Sherman Act claim with

16  prejudice for failure to "identify a plausible relevant market"), *aff'd*, 656 F. App'x

17  371 (9th Cir. 2016); *Ticketmaster L.L.C. v. RMG Techs., Inc.*, 536 F. Supp. 2d 1191,

18  1195-97 (C.D. Cal. 2008) (dismissing Sherman Act counterclaim based on

19  "hopelessly muddled" alleged market, including because it "blur[red] the line

20  between tickets and ticket distribution services"—just as Plaintiffs do here).

21    Likewise, Plaintiffs' allegations of monopoly power are conclusory and

22  nonsensical.  Plaintiffs state, with no support, that "Ticketmaster's share of the

23  Primary Ticket Market" (whether this is a fan-facing ticket market or a venue-facing

24  services market is unclear) is "between 70 and 80 percent," TAC ¶ 370, and also that

25  Ticketmaster's share of "Primary and Secondary Ticket Markets" together is

26  "between 70 and 80 percent," *id.* ¶ 446.  Courts dismiss antitrust claims grounded in

27

28
_____

[9]    If Plaintiffs intend to plead any market limited to Taylor Swift tickets, it would be a single-brand market, which "courts have been extremely reluctant to embrace." *In re ATM Fee Antitrust Litig.*, 768 F. Supp. 2d 984, 997 (N.D. Cal. 2009).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

MEM. OF POINTS & AUTHS. ISO
DEFS.' MOTION TO DISMISS
CASE NO. 2:23-cv-01114-GW-DTBx

1    baseless allegations of market share.  *See FTC v. Facebook*, 560 F. Supp. 3d 1, 17-18

2    (D.D.C. 2021) (collecting cases and explaining that "bare" assertions of market share

3    "in excess of 60%" are insufficient to plead market power).

### 2.    Plaintiffs Fail to Plausibly Allege Any Unlawful Tie

5        Plaintiffs next allege two purported ties: (1) Ticketmaster tied "the sale of

6    Taylor Swift tickets sold in the Primary Market to Ticketmaster's Secondary Ticket

7    Exchange services for the resale of Taylor Swift tickets" (TAC ¶ 436), and

8    (2) Ticketmaster tied Verified Fan status for The Eras Tour to the purchase of a

9    canceled Lover Fest ticket or Taylor Swift merchandise (*id.* ¶¶ 438-439).  Both fail.

10        Tying occurs when "a supplier agrees to sell a buyer a product (the tying

11    product), but 'only on the condition that the buyer also purchases a different (or tied)

12    product.'"  *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1199 (9th Cir. 2012)

13    (citation omitted).  In other words, it is the forced imposition of a second product on

14    a buyer who would prefer to buy the first standing alone.  *Eastman Kodak Co. v.*

15    *Image Tech. Servs.*, 504 U.S. 451, 464 n.9 (1992); *see also Jefferson Par. Hosp.*

16    *Dist. No. 2 v. Hyde*, 466 U.S. 2, 12 (1984) ("[A]n invalid tying arrangement"

17    requires "the seller's exploitation of its control over the tying product to force the

18    buyer into the purchase of a tied product that the buyer either did not want at all, or

19    might have preferred to purchase elsewhere on different terms."), *abrogated on*

20    *other grounds by Illinois Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28 (2006).

21        ***Primary-Secondary Tie.***  Plaintiffs' first purported tie suffers from a host of

22    fatal defects.  To start, it appears to be premised on an implausible single-brand

23    market limited to "Taylor Swift tickets."  Courts routinely reject markets limited to

24    a single sports team, artist, or the like.  *See, e.g.*, *Stubhub, Inc. v. Golden State*

25    *Warriors, LLC*, 2015 WL 6755594, at *4 (N.D. Cal. Nov. 5, 2015) (dismissing

26    antitrust claims, including tying claim, premised on market comprised of only

27    Warriors tickets); *Redmond v. Mo. W. State Coll.*, 1988 WL 142119, at *2 (W.D.

28    Mo. Nov. 2, 1988) ("Antitrust plaintiffs cannot...artificially define a market so as to

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

MEM. OF POINTS & AUTHS. ISO
DEFS.' MOTION TO DISMISS
CASE NO. 2:23-cv-01114-GW-DTBx

1    cover only the practice complained of."). This alone is grounds for dismissal.

