1
2
3
4
5
6
7

LATHAM & WATKINS LLP
    Timothy L. O'Mara (Bar No. 212731)
    *tim.o'mara@lw.com*
    Alicia R. Jovais (Bar No. 296172)
    *alicia.jovais@lw.com*
    Robin L. Gushman (Bar No. 305048)
    *robin.gushman@lw.com*
    Samuel R. Jeffrey (Bar No. 347533)
    *sam.jeffrey@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600
Facsimile: +1.415.395.8095

8
9

*Attorneys for Defendants Live Nation*
*Entertainment, Inc. and Ticketmaster L.L.C.*

10
11
12

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| JULIE BARFUSS, et al., | Case No. 2:23-cv-01114-GW-DTBx |
| Plaintiffs, | |
| v. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOURTH AMENDED COMPLAINT** |
| LIVE NATION ENTERTAINMENT, INC., TICKETMASTER L.L.C., STADCO LA, LLC as DOE 1, and DOES 2 through 10, inclusive, | |
| Defendants. | The Honorable George H. Wu |
| | Hearing Date: November 13, 2025 |
| | Hearing Time: 8:30 a.m. |
| | Courtroom: 9D, 9th Floor |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

MEM. OF POINTS & AUTHS. ISO DEFS.' MOTION
TO DISMISS FOURTH AMENDED COMPLAINT
CASE NO. 2:23-cv-01114-GW-DTBx

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................. 1

II.     SUMMARY OF ALLEGATIONS ........................................................ 1

        A.      The Eras Tour Onsale ............................................................... 2

        B.      Plaintiffs' Claims ..................................................................... 3

III.    LEGAL STANDARD .......................................................................... 5

IV.     ARGUMENT ....................................................................................... 5

        A.      Plaintiffs Fail To Plausibly Allege Negligence ....................... 5

                1.      The Economic Loss Rule Bars Plaintiffs'
                        Negligence Claim. .......................................................... 5

                2.      Plaintiffs Fail To Articulate Any Legally
                        Cognizable Duty To Support Their Negligence
                        Claim................................................................................ 7

        B.      Plaintiffs Fail To Plausibly Allege Fraud Or Negligent
                Misrepresentation.................................................................... 11

        C.      Plaintiffs Fail To Plausibly Allege Breach Of Contract ....... 14

        D.      Plaintiffs Fail To Plausibly Allege Any Antitrust Claim ...... 17

                1.      Plaintiffs Improperly Incorporate Other
                        Complaints..................................................................... 17

                2.      Plaintiffs' "U.S. Eras Tour Market" Fails .............. 19

        E.      Plaintiffs Fail To Plausibly Allege The Inadequacy Of
                Legal Remedies For Their UCL Claim.................................. 20

        F.      Dismissal With Prejudice Is Warranted ................................. 21

V.      CONCLUSION .................................................................................. 21

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

MEM. OF POINTS & AUTHS. ISO DEFS.' MOTION
TO DISMISS FOURTH AMENDED COMPLAINT
CASE NO. 2:23-cv-01114-GW-DTBx

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aas v. Superior Ct.*,
    24 Cal. 4th 627 (2000)..................................................................................7

*Al Shikha v. Lyft, Inc.*,
    102 Cal. App. 5th 14 (2024)........................................................................11

*Apple v. Psystar Corp.*,
    586 F. Supp. 2d 1190 (N.D. Cal. 2008) ......................................................20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ......................................................................................5

*Asmodus, Inc. v. Junbiao Ou*,
    2017 WL 3575467 (C.D. Cal. June 20, 2017).............................................16

*Barrett v. Optimum Nutrition*,
    2022 WL 2035959 (C.D. Cal. Jan. 12, 2022)..............................................11

*Body Jewelz, Inc. v. Valley Forge Ins. Co.*,
    241 F. Supp. 3d 1084 (C.D. Cal. 2017)......................................................6, 7

*Bou v. Cnty. of Riverside*,
    2021 WL 3468941 (C.D. Cal. Mar. 24, 2021) (Wu, J.) ..............................11

*Bushell v. JPMorgan Chase Bank, N.A.*,
    220 Cal. App. 4th 915 (2013)......................................................................14

*Complete Ent. Res. LLC v. Live Nation Ent., Inc.*,
    2016 WL 3457178 (C.D. Cal. May 11, 2016)..............................................18

*Dennis v. Live Nation Worldwide, Inc.*,
    2023 WL 369239 (Cal. Ct. App. Jan. 24, 2023) ..........................................10

*Dewi v. Wells Fargo Bank*,
    2012 WL 10423239 (C.D. Cal. Aug. 8, 2012) ..............................................6

*Dix v. Live Nation Entertainment, Inc.*,
    56 Cal. App. 5th 590 (2020)........................................................................10

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

MEM. OF POINTS & AUTHS. ISO DEFS.' MOTION
TO DISMISS FOURTH AMENDED COMPLAINT
CASE NO. 2:23-cv-01114-GW-DTBx

*Doe No. 14 v. Internet Brands, Inc.*,
2016 WL 11824793 (C.D. Cal. Nov. 14, 2016) ................................................. 11

*Dyroff v. Ultimate Software Grp., Inc.*,
2017 WL 5665670 (N.D. Cal. Nov. 26, 2017), *aff'd*, 934 F.3d 1093
(9th Cir. 2019) ....................................................................................................... 9

*Finley v. Carvalho*,
2024 WL 3166081 (C.D. Cal. June 3, 2024), *report and
recommendation adopted*, 2024 WL 3161748 (C.D. Cal. June 24,
2024) .................................................................................................................... 17

*FTC v. Key Investment Group LLC*,
No. 1:25-cv-02716 (N.D. Md.), ECF No. 1 ........................................................ 10

*Garon v. eBay, Inc.*,
2011 WL 6329089 (N.D. Cal. Nov. 30, 2011) ...................................................... 7

*Gibson v. Cendyn Group, LLC*,
2025 WL 2371948 (9th Cir. Aug. 15, 2025) ...................................................... 19

*Gibson v. Jaguar Land Rover N. Am., LLC*,
2020 WL 5492990 (C.D. Cal. Sept. 9, 2020) ..................................................... 21

*Hicks v. PGA Tour, Inc.*,
897 F.3d 1109 (9th Cir. 2018) ............................................................................ 20

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) .............................................................................. 5

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ........................................................... 6, 7

*Jackson v. Airbnb, Inc.*,
639 F. Supp. 3d 994 (C.D. Cal. 2022) ............................................................... 10

*Julian v. TTE Tech., Inc.*,
2020 WL 6743912 (N.D. Cal. Nov. 17, 2020) ................................................... 21

*Kalitta Air, L.L.C. v. Cent. Texas Airborne Sys., Inc.*,
315 F. App'x 603 (9th Cir. 2008) ......................................................................... 5

*Magpali v. Farmers Grp., Inc.*,
48 Cal. App. 4th 471 (1996) ............................................................................... 14

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

MEM. OF POINTS & AUTHS. ISO DEFS.' MOTION
TO DISMISS FOURTH AMENDED COMPLAINT
CASE NO. 2:23-cv-01114-GW-DTBx

*McAfee v. Francis*,
2011 WL 3293759 (N.D. Cal. Aug. 1, 2011).....................................................17

*Meyer v. Cnty. of San Diego*,
2025 WL 2042360 (S.D. Cal. July 21, 2025)...................................................18

*Moore v. Kayport Package Exp., Inc.*,
885 F.2d 531 (9th Cir. 1989)...........................................................................21

*Morris v. De La Torre*,
36 Cal. 4th 260 (2005).......................................................................................9

*Paz v. State of California*,
22 Cal. 4th 550 (2000)...................................................................................5, 8