2    Moreover, the purported tie lacks the essential element of the forced
3    imposition of a second product. Plaintiffs do not (and cannot) allege that anyone
4    was forced to resell their Taylor Swift primary tickets at all, let alone to use
5    Ticketmaster's secondary ticketing services to do so. To the extent Plaintiffs are
6    confusing a tying arrangement with a resale restriction, their claim still fails.[10]
7    Ticket transfer restrictions are commonplace, reflecting tickets' legal status as mere
8    licenses, not property rights. *E.g.*, *Kennedy Theater Ticket Serv. v. Ticketron*, 342
9    F. Supp. 922, 925 (E.D. Pa. 1972) ("Admission tickets have been uniformly defined
10   as revocable licenses."); 30A C.J.S. Entertainment and Amusement § 88 (Dec. 2024
11   update) (an event ticket "typically creates nothing more than a revocable license").
12   Simply put, because tickets are licenses, it has long been held that "an event sponsor
13   may impose restrictions on the transferability of tickets which it issues." *People v.*
14   *Waisvisz*, 221 Ill. App. 3d 667, 671 (1991).

15   ***Verified Fan Status-Purchase Tie.*** Plaintiffs' second tie—pursuant to which
16   Ticketmaster supposedly tied Verified Fan status for The Eras Tour to the purchase
17   of canceled Lover Fest tickets or Taylor Swift merchandise—also fails. As an initial
18   matter, what is the tying product market? It appears to be a market for "'verified'
19   Taylor Swift fan status," which is not a coherent market at all. *See Rick-Mik Enters.,*
20   *Inc. v. Equilon Enters. LLC*, 532 F.3d 963, 972 (9th Cir. 2008) (affirming dismissal
21   for failure to plead viable tying product market). Nor is "'verified' Taylor Swift fan
22   status" a "product" for purposes of a tying claim; it is merely a condition for
23   accessing the TaylorSwiftTix presale, which was itself only an opportunity to
24   *potentially* purchase tickets. *See* Phillip E. Areeda & Herbert Hovenkamp, *Antitrust*
25   *Law* § 1750a (2024) (no tie when "one of the bundled items is an 'illusory' or

---

27   [10]    To be clear, there was no restriction limiting resale of The Eras Tour tickets
     to Ticketmaster's secondary ticketing platform. In fact, Ticketmaster was the only
28   secondary ticketing services provider that *did not* host resale listings for United
     States stops of The Eras Tour.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

MEM. OF POINTS & AUTHS. ISO
DEFS.' MOTION TO DISMISS
CASE NO. 2:23-cv-01114-GW-DTBx

1    'phantom' product"—*e.g.*, no tie between access to professional bowling

2    tournaments and membership in the professional bowling league because

3    "membership had no economic value beyond entering tournaments" and was thus a

4    "phantom product").  Finally, the purported tie directly contradicts Plaintiffs' own

5    incorporated sources.  The Verified Fan terms incorporated in the TAC provide that

6    "*no purchase is necessary* to enter or to receive an access code."  O'Mara Decl. Ex. 1

7    (emphasis added).  Plaintiffs' tying claims fail.

8              **3.    *Plaintiffs' Exclusive Dealing Claim Fails Under Twombly or***
9                  ***for Lack of Antitrust Standing***

10         Plaintiffs' exclusive dealing claim (TAC ¶¶ 444-452) fails to meet basic

11   pleading standards.  Plaintiffs vaguely reference "numerous multi-year, exclusive

12   contracts with leagues, teams, [and] managers," offering no details about what these

13   contracts might be.  *Id.* ¶ 487.  They claim that "artists like Taylor Swift" and

14   "buyers" of concert tickets both "agreed to virtually exclusive dealings with

15   Ticketmaster" (*id.* ¶ 445), but they plead zero facts about any such dealings.  As for

16   Ticketmaster's "agreements with concert venues" (*id.* ¶ 446), Plaintiffs do not allege

17   any specific facts about these agreements or how they substantially foreclose

18   competition.  These pleading failures alone are grounds for dismissal.  *See Bell Atl.*

19   *Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Kendall v. Visa U.S.A.*, 518 F.3d 1042,

20   1047-48 (9th Cir. 2008).

21         To the extent Plaintiffs are challenging Ticketmaster's "exclusive [provision]

22   of Primary Ticket Services *for concert venues*" (TAC ¶ 370 (emphasis added)), or

23   its purported status as "the exclusive Secondary Ticket Exchange partner for most if

24   not all such *venues*" (*id.* ¶ 371 (emphasis added)), Plaintiffs lack antitrust standing

25   to bring such claims because they do not participate in any *venue-facing* market.