*Pearl v. Coinbase Glob., Inc.*,
2024 WL 3416505 (N.D. Cal. July 15, 2024)....................................................6

*Pegasus Trucking, LLC v. Asset Redeployment Grp., Inc.*,
2021 WL 1234879 (C.D. Cal. Feb. 16, 2021)....................................................6

*Pirozzi v. Apple Inc.*,
913 F. Supp. 2d 840 (N.D. Cal. 2012) ..............................................................9

*Regents of Univ. of California v. Superior Ct.*,
4 Cal. 5th 607 (2018)...................................................................................9, 10

*Richardson v. Reliance Nat. Indem. Co.*,
2000 WL 284211 (N.D. Cal. Mar. 9, 2000)...............................................12, 14

*Robinson Helicopter Co. v. Dana Corp.*,
34 Cal. 4th 979 (2004).......................................................................................6

*Salameh v. Tarsadia Hotel*,
726 F.3d 1124 (9th Cir. 2013).........................................................................12

*Sheen v. Wells Fargo Bank, N.A.*,
12 Cal. 5th 905 (2022).......................................................................................8

*Smith v. Allstate Ins. Co.*,
160 F. Supp. 2d 1150 (S.D. Cal. 2001) ...........................................................14

*Sonner v. Premier Nutrition Corp.*
971 F.3d 834 (9th Cir. 2020)...........................................................................20

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

MEM. OF POINTS & AUTHS. ISO DEFS.' MOTION
TO DISMISS FOURTH AMENDED COMPLAINT
CASE NO. 2:23-cv-01114-GW-DTBx

*Stubhub, Inc. v. Golden State Warriors, LLC*,
  2015 WL 6755594 (N.D. Cal. Nov. 5, 2015) ..................................................... 19

*UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*,
  117 F. Supp. 3d 1092 (C.D. Cal. 2015) ............................................................ 13

**STATUTES**

California Civil Code § 1714(a) ......................................................................... 5, 7, 8

Cartwright Act ...................................................................................................... 4

Sherman Act
  § 1 ...................................................................................................................... 4
  § 2 ...................................................................................................................... 3

**RULES**

Fed. R. Civ. P.
  8(a)(2) ............................................................................................................... 17
  9(b) ........................................................................................................ 11, 12, 14

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v

MEM. OF POINTS & AUTHS. ISO DEFS.' MOTION
TO DISMISS FOURTH AMENDED COMPLAINT
CASE NO. 2:23-cv-01114-GW-DTBx

I.   **INTRODUCTION**

This is Plaintiffs' fifth attempt to contort their laundry list of grievances about ticket sales for Taylor Swift's The Eras Tour into legally cognizable claims against Defendants Ticketmaster and Live Nation.  It fails just like the previous four.

Plaintiffs' Fourth Amended Complaint (ECF No. 168, the "FAC") does not cure the many deficiencies identified in the Court's order dismissing their Third Amended Complaint (ECF No. 128, the "TAC"), and it raises new problems too. Specifically, Plaintiffs: (1) fail to plausibly allege any non-economic damages or a legal duty of care, requiring dismissal of Claim Four for Negligence; (2) do not plead with particularity that any alleged misrepresentation was false when made, requiring dismissal of Claims Five and Six for Fraud and Negligent Misrepresentation; (3) fail to plausibly allege the existence of a contract with anything resembling the terms they now claim were breached, requiring dismissal of Claim Seven for Breach of Contract; (4) base their antitrust claims on irrelevant (and deficient) allegations improperly incorporated by reference from other lawsuits, and on a legally impermissible "single-brand" market, requiring dismissal of Claims One, Two, and Three; and (5) fail to establish the inadequacy of their remedies at law, requiring dismissal of Claim Eight for UCL violations.

As Plaintiffs' repeated failures demonstrate, these are not mere pleading problems.  Plaintiffs simply cannot fashion a legally cognizable claim from the fundamental supply-and-demand issue that their own exhibits establish was the cause of any purported harm: "many more people want to see Taylor Swift than there are seats available on her tour…."  Ex. D at 15.  Plaintiffs' inability to purchase highly in-demand concerts tickets is not a legal wrong, Plaintiffs' pleading failures are not curable, and their claims should be dismissed with prejudice.

II.   **SUMMARY OF ALLEGATIONS**

Following the dismissal of the TAC, *see* ECF Nos. 165, 166, Plaintiffs inflated the FAC with 24 pages of additional material and dozens of exhibits, and improperly

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

MEM. OF POINTS & AUTHS. ISO DEFS.' MOTION
TO DISMISS FOURTH AMENDED COMPLAINT
CASE NO. 2:23-cv-01114-GW-DTBx

attempted to incorporate many more pages from complaints in other cases. But these additions are just window-dressing for the same flawed claims. In fact, Plaintiffs' new content highlights the admitted fact that dooms many of their claims: <u>presale access codes and tickets were "never guaranteed."</u> Ex. F at 2-4; FAC ¶ 460. As the Court is familiar with the nature of Plaintiffs' allegations, Defendants only briefly summarize them here.

## A.    The Eras Tour Onsale

Plaintiffs are 357[1] Taylor Swift fans who sought to purchase tickets to The Eras Tour, Ms. Swift's "record-breaking, world-wide concert tour…."[2] FAC ¶ 403. In anticipation of huge demand, Ms. Swift engaged Ticketmaster to support two limited presale opportunities—the "TaylorSwiftTix Presale" and the "Capital One Presale"—which would be followed by a public sale of any remaining tickets. *Id.* ¶¶ 1, 468.

To participate in the TaylorSwiftTix presale, fans had to register with Ticketmaster's Verified Fan program—a sign-up and authentication process designed to verify that a given ticket purchaser is a real fan and not a bot or professional reseller. *Id.* ¶ 404-09. Fans who registered had a chance to receive— but were "never guaranteed"—presale access codes. Ex. F at 4. On the day of the presale, fans with codes would then be permitted to enter the presale queue for a chance—but "not [a] guarantee[]"—to buy highly-limited tickets. *Id.* at 5. Plaintiffs admit that Defendants cautioned, repeatedly, that "**<u>Verified Fan does not guarantee that everyone will get a ticket</u>**…." *Id.* ¶ 460, 468(b) (emphasis added).[3] In

---

[1]   Three new Plaintiffs were quietly added to the FAC: Joseph Hernandez, Jessica Schroetter, and Ashleen Skye Watson. Defendants reserve the right to move to compel arbitration as to these new Plaintiffs.

[2]   Plaintiffs' allegations are rife with factual inaccuracies, but Defendants accept them as true solely for purposes of this Motion, except where they conflict with the Exhibits Plaintiffs attached to their FAC.

[3]   The Capital One presale was open to all Capital One cardholders and did not require codes. Ex. X at 2. It, too, did not guarantee tickets. Ex. Y at 2 ("Supplies are limited and the presale ends…[when] tickets are sold out.").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

MEM. OF POINTS & AUTHS. ISO DEFS.' MOTION
TO DISMISS FOURTH AMENDED COMPLAINT
CASE NO. 2:23-cv-01114-GW-DTBx

addition, fans who had previously purchased tickets to Ms. Swift's "Lover Fest" tour (which was cancelled years earlier due to COVID) were offered "preferred access" to the presale, FAC ¶¶ 403, 407, and certain fans who had previously purchased merchandise related to Ms. Swift's recently-released "Midnights" album were offered a "boost," *id.* ¶ 408. But neither "preferred access" nor a "boost" guaranteed that fans who received them would be able to purchase tickets. Ex. F at 4-5. Codes were issued on November 14, 2022, including to many Plaintiffs. FAC ¶¶ 409-10.