26         "Antitrust standing is distinct from Article III standing," and a plaintiff who

27   alleges injury in fact "is not necessarily a proper party to bring a private antitrust

28   action."  *Am. Ad. Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1054 n.3 (9th

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

MEM. OF POINTS & AUTHS. ISO
DEFS.' MOTION TO DISMISS
CASE NO. 2:23-cv-01114-GW-DTBx

1    Cir. 1999).  To plead antitrust standing, a plaintiff must allege "antitrust injury,"

2    which requires (*inter alia*) that the plaintiff have suffered an injury "in the market

3    where competition is allegedly being restrained."  *Qualcomm*, 969 F.3d at 992.  In

4    other words, "[p]arties whose injuries, though flowing from that which makes the

5    defendant's conduct unlawful, are experienced in *another* market do not suffer

6    antitrust injury."  *Id.* (emphasis added).

7        Here, if Plaintiffs are alleging an exclusive dealing claim based on

8    Ticketmaster's provision of primary and secondary ticketing services *to venues*,

9    Plaintiffs do not participate in those *venue-facing* services markets and therefore lack

10   antitrust standing.  *See Feitelson v. Google*, 80 F. Supp. 3d 1019, 1027-28 (N.D. Cal.

11   2015) (consumers in downstream retail market for cell phones alleged that they paid

12   inflated prices due to upstream anticompetitive contracts between Google and

13   smartphone manufacturers; consumers lacked antitrust standing because they

14   alleged "supracompetitive pricing in Android phones, which is not the market in

15   which the alleged anticompetitive conduct occurred"); *Bakay v. Apple Inc.*, 2024

16   WL 3381034, at *7 (N.D. Cal. July 11, 2024) (consumers alleged that Apple and

17   web browser developers unlawfully agreed that developers would not release their

18   own browser engines, which led to "supracompetitive iPhone prices"; plaintiffs

19   lacked antitrust standing because "the site of Plaintiffs' injury [was] the smartphone

20   market, while Apple's alleged anticompetitive conduct occur[ed] in the U.S. mobile

21   browser market").

22        **4.    *Dynamic Pricing Is Not Price Discrimination Under § 17031***

23        Plaintiffs allege "price discrimination" under California Business &

24   Professions Code § 17031, based on a purported "dynamic pricing scheme" pursuant

25   to which "comparable tickets were sold at radically different prices."    TAC

26   ¶¶ 454-456.  But that statute bans *locality* discrimination, defined as:

27        selling or furnishing an article or product, at a lower price in one
         section, community or city, or any portion thereof, or in one location in
28        such section, community, or city or any portion thereof, than in another.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

MEM. OF POINTS & AUTHS. ISO
DEFS.' MOTION TO DISMISS
CASE NO. 2:23-cv-01114-GW-DTBx

Cal. Bus. & Prof. Code § 17031.  This law plainly has nothing to do with dynamic online ticket pricing.  *See Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1104 (9th Cir. 1999) ("The statute bars price discrimination in sales to different geographic locations."); *Harris v. Capital Records Distrib.*, 64 Cal. 2d 454, 460 (1966) ("[T]o fall within its prohibition a seller must have at least two different places of business and must sell at a lower price in one than in the other."); *Cal. Wholesale Elec. Co. v. Micro Switch*, 1983 WL 1790, at *5 (C.D. Cal. Jan. 12, 1983) (dismissing § 17031 claim because "sales were all made from the same location"). Plaintiffs' claim based on this statute fails.

### 5.    *Plaintiffs Do Not Allege Any Agreement to Support Claims for Price Fixing, Group Boycotting, or Market Division*

Plaintiffs' remaining antitrust claims—for price fixing (TAC ¶¶ 462-469), group boycotting (*id.* ¶¶ 470-476), and market division (*id.* ¶¶ 477-484)—are nothing more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Iqbal*, 556 U.S. at 678.  Because Plaintiffs do no more than "couch[]" legal conclusions as factual allegations, they fail to state a claim.  *Id.*

Price fixing, group boycotting, and market division each depend on the existence of an *agreement*.  *See, e.g.*, *FlightBlitz, Inc. v. Tzell Travel, LLC*, 2021 WL 6618640, at *4 (C.D. Cal. Nov. 29, 2021) ("[T]he existence of an agreement...is an essential element to...price fixing claims."); *Rickards v. Canine Eye Registration Found., Inc*., 704 F.2d 1449, 1453-54 (9th Cir. 1983) (dismissing group boycott and price-fixing claims for failure to allege agreement); *Stanislaus Food Prods. Co. v. USS-POSCO Indus*., 782 F. Supp. 2d 1059, 1072-76 (E.D. Cal. 2011) (same for market division).