The TaylorSwiftTix presale was held on November 15, 2022. It attracted record-breaking demand from fans who had received presale access codes, as well as from third parties who had not but attempted to enter the queue to purchase tickets anyway—including bad actors employing bots. *See generally* Ex. M. Despite the efforts of these third parties, "[o]nly ticket buyers who were verified were permitted to enter a queue" to purchase tickets, and "[a]ll 2 million tickets for the Verified Fan onsale were sold to Verified Fans"—*i.e.*, those who had received codes. *Id.* at 3. "No one who wasn't verified was allowed to enter the queue, but the huge traffic hitting the site overall meant [Ticketmaster] had to slow down queues to keep them stable." *Id.* This often-malicious traffic also resulted in frustrating website and service errors, but did not result in anyone without a code purchasing tickets. *Id.* at 2. After the subsequent Capital One Presale on November 16, the public sale was cancelled due to insufficient remaining inventory. FAC ¶ 413; Ex. Q at 1.

Plaintiffs intended to purchase tickets but, like millions of other fans, some were ultimately unable to do so via Ticketmaster. They now allege that their experience was the product of a grab-bag of antitrust, negligence, fraud, contract, and unfair competition violations.

**B.     Plaintiffs' Claims**

**Claim One: Monopolization (Sherman Act § 2).** Plaintiffs attempt to incorporate by reference large swaths of the complaints in *U.S. v. Live Nation*, No. 1:24-cv-03973-AS (S.D.N.Y.) ("Government Action") and *Heckman v. Live*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

MEM. OF POINTS & AUTHS. ISO DEFS.' MOTION
TO DISMISS FOURTH AMENDED COMPLAINT
CASE NO. 2:23-cv-01114-GW-DTBx

*Nation*, No. 2:22-cv-00047-GW-GJS (C.D. Cal.) ("*Heckman*") to allege that Defendants engaged in various exclusionary conduct to monopolize the alleged "Primary Concert Ticketing Market" and "U.S. Eras Tour Market." FAC ¶¶ 415-24.

**Claim Two: Exclusive Dealing (Sherman Act § 1).** Plaintiffs allege that Defendants' ticketing agreements with venues constitute unlawful exclusive dealing under Sherman Act Section 1. *Id.* ¶¶ 425-32.

**Claim Three: Exclusive Dealing (Cartwright Act).** Plaintiffs allege that Defendants' ticketing agreements also constitute unlawful exclusive dealing under the Cartwright Act. *Id.* ¶¶ 433-43.

**Claim Four: Negligence.** Plaintiffs allege that Defendants breached purported duties of care (1) "to manage the presale process with reasonable competence, to safeguard plaintiffs from foreseeable harm (including bot activity, system failure, and unfair access) and to honor the representations made to those who relied on the Verified Fan and Capital One Presales" and/or (2) to "allow users to access its ticket purchasing platform and for the platform to function properly, with responsive user interfaces, and not to cause unreasonable delay, fail to process user input accurately (or at all) or 'crash' altogether." *Id.* ¶¶ 444-65.

**Claims Five and Six: Fraud and Negligent Misrepresentation.** Plaintiffs allege that Defendants "made false representations…about the Verified Fan Presale," including "how to and who could get 'passcodes' and/or otherwise establish themselves as Verified Fans, how best to get tickets, and who could participate in the Presale." *Id.* ¶¶ 466-77, 478-81.

**Claim Seven: Breach of Contract.** Plaintiffs allege that they entered into multiple "binding contract[s] with Ticketmaster based on its Terms of Use…modified by course of dealing, promotional material and email and other communications," which Defendants allegedly breached by failing to deliver an onsale which met Plaintiffs' expectations. *Id.* ¶¶ 482-85.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

MEM. OF POINTS & AUTHS. ISO DEFS.' MOTION
TO DISMISS FOURTH AMENDED COMPLAINT
CASE NO. 2:23-cv-01114-GW-DTBx

**Claim Eight: UCL.** Plaintiffs allege that the foregoing conduct was "'unlawful, unfair and/or fraudulent'" in violation of the UCL. *Id.* ¶¶ 486-92.

Plaintiffs seek actual damages, treble damages, punitive damages, injunctive relief, restitution, and attorneys' fees. *Id.* at 71-73.

## III.  LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court need not accept "allegations that contradict…exhibit[s]" nor those "that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## IV.  ARGUMENT

Each of Plaintiffs' claims suffers from one or more fatal legal defects.

### A.  Plaintiffs Fail To Plausibly Allege Negligence

To establish negligence, Plaintiffs must plausibly allege: (1) a legal duty of care, (2) breach of that duty, (3) causation linking breach to injury, and (4) actual damages. *Paz v. State of California*, 22 Cal. 4th 550, 559 (2000).

The Court previously found that Plaintiffs' negligence claim failed at the first element. ECF No. 165 at 10-12. Plaintiffs now advance two separate, equally-baseless theories of duty: one involving a vast overstatement of California Civil Code § 1714(a), and the other based on supposed "special relationships" between Defendants and each of the millions of potential ticket buyers and/or "bots, scalpers or unauthorized third parties" that attempted to access the onsale. FAC ¶¶ 444-65. Both theories are meritless, and the claim fails for an independent reason too: it is barred by California's economic loss rule.

#### 1.  *The Economic Loss Rule Bars Plaintiffs' Negligence Claim.*

Plaintiffs have not alleged anything other than economic damages, which are not recoverable through negligence as a matter of California law. *Kalitta Air, L.L.C.*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

MEM. OF POINTS & AUTHS. ISO DEFS.' MOTION
TO DISMISS FOURTH AMENDED COMPLAINT
CASE NO. 2:23-cv-01114-GW-DTBx

1   *v. Cent. Texas Airborne Sys., Inc*., 315 F. App'x 603, 605 (9th Cir. 2008) ("Generally

2   speaking, in actions for negligence, liability is limited to damages for physical

3   injuries and recovery of economic loss is not allowed."). "The economic loss rule

4   requires a purchaser to recover in contract for purely economic loss due to

5   disappointed expectations, unless he can demonstrate harm above and beyond a

6   broken contractual promise." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th

7   979, 988 (2004). Here, Plaintiffs' alleged injury boils down to their "disappointed

8   expectations" (*id.*) that they were unable to purchase Eras Tour tickets through

9   Ticketmaster, or that they did not experience the presale they hoped for, after they

10  supposedly entered into contracts promising those things. "[N]egligence is not a

11  viable cause of action for such claims." *In re iPhone Application Litig.,* 844 F. Supp.

12  2d 1040, 1064 (N.D. Cal. 2012); *see also, e.g.*, *Body Jewelz, Inc. v. Valley Forge*

13  *Ins. Co*., 241 F. Supp. 3d 1084, 1091-95 (C.D. Cal. 2017) (dismissing comparable

14  negligence claims related to "crash" of web services).

15       Plaintiffs' conclusory plea for "noneconomic damages for pain, suffering, loss

16  of time, emotional distress and invasion of privacy" does not change the analysis.