Plaintiffs do not allege facts plausibly suggesting any agreement.  Start with the price fixing claim: Plaintiffs conclude that "Ticketmaster's conduct of allying with scalpers and venues such as SoFi Stadium has amounted to price fixing."  TAC

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

MEM. OF POINTS & AUTHS. ISO
DEFS.' MOTION TO DISMISS
CASE NO. 2:23-cv-01114-GW-DTBx

1    ¶ 463.  That is nonsense—and far from sufficient to plead who agreed to what, with

2    whom, when, and how, as is required to allege an agreement.  *Kendall*, 518 F.3d at

3    1047-48.  Plaintiffs reference price-fixing "agreements with resellers and stadium

4    owners" and some unspecified "vertical price fixing" arrangement too (TAC

5    ¶¶ 464-465), but they never allege "the necessary evidentiary facts to support those

6    conclusions."  *Kendall*, 518 F.3d at 1047.

7        The group boycotting and market division claims fare no better.  Plaintiffs

8    allege that "Ticketmaster has engaged in a group boycott with competitors like

9    SeatGeek...to refuse to conduct business with any competitor that does not conform

10   to Ticketmaster's demands."  TAC ¶ 472.  This claim is hopelessly vague: what

11   "demands" did Ticketmaster make?  What does "refus[ing] to conduct business with

12   [a] competitor" mean?  Which "competitors" were conspirators versus victims?  The

13   market division claim is even more far-fetched.   According to Plaintiffs,

14   Ticketmaster "specifically carved out small territories to give to competitors like

15   SeatGeek in attempt to hide the level of monopolistic power and control

16   Ticketmaster has," and then "made SeatGeek set prices...at the same high price as

17   Ticketmaster."  *Id.* ¶ 479.  What "territories" have allegedly been given to SeatGeek?

18   Why would SeatGeek—one of Ticketmaster's fiercest competitors—agree to an

19   arrangement that gave them only "small territories"?  Is SeatGeek an accomplice or

20   a victim?  Plaintiffs never say, and their dubious claims should be dismissed.

21       **E.    Plaintiffs Fail to Plausibly Allege a UCL Claim**

22       Finally, Plaintiffs purport to allege a violation of California's UCL based on

23   the allegations from the five preceding claims, plus a series of conclusory statements

24   about ticket delivery and transferability and Ticketmaster's threatened tortious

25   interference claim against StubHub.  *Id.* ¶¶ 485-496.  The UCL proscribes "three

26   varieties of unfair competition—acts or practices which are unlawful, or unfair, or

27   fraudulent."  *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012)

28   (citation omitted).  Plaintiffs do not satisfy any of the three prongs, and further fail

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

MEM. OF POINTS & AUTHS. ISO
DEFS.' MOTION TO DISMISS
CASE NO. 2:23-cv-01114-GW-DTBx

1  to allege the inadequacy of their remedies at law.

2      ***Unlawful Prong.***    Because Plaintiffs fail to state a claim for breach of

3  contract, fraud, negligent misrepresentation, negligence, or antitrust violations, their

4  UCL claim premised on the unlawful prong fails.  *E.g.*, *In re DRAM Indirect*

5  *Purchaser Antitrust Litig.*, 28 F.4th 42, 54 n.7 (9th Cir. 2022) (dismissing UCL claim

6  "premised upon the existence of an antitrust conspiracy" which "[should] rise and

7  fall with the [antitrust] claim").

8      ***Unfair Prong.***    Under the unfair prong, courts consider whether the alleged

9  conduct is "tethered to any underlying constitutional, statutory or regulatory

10  provision,...threatens an incipient violation of an antitrust law, or violates the policy

11  or spirit of an antitrust law", or whether it has an impact on the alleged victim that

12  "outweighs the reasons, justifications and motives of the alleged wrongdoer,"

13  including because it "is immoral, unethical, oppressive, unscrupulous or

14  substantially injurious to consumers."  *Doe v. CVS Pharm., Inc.*, 982 F.3d 1204,

15  1214-15 (9th Cir. 2020) (simplified); *Davis v. HSBC Bank Nev. N.A.*, 691 F.3d 1152,

16  1170 (9th Cir. 2012).  Plaintiffs fail to satisfy any of these tests.  Because their