17  FAC ¶ 465. A plaintiff's "allegation that he experienced 'stress, anxiety, and

18  outrage'…is insufficient to…take a claim outside the scope of the economic loss

19  rule." *Pearl v. Coinbase Glob., Inc*., 2024 WL 3416505, at *6 (N.D. Cal. July 15,

20  2024). Likewise, there is "no authority for the proposition that there is an 'emotional

21  distress' exception to the economic loss rule." *Pegasus Trucking, LLC v. Asset*

22  *Redeployment Grp., Inc.*, 2021 WL 1234879, at *7 (C.D. Cal. Feb. 16, 2021); *see*

23  *also, e.g.*, *Dewi v. Wells Fargo Bank*, 2012 WL 10423239, at *9 (C.D. Cal. Aug. 8,

24  2012) (reciting "'pain and suffering' in a laundry list of categories of damages…is

25  insufficient to state a plausible entitlement to these damages"). As in *In re iPhone*,

26  "the allegations of harm [in the FAC] are either too speculative to support a claim

27  for negligence under California law, or they stem from disappointed expectations

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

MEM. OF POINTS & AUTHS. ISO DEFS.' MOTION
TO DISMISS FOURTH AMENDED COMPLAINT
CASE NO. 2:23-cv-01114-GW-DTBx

from a commercial transaction and thus do not form the basis of a negligence claim." 844 F. Supp. 2d at 1064.[4]

### 2.    *Plaintiffs Fail To Articulate Any Legally Cognizable Duty To Support Their Negligence Claim*

In addition, Plaintiffs' negligence claim fails because they do not plead a proper legal duty of care.

### a.    *Plaintiffs' Alleged § 1714(a) Duty Impermissibly—And Inaccurately—Restates Contractual Obligations*

Plaintiffs first allege that Defendants have a general duty under California Civil Code § 1714(a) to ensure that their services "function properly…so that users actually could purchase tickets or have a real opportunity to do so…." FAC ¶ 450. But this purported duty is just a restatement of Plaintiffs' (flawed) contract claim— *i.e.*, that Ticketmaster promised them access codes or tickets but failed to deliver. *See* FAC ¶¶ 482-85; Section IV(C), *infra*. And a person "may not ordinarily recover in tort for the breach of duties that merely restate [purported] contractual obligations." *Aas v. Superior Ct.*, 24 Cal. 4th 627, 643 (2000). In other words, "[t]he bounds of [Defendants'] duty to Plaintiffs, and any remedies stemming from breach of that duty, are solely within the purview of [their alleged] contractual relationship…." *Garon v. eBay, Inc.*, 2011 WL 6329089, at *9 (N.D. Cal. Nov. 30, 2011).

This rule is especially relevant where, as here, Plaintiffs are not merely restating their contract theory but also attempting to add *highly* specific obligations for which they never contracted. For instance, Plaintiffs claim that Defendants should have acquired and employed "RAID-5" or "RAID-10" drive arrays, which "could have dynamically expanded capacity in high-demand locations, increased

---

[4] Plaintiffs cannot argue that their supposed "special relationship" with Defendants presents an exception to the economic loss rule because that "exception is not applicable here where…Plaintiff and Defendant are in privity of contract." *Body Jewelz*, 241 F. Supp. 3d at 1092; *see* FAC ¶ 483 (alleging "binding contract").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

MEM. OF POINTS & AUTHS. ISO DEFS.' MOTION
TO DISMISS FOURTH AMENDED COMPLAINT
CASE NO. 2:23-cv-01114-GW-DTBx

data throughput and prevented bottlenecks through server clustering, load balancing and other technological methods." FAC ¶¶ 455, 457. In reality, the Verified Fan Terms of Use—the "binding contract" Plaintiffs admit they entered into with Defendants, *id.* ¶ 483—state that Defendants *do not* guarantee error-free service: "Ticketmaster is not responsible…for technical and/or communications malfunctions, errors or failures of any kind;…for technical or human error which may occur in the administration of the Program…[or] for any injury or damage to persons or property which may be caused…from your participation in the Program…." Ex. S at 4.[5] Plaintiffs' attempt to remake that contract via § 1714(a) fails. *See Sheen v. Wells Fargo Bank, N.A.*, 12 Cal. 5th 905, 925 (2022) ("[P]laintiff's claim here…is based on an asserted duty that is contrary to the rights and obligations clearly expressed in the loan contract.…[W]e cannot sustain a tort duty in such circumstances.").

### b. *Defendants Have No Duty To Protect Plaintiffs From Third Parties*

Plaintiffs next claim that Defendants had a duty to "protect them from injury from third parties on Ticketmaster's internet site" based on the existence of a "special relationship." FAC ¶¶ 4, 458-65. It is well-established that "a person who has not created a peril is not liable in tort for failing to take affirmative action to protect another unless they have some relationship that gives rise to a duty to act." *Paz*, 22 Cal. 4th at 558. Here, Plaintiffs insist that Defendants have such a relationship with: (1) Plaintiffs, "[b]ecause those wanting to purchase tickets for the Eras Tour presale had to go through Ticketmaster as the tour's exclusive primary ticketer"; and/or (2) third parties who negatively impacted the onsale, including

---

[5] Defendants' general Terms of Use, which Plaintiffs also admit they agreed to, FAC ¶ 483(a), emphasize that Ticketmaster "DO[ES] NOT GUARANTEE THAT…THE SITE WILL ALWAYS FUNCTION WITHOUT DISRUPTIONS, DELAYS, OR IMPERFECTIONS," and is "NOT RESPONSIBLE FOR THE ACTIONS OR INFORMATION OF THIRD PARTIES." ECF No. 138-4 at 22.

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

MEM. OF POINTS & AUTHS. ISO DEFS.' MOTION
TO DISMISS FOURTH AMENDED COMPLAINT
CASE NO. 2:23-cv-01114-GW-DTBx

"rogue agents such as bots and ticket scalpers…." FAC ¶ 459. In other words, Defendants allegedly have a "special relationship" with every one of the millions of people who wanted to purchase Eras Tour tickets, whether they were "authorized" to access Defendants' services or not. Plaintiffs are wrong three times over.

*First,* Defendants do not have a "special relationship" with Plaintiffs just because Defendants were allegedly the sole providers of a service Plaintiffs wanted to use.[6] If this were the law, every website offering any service—all of which have "exclusive control" over that service (FAC ¶ 447)—would be liable in negligence whenever a customer is unhappy with third-party conduct that impacted the service. But special relationships are the "*exception*" to the "general rule" that "there is no duty to act to protect others from the conduct of third parties." *Morris v. De La Torre*, 36 Cal. 4th 260, 269 (2005) (emphasis added). They arise only in the rare circumstance in which "the plaintiff is *particularly vulnerable* and *dependent* upon the defendants," and they must therefore have "*defined boundaries*. They create a duty of care owed to a limited community, not the public at large." *Regents of Univ. of California v. Superior Ct.*, 4 Cal. 5th 607, 621 (2018) (emphases added). That is why, as a general rule, "a website has no 'special relationship' with its users…." *Dyroff v. Ultimate Software Grp., Inc.*, 2017 WL 5665670, at *14 (N.D. Cal. Nov. 26, 2017), *aff'd*, 934 F.3d 1093 (9th Cir. 2019). Here, Plaintiffs ask the Court to create a legal duty to protect each of Ms. Swift's *millions* of fans solely because Ticketmaster was allegedly the exclusive primary ticketer for The Eras Tour. The Court should refuse to create such an unbounded duty. *See, e.g.*, *Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 851-52 (N.D. Cal. 2012) (rejecting claim that "Apple's control over the user experience from development of the Apple Devices to selection

---

[6] In fact, Ticketmaster was <u>not</u> the sole primary ticketer for The Eras Tour. *See* Ex. F at 8-9 (indicating venues which were "not ticketed by Ticketmaster").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

MEM. OF POINTS & AUTHS. ISO DEFS.' MOTION
TO DISMISS FOURTH AMENDED COMPLAINT
CASE NO. 2:23-cv-01114-GW-DTBx

of the Apps available at the Apps Store 'creates a special relationship between Plaintiff and Apple'").[7]