17  underlying claims fail, Plaintiffs have not shown that Defendants' conduct threatens

18  any violation, or "violates the policy or spirit," of any antitrust laws.  *CVS Pharm.*,

19  982 F.3d at 121.  Nor do Plaintiffs plausibly allege that "the utility of [Defendants']

20  conduct"—such as the fan sign-up program designed to put tickets into the hands of

21  real fans instead of bots or professional resellers—is "outweighed by the alleged

22  harm to consumers."  *Cal. Crane Sch., Inc. v. Google LLC*, 722 F. Supp. 3d 1026,

23  1042 (N.D. Cal. 2024).  Finally, Plaintiffs do not plausibly allege that Defendants'

24  conduct is immoral, unethical, oppressive, unscrupulous, or substantially injurious

25  to consumers.  *See Nazemi v. Specialized Loan Servicing, LLC*, 637 F. Supp. 3d 856,

26  864 (C.D. Cal. 2022) (dismissing UCL claim where plaintiff mentioned immorality

27  test without any analysis).

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

MEM. OF POINTS & AUTHS. ISO
DEFS.' MOTION TO DISMISS
CASE NO. 2:23-cv-01114-GW-DTBx

1    ***Fraudulent Prong.***  "[T]he fraudulent prong [of the UCL] requires a showing

2    of fraudulent conduct pleaded with particularity under" Rule 9(b).  *Cal. Crane*, 722

3    F. Supp. 3d at 1040.   As explained above, Plaintiffs fail to plead fraud with

4    particularity, *supra* Section IV.B., so they fail to state a claim under this prong too.

5    ***Lack of Adequate Remedy at Law***.  "The absence of an adequate remedy at

6    law is a necessary prerequisite to asserting an UCL claim."  *Coast Surgery Ctr. v.*

7    *United Healthcare Ins. Co.*, 2024 WL 650174, at *11 (C.D. Cal. Jan. 5, 2024).  In

8    addition to the failures above, the UCL claim should be dismissed because Plaintiffs

9    have not alleged that they lack an adequate remedy at law.  *See Sonner v. Premier*

10   *Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020).

11   **F.    Dismissal With Prejudice Is Warranted**

12   "In deciding whether justice requires granting leave to amend," courts

13   consider factors including "bad faith," "repeated failure to cure deficiencies by

14   previous amendments, undue prejudice to the opposing party[,] and futility of the

15   proposed amendment."  *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538

16   (9th Cir. 1989).  Plaintiffs have now filed four successive complaints, and yet the

17   operative pleading still fails to allege essential elements, contradicts or ignores

18   materials incorporated by reference, and remains fundamentally nonsensical.  Under

19   these circumstances, Plaintiffs' failures are not curable, and Plaintiffs should not be

20   permitted a *fifth* bite at the apple.  The Court should dismiss the TAC with prejudice.

21   **V.    CONCLUSION**

22   The Court should grant Defendants' Motion to Dismiss with prejudice.

23

24   *[Signature on following page]*

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21

MEM. OF POINTS & AUTHS. ISO
DEFS.' MOTION TO DISMISS
CASE NO. 2:23-cv-01114-GW-DTBx

1    Dated:  February 26, 2025                    Respectfully Submitted,

2                                                LATHAM & WATKINS LLP

3

4                                    By:    /s/ Timothy L. O'Mara

5                                            Timothy L. O'Mara

6                                            505 Montgomery Street, Suite 2000
                                             San Francisco, California  94111-6538
7                                            Telephone:  +1.415.391.0600
                                             Facsimile:  +1.415.395.8095
8                                            tim.o'mara@lw.com

9                                            *Attorneys for Defendants*
                                             *Live Nation Entertainment, Inc. and*
10                                           *Ticketmaster L.L.C.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22

MEM. OF POINTS & AUTHS. ISO
DEFS.' MOTION TO DISMISS
CASE NO. 2:23-cv-01114-GW-DTBx

1
2

## CERTIFICATE OF WORD COMPLIANCE

3      The undersigned, counsel of record for Defendants Live Nation

4  Entertainment, Inc. and Ticketmaster L.L.C., certifies that this brief contains 6,926

5  words, which complies with the word limit of Civil Local Rule 11-6.1.

6

7  Dated:  February 26, 2025                    */s/*      *Timothy L. O'Mara*

8                                                                    Timothy L. O'Mara

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23

MEM. OF POINTS & AUTHS. ISO
DEFS.' MOTION TO DISMISS
CASE NO. 2:23-cv-01114-GW-DTBx