*Second,* Defendants do not have a "special relationship" with "rogue agents such as bots and ticket scalpers."[8] FAC ¶ 459. A duty to protect arises only "if the defendant has a special relationship with [a] foreseeably dangerous person that entails *an ability to control that person's conduct.*" *Regents,* 4 Cal. 5th at 619 (emphasis added). Plaintiffs allege the opposite: they admit that the bad actors who impacted the onsale were "unauthorized" and "rogue," FAC ¶ 459, meaning Defendants do *not* have "an ability to control [their] conduct," *Regents,* 4 Cal. 5th at 619.[9] In fact, Plaintiffs emphasize that Defendants publicly oppose bots and scalpers and have policies and systems meant to keep them off their websites. FAC ¶¶ 460-61. As should be obvious, trying to help real fans by keeping bots out does not mean that Defendants will always be successful or that they can control any bots who manage to get in. *See Jackson v. Airbnb, Inc.,* 639 F. Supp. 3d 994, 1007 (C.D. Cal. 2022) ("Setting policies and providing a security patrol is not sufficient control to create a duty.").[10]

---

[7] Plaintiffs cite *Dix v. Live Nation Entertainment, Inc.* (*e.g.,* FAC ¶ 460), but the duty there was limited to festival attendees "inside large secured grounds" who "could not summon their own medical care" and therefore were "dependent on Live Nation to provide appropriate medical care." 56 Cal. App. 5th 590, 608-15 (2020). Here, by contrast, the community is not limited and Plaintiffs were not dependent on Defendants for anything but Defendants' own services. *See also Dennis v. Live Nation Worldwide, Inc.,* 2023 WL 369239, at *5-6 (Cal. Ct. App. Jan. 24, 2023) (distinguishing *Dix* and finding no duty).

[8] As for Plaintiffs' conclusory reference to "services that Ticketmaster allows to run software on its platform, such as Klarna and Monetate," which supposedly "may impede [the platform's] functioning," FAC ¶ 459, Plaintiffs allege zero detail about what these service providers supposedly did to harm them nor what Defendants should have done to control them.

[9] Illustrating the point, the FTC recently sued 8 ticket brokers for "us[ing] illegal means" including "thousands of virtual and traditional credit card numbers, proxy or spoofed IP addresses, and SIM banks to bypass or otherwise avoid security measures [and] access control systems…on Ticketmaster's websites" to acquire tickets for resale. *FTC v. Key Investment Group LLC,* No. 1:25-cv-02716 (N.D. Md.), ECF No. 1 at 2.

[10] Plaintiffs' allegation that Defendants "allow[ed], or certainly d[id] not do enough to curtail, bot and scalper activity" because they wanted Eras Tour tickets to be

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

MEM. OF POINTS & AUTHS. ISO DEFS.' MOTION
TO DISMISS FOURTH AMENDED COMPLAINT
CASE NO. 2:23-cv-01114-GW-DTBx

1    And *third,* even if Defendants did have any relevant special relationship,

2    applying the *Rowland* factors would not give rise to the onerous, open-ended duty

3    Plaintiffs demand.  *See Al Shikha v. Lyft, Inc.*, 102 Cal. App. 5th 14, 24 (2024) ("If

4    the relative burden of providing a particular precautionary safety or security measure

5    is onerous rather than minimal,…absent a showing of a 'heightened'…foreseeability

6    of the danger in question, it is not appropriate for courts to" impose the duty.).  Here,

7    Plaintiffs insist that Defendants have a sweeping duty to guarantee a ticket-buying

8    experience which is never delayed, never affected by bots or scalpers, and which

9    always meets Plaintiffs' nebulous expectations—even in the face of record-breaking

10    demand.  Imposing such an unlimited duty would be "extremely burdensome" and

11    is not justified by the meager showing of foreseeability Plaintiffs have attempted to

12    make.  *Id.* at 33; *see also Doe No. 14 v. Internet Brands, Inc*., 2016 WL 11824793,

13    at *5 (C.D. Cal. Nov. 14, 2016) ("[I]mposing a duty…would likely have a 'chilling

14    effect' on the internet by opening the floodgates of litigation.").

15    **B.    Plaintiffs Fail To Plausibly Allege Fraud Or Negligent**
16    **Misrepresentation**

17    Plaintiffs' fraud and negligent misrepresentation claims fail for two

18    independent reasons: (1) they too are barred by the economic loss rule, and (2) they

19    do not satisfy Rule 9(b).

20    *First,* "the economic loss rule applies with equal force to Plaintiff[s']

21    fraud…claims" because those claims allege fraudulent conduct connected to the

22    purported breach of a contractual promise.  *Barrett v. Optimum Nutrition*, 2022 WL

23

24    _____

25    resold using Ticketmaster's service contradicts judicially noticeable facts and
     Plaintiffs' own admissions.  FAC ¶ 462.  When Plaintiffs originally advanced this
     false allegation, Defendants sought sanctions because "Ticketmaster was in fact
26    the only secondary ticketing services provider that ***didn't*** host resale listings for
     United States stops of The Eras Tour"—making it impossible for Defendants to
27    benefit from resales.  ECF No. 140-1 at 7-10.  In response, Plaintiffs withdrew the
     allegation.  ECF No. 153 at 8-11.  They cannot now disavow their "binding
28    judicial admission…."  ECF No. 165 at 1 n.2; *see Bou v. Cnty. of Riverside*, 2021
     WL 3468941, at *1 n.3 (C.D. Cal. Mar. 24, 2021) (Wu, J.).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

MEM. OF POINTS & AUTHS. ISO DEFS.' MOTION
TO DISMISS FOURTH AMENDED COMPLAINT
CASE NO. 2:23-cv-01114-GW-DTBx

1  2035959, at *4 (C.D. Cal. Jan. 12, 2022).   As Plaintiffs allege only economic

2  damages for these claims (FAC at 73), they are barred by the economic loss rule.

3  　　　　*Second,* Plaintiffs fail to allege with particularity "what is false or misleading

4  about the purportedly fraudulent statement, and why it is false." *Salameh v.*

5  *Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013).  Plaintiffs' fraud and negligent

6  misrepresentation claims were previously dismissed for failure to allege the "who,

7  what, when, where, and how."  ECF No. 165 at 10.  Plaintiffs have finally—in their

8  fifth pleading—included some additional details, but they only highlight an even

9  more fundamental failure: Plaintiffs do not and cannot allege with particularity that

10 any specific representation was *false when it was made.  See Richardson v. Reliance*

11 *Nat. Indem. Co.*, 2000 WL 284211, at *4-5 (N.D. Cal. Mar. 9, 2000) ("Rule 9(b)

12 requires plaintiffs to plead facts establishing the falsity of a statement *at the time it*

13 *is made.*").

14 　　　　Plaintiffs claim that, between November 1st and 15th, 2022, Defendants made

15 the following statements, "knowing they were false and without any intent to

16 perform them" (FAC ¶ 474):

17 　　　1. **Access to the Presale:** Ticketmaster stated that the "Verified Fan" program

18 　　　　　"help[s] ensure only fans are invited to purchase tickets," and that "[o]nly

19 　　　　　fans who have been verified and invited to shop by receiving an access

20 　　　　　code will have the opportunity to purchase tickets during the…Presale."

21 　　　　　*Id.* ¶ 468(b).  According to Plaintiffs, non-code-holders, bots, and scalpers

22 　　　　　accessed the website and obtained tickets. *Id.* ¶¶ 473(c)-(d).[11]

23

24

---

25 [11]  Based on a misleading comparison of two blog posts, Plaintiffs claim that Ticketmaster "admitted…that non-codeholders accessed the site and bought tickets."  FAC ¶ 473(c).  This is false.  Plaintiffs' own sources show that Ticketmaster reported accurately and consistently that "[e]very ticket was sold to a buyer with a Verified Fan code" and that "[n]o one who wasn't verified was allowed to enter the queue."  Ex. M at 10.  Delays were caused by a "staggering number of bot attacks as well as fans who didn't have codes," but this *did not* result in bots or fans without codes purchasing tickets.  *Id.* at 2.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

MEM. OF POINTS & AUTHS. ISO DEFS.' MOTION
TO DISMISS FOURTH AMENDED COMPLAINT
CASE NO. 2:23-cv-01114-GW-DTBx

2. **"Preferred Access":** Ticketmaster represented that "Previous Lover Fest Verified Fan purchasers will receive preferred access to participate in the TaylorSwiftTix Presale." *Id.* ¶ 469. Plaintiffs allege "'Lover Fest Verified Fan purchasers' did not 'receive preferred access to participate in TaylorSwiftTix Presale' over other Verified Fans…." *Id.* ¶ 473(a).

3. **"Boosts":** Ticketmaster stated that "'Loyal Fans,' including purchasers of Taylor Swift 'Midnights' merchandise," would receive a 'boost…in line' for tickets for The Eras Tour." *Id.* ¶ 470. Specifically, "Loyal Fans" received an email (not from Ticketmaster) stating: "As a thank you for your contribution to a historic week, we'd like to boost your place in line for the…TaylorSwiftTix Presale…." *Id.*; *see also* Ex. L. Plaintiffs claim that recipients of this email "did not get a 'boost' of their 'place in line.'" *Id.* ¶ 473(b).

4. **Transferability of Access Codes:** Ticketmaster represented that "fans will not be able to share their codes with friends or family." *Id.* ¶ 471. Plaintiffs vaguely claim that "Ticketmaster allowed the use of transferred codes…." *Id.* ¶ 473(f).

5. **General Public Onsale:** Ticketmaster said "there would be a general 'on-sale' starting November 18, 2022…." *Id.* ¶ 472. Ticketmaster later "cancelled the public onsale" when there was insufficient inventory remaining after the presales. *Id.* ¶ 473(g).

All of these alleged statements are promises to do something *in the future*. For future promises, "alleging why the promise was false when made requires pleading *facts* from which it can be inferred that the promisor had no intention of performing at the time the promise was made." *UMG Recordings, Inc. v. Glob. Eagle Ent., Inc*., 117 F. Supp. 3d 1092, 1108 (C.D. Cal. 2015) (emphasis added). Importantly, "[m]ere nonperformance of a promise does not suffice to show the falsity of the promise." *Id.* Yet that is exactly what Plaintiffs do here—they try to

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

MEM. OF POINTS & AUTHS. ISO DEFS.' MOTION
TO DISMISS FOURTH AMENDED COMPLAINT
CASE NO. 2:23-cv-01114-GW-DTBx

1    substitute alleged non-performance for a plausible claim that Defendants had no

2    intention of performing when they made the statements.  It is black-letter law that

3    "simply pointing to a defendant's statement, noting that the content of the statement

4    conflicts with the current state of affairs, and then concluding that the statement in

5    question was false when made" does *not* allege falsity or fraudulent intent with the

6    particularity Rule 9(b) requires.  *Smith v. Allstate Ins. Co*., 160 F. Supp. 2d 1150,

7    1153 (S.D. Cal. 2001).  And Plaintiffs' bare assertion that Defendants never had

8    "any intent to perform" is plainly a legal conclusion that does not suffice.  FAC

9    ¶ 474; *see Richardson*, 2000 WL 284211, at *5 ("Under plaintiff's theory, every

10   breach of contract would support a claim of fraud so long as the plaintiff adds to his

11   complaint a general allegation that the defendant never intended to keep her

12   promise.").

13          A few examples illustrate the point.  That the general onsale was cancelled

14   does not demonstrate that Defendants never intended to hold one.  Likewise, if

15   certain Plaintiffs were told they would later receive "boosts" or "preferred access"

16   but ultimately did not get tickets, that does not demonstrate that Defendants never

17   intended to provide "boosts" or "preferred access" in the first place.  And, even if

18   Defendants had promised that the Verified Fan program could prevent 100% of bots

19   and scalpers from affecting the onsale in any way (which they did not), such a

20   promise is not rendered fraudulent just because some bots and scalpers ultimately

21   did manage to impact the sale.  *See Magpali v. Farmers Grp., Inc*., 48 Cal. App. 4th

22   471, 481 (1996) ("[A]n erroneous belief, no matter how misguided, does not justify

23   a finding of fraud.").

24          **C.     Plaintiffs Fail To Plausibly Allege Breach Of Contract**

25          To allege breach of contract, Plaintiffs must allege (1) the contract, (2) their

26   performance or excuse for nonperformance, (3) Defendants' breach, and (4)

27   resulting damages.  *Bushell v. JPMorgan Chase Bank, N.A.*, 220 Cal. App. 4th 915,

28   921 (2013).  The Court previously dismissed Plaintiffs' contract claim for failure to

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

MEM. OF POINTS & AUTHS. ISO DEFS.' MOTION
TO DISMISS FOURTH AMENDED COMPLAINT
CASE NO. 2:23-cv-01114-GW-DTBx

allege "what form the contract took," "how the parties agreed to it," and what the terms were. ECF No. 165 at 7. Plaintiffs' fifth attempt fares no better.

In the FAC, Plaintiffs now allege that they "entered into a binding contract with Ticketmaster based on [the Verified Fan] Terms of Use, Ex. S, and modified by course of dealing, promotional material and email and other communications…." FAC ¶ 483. Confusingly, Plaintiffs then break this claim into four apparently separate contracts involving different obligations and different groups of Plaintiffs:

1. **Access to TaylorSwiftTix Presale:** 290 Plaintiffs claim to have entered into a contract in which "Ticketmaster offered to give Verified Fans with codes first access to tickets starting with the Presale on November 15, 2022, free of interference from bots and scalpers[,]" *id.* ¶ 483(b), which Ticketmaster breached by "allow[ing] users without codes" and "bots, scalpers, and fake accounts" to access the presale, *id.* ¶¶ 484(a)-(b).

2. **Access to Capital One Presale:** 101 Plaintiffs claim to have entered into a contract in which "Ticketmaster offered to give Capital One cardholders access to tickets immediately after the Presale of November 15, 2022, again free of interference from bots and scalpers," *id.* ¶ 483(c), which Ticketmaster breached by allowing "bots, scalpers, and fake accounts" to access that presale, *id.* ¶ 484(b).

3. **"Preferred Access" and "Boosts":** 37 Plaintiffs claim to have entered into a contract in which "Ticketmaster offered 'preferred access' to prior 'Lover Fest' Verified Fans…as well as a 'boost…in line' for buying merchandise surrounding the release of Ms. Swift's 'Midnights' album[,]" *id.* ¶ 483(d), which Ticketmaster breached because "[i]t did not give 'preferred access' or a 'boost…in line' to prior 'Lover Fest' Verified Fans or to purchasers of 'Midnights' merchandise," *id.* ¶ 484(c).

4. **Ticket "Removal":** Three Plaintiffs claim to have "purchased Eras Tour tickets in the Verified Fan Presale" but then "had these tickets removed

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

MEM. OF POINTS & AUTHS. ISO DEFS.' MOTION
TO DISMISS FOURTH AMENDED COMPLAINT
CASE NO. 2:23-cv-01114-GW-DTBx

1    from their Ticketmaster accounts and sold by Ticketmaster to someone

2    else…." *Id.* ¶ 483(a).

3         Contracts (1) and (2) above fail at the first element because these are not the

4    terms of any contract Plaintiffs entered into.  In fact, they contradict the actual

5    contract—the Verified Fan Terms of Use—which Plaintiffs attached to the FAC.

6    *See* Ex. S.  Nowhere in the Verified Fan Terms of Use does Ticketmaster promise a

7    presale "free of interference from bots and scalpers."  FAC ¶ 483(b).  In fact, those

8    Terms *disclaim* responsibility for any technical and/or communications

9    malfunctions, unauthorized human intervention, and any injury or damage resulting

10   from participation in the Verified Fan program—*i.e.*, just the opposite of what

11   Plaintiffs now claim was promised.  Ex. S at 5.[12]

12        Contract (3) fails to plausibly allege any breach.  Plaintiffs never explain what

13   exactly they believe "preferred access" or a "boost…in line" should have entailed,

14   so their conclusory allegation that they did not get those things fails.  *See Asmodus,*

15   *Inc. v. Junbiao Ou*, 2017 WL 3575467, at *8 (C.D. Cal. June 20, 2017) (allegation

16   of "a vague promise,…without more specificity" is not enough to plead breach of

17   contract).  And if Plaintiffs' theory is that a boost or preferred access somehow

18   *guaranteed* access to tickets, that is contrary to the repeated, explicit warnings that

19   presale codes and tickets were "never guaranteed."  *E.g.*, Ex. F at 4-5.

20        Contract (4) is far too vague and conclusory to state a claim.  Plaintiffs provide

21   neither the contract nor allege its essential terms—*e.g.*, price, quantity, venue—to

22   properly demonstrate a binding commitment involving any supposed purchases,

23   despite having received all transaction information for each of their Ticketmaster

24   accounts.  *See* ECF No. 27.  "Without the essential terms of the agreement and more

---

[12]  Plaintiffs' other exhibits warn repeatedly that codes and tickets were "never guaranteed" and that participating in a presale simply gave individuals the "best chance" to purchase tickets for a highly in-demand event.  Ex. F at 1, 5; *see* Ex. G at 2 ("Verified Fan is the best way to ensure you have a chance to purchase tickets."); Ex. Y at 2 ("Capital One…card does not guarantee tickets.").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

MEM. OF POINTS & AUTHS. ISO DEFS.' MOTION
TO DISMISS FOURTH AMENDED COMPLAINT
CASE NO. 2:23-cv-01114-GW-DTBx

1    specific allegations as to breach, Plaintiffs fail to state breach of contract claims."

2    *McAfee v. Francis*, 2011 WL 3293759, at \*2 (N.D. Cal. Aug. 1, 2011).

3    **D.    Plaintiffs Fail To Plausibly Allege Any Antitrust Claim**

4    Plaintiffs' new, piggybacked antitrust theories fail too.  Plaintiffs previously

5    alleged six antitrust theories—tying; exclusive dealing; price discrimination; price

6    fixing; group boycotting; and market division—through which they claimed

7    Defendants foreclosed competition in an alleged "Primary Ticket Market" and

8    "Secondary Ticket Market."  TAC ¶ 429-84.  The Court dismissed all six theories.

9    ECF No. 165 at 12-21.  Now, in their fifth complaint, Plaintiffs attempt to plead

10   entirely new antitrust theories—including new federal causes of action and new

11   alleged markets—by cross-referencing complaints filed in the Government Action

12   and *Heckman*.    But Plaintiffs' if-you-can't-beat-12(b)(6)-join-someone-who-has

13   approach fails because (1) it is based on irrelevant allegations improperly

14   incorporated by reference and completely disconnected from their alleged harm

15   related to The Eras Tour, and (2) the claims now depend in part on an impermissible

16   "single-brand" market.

17          **1.    *Plaintiffs Improperly Incorporate Other Complaints***

18   A complaint must contain "a short and plain statement of the claim showing

19   that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and it "must be complete

20   in [itself] and not refer to other pleadings."  *Finley v. Carvalho*, 2024 WL 3166081,

21   at \*2 n.2 (C.D. Cal. June 3, 2024), *report and recommendation adopted*, 2024 WL

22   3161748 (C.D. Cal. June 24, 2024).    Plaintiffs here have taken the opposite

23   approach: rather than state their own claim to relief, they admit they have instead

24   "draw[n] heavily from the facts and evidence" in the Government Action and "ple[d]

25   monopolization and combination in restraint of trade in close alignment with such

26   allegations made" in the Government Action and *Heckman*.  FAC ¶ 4.  Often, these

27   "align[ed]" allegations are made entirely by reference, including when Plaintiffs

28   allege that Defendants have engaged in "acts in furtherance of" their purported

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

MEM. OF POINTS & AUTHS. ISO DEFS.' MOTION
TO DISMISS FOURTH AMENDED COMPLAINT
CASE NO. 2:23-cv-01114-GW-DTBx

anticompetitive strategy by simply referring the Court to "paragraphs 70 through 86, 120 through 135 of the complaint in the" Government Action—fully *15 pages* of contextless material lifted from another case.  FAC ¶ 376.  But "[a]llegations in pleadings in another action, even if between the same parties, cannot be incorporated by reference."  *Meyer v. Cnty. of San Diego*, 2025 WL 2042360, at *14 (S.D. Cal. July 21, 2025) (listing cases).

Even when Plaintiffs do repeat certain cherry-picked allegations from the Government Action or *Heckman*, they fail to connect the allegations to the harm they supposedly suffered in *this* case—which "arises out of…Taylor Swift's 'The Eras' Tour"—except in the most conclusory way.  *See* FAC ¶ 1 (alleging that "dominance and power" of Defendants "has allowed Ticketmaster to get away with impunity providing ticketing services of lower quality at higher prices, harming…fans of Taylor Swift").  Plaintiffs' theory is evidently that Defendants have been accused of antitrust violations in other contexts in other cases, and Plaintiffs believe the service they received from Defendants during The Eras Tour onsale was poor, so there must be an antitrust violation here too.  *Cf. Complete Ent. Res. LLC v. Live Nation Ent., Inc.*, 2016 WL 3457178, at *2 (C.D. Cal. May 11, 2016) ("The logic is basically (1) Defendants have a large market share in the ticketing services business, (2) Defendants are preventing…a competitor[] from doing something it wants to do, therefore (3) Defendants should be stopped by this Court.").  But "[t]hat is not an antitrust analysis." *Id.*

Indeed, the allegations in the Government Action and *Heckman*—neither of which even mention Taylor Swift—are irrelevant to Plaintiffs' specific complaints.  For example, the Government Action focuses on alleged anticompetitive conduct related to "Major Concert Venues," a term which Plaintiffs never used in the TAC but now use 15 times in the FAC, including as the basis for their "Primary Concert Ticketing Market."  FAC ¶ 390.  But the Government's definition of "Major Concert Venues" *does not include* the stadiums at which The Eras Tour was held in the

1    United States.  *Compare* Am. Compl., Government Action, ECF No. 257, ¶ 27

2    ("Major concert venues include large amphitheaters and arenas[,]" not stadiums, and

3    generally making allegations regarding arenas and amphitheaters, not stadiums),

4    *with* Ex. F at 8-9 (listing stadiums at which The Eras Tour was held, not arenas or

5    amphitheaters).    So when Plaintiffs cite the Government's allegation that

6    "Ticketmaster's exclusive agreements cover more than 75% of concert ticket sales

7    *at major concert venues*," FAC ¶ 381 (emphasis added), their conclusion that these

8    ticketing contracts must have "foreclosed a substantial share of the market for the

9    provision of primary ticketing services to major concert venues in the United States,

10   *including with respect to the Eras Tour*," simply does not follow, *id.* ¶ 429 (emphasis

11   added).[13]  Plaintiffs' alleged antitrust damages relate to a *stadium* tour, yet they have

12   copied-and-pasted a market from another case that *does not include stadiums*.  That

13   is facially unsustainable.

14              **2.    Plaintiffs' "U.S. Eras Tour Market" Fails**

15              Plaintiffs' sole original contribution to their antitrust claims—the alleged

16   "U.S. Eras Tour Market"—only makes things worse.  Plaintiffs admit that this

17   "special market" was intentionally gerrymandered from the larger (and, as discussed,

18   irrelevant) "Primary Concert Ticket Market" to "focus[] solely on Ticketmaster's

19   provision of primary ticketing services for Taylor Swift's Eras Tour in the United

20   States." FAC ¶¶ 399, 401-02.  This is therefore a "single-brand market"—a common

21   ploy designed to guarantee high market share which courts almost always reject,

22   except in limited "aftermarket" scenarios not applicable here.  *See, e.g.*, *Stubhub,*

23   *Inc. v. Golden State Warriors, LLC*, 2015 WL 6755594, at *4 (N.D. Cal. Nov. 5,

24   2015) (dismissing antitrust claims premised on market limited to Warriors NBA

25   tickets because the "natural monopoly every manufacturer has in the production and

26

---

27   [13]  In addition, Plaintiffs do not even attempt to allege whether or how "*each*
     [ticketing] agreement had a discrete effect on competition," as they must.  *See*
28   *Gibson v. Cendyn Group, LLC*, 2025 WL 2371948, at *11 (9th Cir. Aug. 15, 2025)
     (emphasis added).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

MEM. OF POINTS & AUTHS. ISO DEFS.' MOTION
TO DISMISS FOURTH AMENDED COMPLAINT
CASE NO. 2:23-cv-01114-GW-DTBx

1    sale of its own product cannot be the basis for antitrust liability"); *Apple v. Psystar*

2    *Corp.*, 586 F. Supp. 2d 1190, 1198 (N.D. Cal. 2008) ("Single-brand markets are, at

3    a minimum, extremely rare[,] [e]ven where brand loyalty is intense…."). Plaintiffs'

4    half-baked effort to plead a market limited to tickets not just for one artist, but for

5    one tour of one artist, is fatally gerrymandered and fails as a matter of law. *See Hicks*

6    *v. PGA Tour, Inc.*, 897 F.3d 1109, 1121 (9th Cir. 2018) (affirming dismissal of

7    alleged markets that were "artificial" and "contorted to meet [the plaintiff's]

8    litigation needs").

9        **E.    Plaintiffs Fail To Plausibly Allege The Inadequacy Of Legal**
         **Remedies For Their UCL Claim**

10

11       Plaintiffs conclude with a derivative UCL claim, arguing that all the foregoing

12   allegations also constitute "unlawful, unfair and/or fraudulent" conduct. Like the

13   UCL claim in the TAC, this claim must fall with the preceding claims on which it is

14   based. *See* ECF No. 165 at 21-22. But even if any claims survive, the UCL claim

15   must still be dismissed because Plaintiffs have failed to establish the inadequacy of

16   their remedies at law, as required by *Sonner v. Premier Nutrition Corp.* 971 F.3d

17   834, 844 (9th Cir. 2020); *see also* ECF No. 165 at 22 ("Plaintiffs must *demonstrate*

18   *why* an injunction would provide Plaintiffs with relief that money damages could not

19   remedy." (emphasis added)).

20       Because Plaintiffs' case "arises out of" The Eras Tour—which concluded in

21   2024—Plaintiffs cannot as a matter of law "demonstrate why an injunction would

22   provide [them] with relief" at all, let alone "relief that money damages could not

23   remedy." *Id*. Unsurprisingly then, Plaintiffs allege in conclusory fashion that

24   "damages alone cannot afford them adequate relief" because "[u]nless the Court

25   enjoins the unlawful, unfair and fraudulent practices alleged herein,…plaintiffs as

26   music fans and concertgoers—who undoubtedly will need to deal with Live Nation

27   and Ticketmaster in the future—would continue to suffer from such misconduct."

28   FAC ¶ 492. But this bare assertion differs little from Plaintiffs' previous failed

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

MEM. OF POINTS & AUTHS. ISO DEFS.' MOTION
TO DISMISS FOURTH AMENDED COMPLAINT
CASE NO. 2:23-cv-01114-GW-DTBx

1    attempt (TAC ¶ 495) and remains insufficient.  *See Gibson v. Jaguar Land Rover N.*
2    *Am., LLC*, 2020 WL 5492990, at *3-4 (C.D. Cal. Sept. 9, 2020) ("[P]laintiffs seeking
3    equitable relief [must] allege *some facts* suggesting that damages are insufficient to
4    make them whole." (emphasis added)).  Plaintiffs' unadorned plea for restitution,
5    FAC ¶ 492, fares no better, as Plaintiffs have not explained what restitution they
6    seek nor "how restitution could be different from damages." *Julian v. TTE Tech.,*
7    *Inc.*, 2020 WL 6743912, at *4 (N.D. Cal. Nov. 17, 2020).

8        **F.    Dismissal With Prejudice Is Warranted**

9        "In deciding whether justice requires granting leave to amend," courts
10   consider factors including "repeated failure to cure deficiencies by previous
11   amendments, undue prejudice to the opposing party[,] and futility of the proposed
12   amendment." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir.
13   1989).  Here, when the Court dismissed the TAC, it warned that Plaintiffs would
14   "have only one more opportunity to amend.  If it doesn't come through, it's not going
15   to come through at all.  This is your last chance." May 14, 2025 Hr'g Tr. at 18:14-
16   17.  That chance has now come and gone, and all factors now favor dismissal with
17   prejudice: Plaintiffs' *fifth* pleading still fails to allege essential elements of claims,
18   is contrary to controlling law, contradicts materials incorporated by reference, and
19   remains fundamentally nonsensical.  Further amendment would be futile.

20   **V.    CONCLUSION**

21       The Court should grant Defendants' Motion to Dismiss with prejudice.

22

23                            *[Signature on following page]*

24

25

26

27

28

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21

MEM. OF POINTS & AUTHS. ISO DEFS.' MOTION
TO DISMISS FOURTH AMENDED COMPLAINT
CASE NO. 2:23-cv-01114-GW-DTBx

1    Dated:  August 28, 2025                    Respectfully Submitted,

2                                                          LATHAM & WATKINS LLP

3

4                                          By:    /s/ Timothy L. O'Mara

5                                                 Timothy L. O'Mara

6                                                 505 Montgomery Street, Suite 2000
                                                  San Francisco, California  94111-6538
7                                                 Telephone:  +1.415.391.0600
                                                  Facsimile:  +1.415.395.8095
8                                                 tim.o'mara@lw.com

9                                                 *Attorneys for Defendants*
                                                  *Live   Nation   Entertainment,   Inc.   and*
10                                                *Ticketmaster L.L.C.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22

MEM. OF POINTS & AUTHS. ISO DEFS.' MOTION
TO DISMISS FOURTH AMENDED COMPLAINT
CASE NO. 2:23-cv-01114-GW-DTBx

## CERTIFICATE OF WORD COMPLIANCE

The undersigned, counsel of record for Defendants Live Nation Entertainment, Inc. and Ticketmaster L.L.C., certifies that this brief contains 6,972 words, which complies with the word limit of Civil Local Rule 11-6.1.

Dated:  August 28, 2025                    /s/        *Timothy L. O'Mara*
                                                    Timothy L. O'Mara

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23

MEM. OF POINTS & AUTHS. ISO DEFS.' MOTION
TO DISMISS FOURTH AMENDED COMPLAINT
CASE NO. 2:23-cv-01114-GW-DTBx