1   JOHN M. GENGA (SB# 125522)
    jgenga@gengalaw.com
2   GENGA & ASSOCIATES, P.C.
3   16501 Ventura Blvd., Suite 400
    Encino, CA 91436
4   (747) 231-3400 | Fax: (818) 474-7070

5   JENNIFER A. KINDER (*pro hac vice*)
    jkinder@justcallkinder.net
6   KINDER LAW PLLC
7   3701 W. Northwest Hwy., Suite 304
    Dallas, TX 75220
8   (214) 812-9800 | Fax: (214) 484-2144

9   DENNIS B. HILL (SBN 218131)
10  ticketmasterlawsuit@gmail.com
    D.B. HILL, a Professional Law Corporation
11  640 Fifth Street, Suite 200
    Lincoln, CA 95648
12  (916) 434-2553 | Fax: (916) 434-2560

13  Attorneys for Plaintiffs
14  JULIE BARFUSS, *et al.*

15                UNITED STATES DISTRICT COURT

16              CENTRAL DISTRICT OF CALIFORNIA

17  | JULIE BARFUSS, *et al.*, | Case No.: 2:23-cv-01114-GW-DTBx |
18  | | *Assigned to The Hon. George H. Wu* |
    |                     Plaintiffs, | |
19  | vs. | MEMORANDUM OF POINTS AND |
20  | | AUTHORITIES IN OPPOSITION TO MOTION OF DEFENDANTS LIVE |
    | LIVE NATION ENTERTAINMENT, | NATION AND TICKETMASTER |
21  | INC., TICKETMASTER L.L.C., | TO DISMISS FOURTH AMENDED |
    | STADCO LA, LLC as DOE 1, and | COMPLAINT |
22  | DOES 2 through 10, inclusive, | |
23  | | |
    |                     Defendants. | DATE:     November 13, 2025 |
24  | | TIME:     8:30 a.m. |
    | | CTRM:     9D (1st St. Courthouse) |
25

26

27

28

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES...........................................1

I.  INTRODUCTION.................................................................1

II.  FACTS.......................................................................1

III.  ARGUMENT ..................................................................1

    A.  Plaintiffs State Facts Sufficient To Allege Their First Three Claims For Antitrust Violations Plausibly On Their Face...............2

        1.  The 4AC Permissibly Restates Facts Alleged by the DoJ........2

        2.  The Motion Nowhere Demonstrates That the Antitrust Claims Lack Facts Establishing Their Requisite Elements......3

            a)  Plaintiffs allege sufficient facts on their first cause of action to state a plausible monopolization claim.......3

            b)  Plaintiffs plead ample facts on their second claim to state a "contract, combination … or conspiracy, in restraint of trade" under Sherman Act § 1…………..6

            c)  The 4AC likewise states facts that satisfy the elements of the California antitrust claim………………6

    B.  Plaintiffs Adequately Plead Their Fourth Claim For Negligence.......7

        1.  Plaintiffs Allege Recoverable Damages from Negligence.......7

        2.  Plaintiffs Sufficiently Plead Defendants' Duty of Care……….8

    C.  The Fifth And Sixth Claims For Relief Sufficiently Allege, Respectively, Intentional And Negligent Misrepresentation………..9

    D.  The Seventh Claim Factually Pleads All Contractual Elements…….13

    E.  The 4AC Sufficiently Pleads Inadequacy Of Legal Remedy On Its Eighth Claim Under Cal. Bus. & Prof. Code § 17200 *et seq*………..14

    F.  The Court Should Allow Plaintiffs To Amend If Needed………..15

IV.  CONCLUSION ................................................................16

# TABLE OF AUTHORITIES

## *Cases*

*Albillo v. Intermodal Container Servs., Inc.*,
    114 Cal. App. 4th 190 (2003) ................................................................... 14

*Aliya Medcare Fin., LLC v. Nickell*,
    156 F. Supp. 3d 1105 (C.D. Cal. 2015) .................................................... 13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................... 1, 2, 6

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,
    472 U.S. 585 (1985) ..................................................................................... 4

*Barker v. Riverside County Office of Ed.*,
    584 F.3d 821 (9th Cir. 2009) ...................................................................... 2

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) .............................................................................. 1-3, 6

*Blackwell v. Jones Day L. Firm*,
    2021 WL 764124 (E.D. Mich. Feb. 26, 2021) ........................................... 3

*Braden v. Wal-Mart Stores, Inc.*,
    588 F.3d 585 (8th Cir. 2009) ...................................................................... 2

*Carey v. J.A.K.'s Puppies, Inc.*,
    2025 WL 368973 (C.D. Cal. Jan. 27, 2025) ............................................ 15

*Cervantes v. City of San Diego*,
    5 F.3d 1273 (9th Cir. 1993) ........................................................................ 1

*Chapman v. Skype Inc.*,
    220 Cal. App. 4th 217 (2013) ..................................................................... 9

*Dallas & Lashmi, Inc. v. 7-Eleven, Inc.*,
    112 F. Supp. 3d 1048 (C.D. Cal. 2015) .................................................... 13

*Dix v. Live Nation Ent., Inc.*,
    56 Cal. App. 5th 590 (2020) ....................................................................... 9

*Doe v. United States*,
    419 F.3d 1058 (9th Cir. 2005) .................................................................... 1

*Eastman Kodak Co. v. Image Technical Servs., Inc.*,
    504 U.S. 451 (1992) ............................................................................. 5

*Echo & Rig Sacramento, LLC v. AmGuard Ins. Co.*,
    698 F. Supp. 3d 1210 (E.D. Cal. 2023) ................................................. 8

*Erlich v. Menezes*,
    21 Cal. 4th 543 (1999) .......................................................................... 7

*Evergreen Partnering Group, Inc. v. Pactiv Corp.*,
    720 F3d 33 (1st Cir. 2013) .................................................................... 2

*Foman v. Davis*,
    371 U.S. 178 (1962) ............................................................................. 15

*Gagne v. Bertran*,
    43 Cal. 2d 481 (1954) .......................................................................... 10

*Jacobs v. Sustainability Partners LLC*,
    2020 WL 5593200 (N.D. Cal. Sept. 18, 2020) ................................... 10

*J'Aire Corp. v. Gregory*,
    24 Cal. 3d 799 (1979) ............................................................................ 8

*Kalitta Air, L.L.C. v. Cent. Texas Airborne Sys., Inc.*,
    315 Fed. Appx. 603 (9th Cir. 2008) ...................................................... 8

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) ............................................................... 6

*Knevelbaard Dairies v. Kraft Foods, Inc.*,
    232 F. 3d 979 (9th Cir. 2000) ............................................................... 7

*Lazar v. Superior Court*,
    12 Cal. 4th 631 (1996) .......................................................................... 9

*Lopez v. Smith*,
    203 F.3d 1122 (9th Cir. 2000) ............................................................. 15

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
    519 F.3d 1025 (9th Cir. 2008) ............................................................. 15

*Meyer v. Cnty. of San Diego*,
    2025 WL 2042360 (S.D. Cal. July 21, 2025) ...................................... 3

*Miller v. Nat'l Amer. Life Ins. Co. of Cal.*,
    54 Cal. App. 3d 331 (1976) ................................................................. 13

-iii-

*Moore v. Kayport Package Exp., Inc.*,
    885 F.2d 531 (9th Cir. 1989) .................................................................. 12

*Monsanto Co. v. Spray–Rite Serv. Corp.*,
    465 U.S. 752 (1984) ............................................................................ 2

*Morongo Band of Mission Indians v. Rose*,
    893 F.2d 1074 (9th Cir.1990) ................................................................ 15

*Nat'l Ass'n of Pharm. Mfrs., Inc. v. Ayerst Labs.*,
    850 F.2d 904 (2d Cir. 1988) ............................................................... 4, 5

*Nayab v. Cap. One Bank (USA), N.A.*,
    942 F.3d 480 (9th Cir. 2019) ................................................................ 12

*New Jersey Carpenters Health Fund v. Royal Bank of Scotland Group, PLC*,
    709 F3d 109 (2nd Cir. 2013) .................................................................. 2

*Newcal Indus., Inc. v. Ikon Off. Sol.*,
    513 F.3d 1038 (9th Cir. 2008) ............................................................ 4, 5

*Quality Foods de Centro America, S.A. v. Latin Amer. Agribusiness Develop.
Corp., S.A.*, 711 F.2d 989 (11th Cir. 1983) ................................................. 2

*Quelimane Co. v. Stewart Title Guar. Co.*,
    19 Cal. 4th 26 (1998), as modified (Sept. 23, 1998) ................................... 7

*Regents of Univ. of Calif. v. Superior Ct.*,
    4 Cal. 5th 607 (2018) ........................................................................... 9

*Roberts v. Colorado State Bd. of Agric.*,
    998 F.2d 824 (10th Cir. 1993) ............................................................... 15

*Robinson Helicopter Co. v. Dana Corp.*,
    34 Cal. 4th 979 (2004) ..................................................................... 7, 10

*Rowland v. Christian*,
    69 Cal. 2d 108 (1968) .......................................................................... 9

*Tenzer v. Superscope, Inc.*,
    39 Cal. 3d 18 (1985) ..................................................................... 12, 13

*UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*,
    117 F. Supp. 3d 1092 (C.D. Cal. 2015) ................................................... 12

*U.S. v. Grinnell Corp.*,
    384 U.S. 563 (1966) .......................................................................... 4-5

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS FOURTH AMENDED COMPLAINT

### _Statutes and Rules_

Cal. Bus. & Prof. Code
    § 16720(a) .................................................................................................3, 6
    § 16726 ..........................................................................................................6
    § 16750(a) .....................................................................................................7
    §§ 17200 _et seq_. ........................................................................................14

Fed. R. Civ. P.
    Rule 9(b) ......................................................................................................10
    Rule 12(b)(6) .......................................................................................1, 3, 4
    Rule 15(a) ....................................................................................................15

Sherman Act § 1,
    15 U.S.C. § 1 .............................................................................................3, 6

Sherman Act § 2,
    15 U.S.C. § 2 ................................................................................................3

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### **I.    INTRODUCTION**

Live Nation and Ticketmaster ("Defendants") move to dismiss a pleading that has undergone significant amendment specifically to rectify an absence of factual allegations that the Court ruled necessary, and now must accept as true, for plaintiffs to state their claims for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'"). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, citing *Twombly*, 550 U.S. at 556. The extensive amendments satisfy these standards as to each claim in the Fourth Amended Complaint ("4AC").

### **II.    FACTS**

Only those facts alleged in the pleading govern a court's inquiry on a Fed. R. Civ. P. 12(b)(6) motion to dismiss it. *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993). The 4AC consists of nearly 500 paragraphs covering over 70 pages and 25 exhibits of another nearly 200 pages. Many of the trove of additional facts it alleges or incorporates come from the government's antitrust action against Defendants, U.S., *et al.* v. Live Nation Ent., Inc., *et al.*, S.D.N.Y. Case No. 1:24-cv-3973 (the "DoJ Case"). The pertinent facts appear below when showing that they meet the standard for stating each claim for relief plausibly on its face.

### **III.    ARGUMENT**

On a 12(b)(6) motion, "the court must construe the complaint in the light most favorable to the plaintiff, taking all her allegations as true and drawing all reasonable inferences from the complaint in her favor." *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005). The "*Twombly* and *Iqbal*" cases on which the Motion relies "did not change this fundamental tenet of Rule 12(b)(6) practice."

1  *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009); *see also*

2  *Barker v. Riverside County Office of Ed.*, 584 F.3d 821, 824 (9th Cir. 2009).  These

3  standards compel denying the Motion, as shown for each claim in the order raised.

4      **A.      Plaintiffs State Facts Sufficient To Allege Their First Three**

5      **Claims For Antitrust Violations Plausibly On Their Face.**

6      While plaintiffs have made the most significant revisions and additions to

7  pleading antitrust, placing the theory front and center as the first three claims for

8  relief in the 4AC, Defendants bury their fleeting opposing arguments late in their

9  Motion and without seriously disputing the adequacy of the facts establishing the

10  claims.  Instead, Defendants question plaintiffs' reference to facts uncovered and

11  alleged in the DoJ Case, and their market definitions, but nowhere show that the

12  facts stated in the 4AC do not plausibly demonstrate the elements of each claim.

13      A court "rarely" should dismiss antitrust claims on the pleadings, since their

14  "proof and details … are largely in the hands of the co-conspirators."  *Quality*

15  *Foods de Centro America, S.A. v. Latin Amer. Agribusiness Develop. Corp., S.A.*,

16  711 F.2d 989, 995-96 (11th Cir. 1983).  If the allegations allow a court to draw a

17  "reasonable inference" of defendant's liability for the acts alleged, they survive

18  dismissal.  *New Jersey Carpenters Health Fund v. Royal Bank of Scotland Group,*

19  *PLC*, 709 F3d 109, 121 (2nd Cir. 2013), citing *Iqbal* and *Twombly* at n.5.  A court

20  cannot "decide, at the pleading stage, which inferences are more plausible than

21  other[s]."  *Evergreen Partnering Group, Inc. v. Pactiv Corp.*, 720 F3d 33, 45 (1st

22  Cir. 2013), citing *Monsanto Co. v. Spray–Rite Serv. Corp.*, 465 U.S. 752, 766 n.11,

23  104 S.Ct. 1464, 79 L.Ed.2d 775 (1984).

24      The Court will not find itself attempting to weigh competing inferences in

25  any event.  The facts alleged more than plausibly allege each antitrust claim.

26      **1.      The 4AC Permissibly Restates Facts Alleged by the DoJ.**

27      Plaintiffs have completely redone their antitrust claims.  They have added

28  copious facts to support them.  Defendants criticize that some of the newly pleaded

facts come from the DoJ Case. Mtn. at 17:17-18:6. More specifically, they argue
against incorporating allegations by *reference* to pleadings in other cases. Here,
though, plaintiffs restate facts from the DoJ Case in their own 4AC.[1]  The Motion
cites *Meyer v. Cnty. of San Diego*, 2025 WL 2042360, at *14 (S.D. Cal. July 21,
2025), which itself cites *Blackwell v. Jones Day L. Firm*, No. 20-11493, 2021 WL
764124, at *3 (E.D. Mich. Feb. 26, 2021); the latter clearly counsels that a party
"cannot incorporate by reference allegations from a pleading filed in another case
… *without **re-stating** the allegations* at issue." (Emphases added.)  Considering
the facts that plaintiffs **do** allege, and accepting them as true, the Court will find
the antitrust claims amply pled. *Twombly*, 550 U.S. at 570.

> **2.      The Motion Nowhere Demonstrates That the Antitrust
> Claims Lack Facts Establishing Their Requisite Elements.**

While the Motion berates their pleading, it does not show that plaintiffs
"fail[ ] to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6),
for monopolization or exclusive dealing in violation of Sherman Acts sections 2
and 1 and California's Cartwright Act (the first through third claims for relief).
The Motion utterly ignores the elements needed to state those claims. The facts in
the 4AC satisfy those elements and defeat the Motion.

> **a)      Plaintiffs allege sufficient facts on their first cause of
> action to state a plausible monopolization claim.**

"[T]he offense of monopoly under § 2 of the Sherman Act consists of two
elements: (1) the possession of monopoly power in the relevant market; and (2) the
willful acquisition or maintenance of that power, as distinguished from growth or

---

[1] Thus, while plaintiffs may not repeat about 30 paragraphs of the complaint in the
DoJ Case that list examples of how Defendants have expanded their reach into and
dominate all aspects of the live concertgoing business, and their use of threats,
punishments, exclusionary deals and other tactics to do so, the 4AC goes at length
and in detail into "[o]ther ways" in which Defendants wield their power that are
"more directly relevant to this action …." 4AC ¶ 376, 377-87.

development as a consequence of a superior product, business acumen, or historic accident." *Nat'l Ass'n of Pharm. Mfrs., Inc. v. Ayerst Labs.*, 850 F.2d 904, 915 (2d Cir. 1988), citing *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 596 n. 19 (1985) and *U.S. v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966).

Defendants do not contend that plaintiffs have not identified a cognizable market or alleged facts showing their power in that market. Indeed, they fully have done both. "There is no requirement that these elements … be pled with specificity." *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1045 (9th Cir. 2008) (citations omitted). A complaint "survives a Rule 12(b)(6) motion unless it is apparent from [its] face … that the alleged market suffers a fatal legal defect," and otherwise involves a factual inquiry for summary judgment or trial. *Id.*

Rather than challenge the adequacy of the 4AC's allegations of monopoly power in a relevant market, they simply argue that facts taken from the DoJ Case do not apply here because the DoJ Case involves a market that leans more toward amphitheaters and arenas rather than stadiums as concert venues. While the DoJ Case is not so limited, Defendants' dominance in large concert venue market, called the "Primary Concert Ticketing Market" in the 4AC, *includes* the stadiums that hosted The Eras Tour. 4AC ¶ 389. As does the complaint in the DoJ Case, plaintiffs here quote Defendants' own SEC filings as touting their ownership of, exclusive booking rights for or significant influence over more than 265 venues in North America, including more than 60 of the top 100 amphitheaters in the United States. 4AC ¶ 373. Arenas and stadiums make up the remaining large venues of the balance of the 265 concert locations controlled by Defendants in the U.S.

Allegations that Defendants accounted for more than 70% of the total major concert venue transactions in the United States in 2022, and for at least 80% of the total face value associated with all tickets sold and such venues, includes stadiums that hosted The Eras Tour of Taylor Swift. 4AC ¶¶ 395, 398. Monopoly "power

may be inferred" from such a "predominant share of the market." *U.S. v. Grinnell Corp.*, 384 U.S. 563, 571 (1966).

Plaintiffs go into much greater detail as to Defendants' market dominance and the pressure tactics they have used to achieve it. Defendants threaten venues, subtly and not so. 4AC ¶ 378 and Ex. E, ¶ 417a. They make business intolerable for those who work with competitors, inducing them to switch to Ticketmaster. *Id.* ¶¶ 379, 417b. They enter into long-term exclusive arrangements that cover more than 75% of concert ticket sales at major venues that include stadiums. *Id.* ¶¶ 380-81, 417c.i.[2] They use technology such as "SafeTix" to make transferring tickets outside the Ticketmaster system extremely difficult. *Id.* ¶ 384. They boast having a database of personal information on over 80 million people in the United States, which they expect to grow by 30-40%, *id.* ¶¶ 375, 384, or more than one in every four people in the U.S. "No one has … a database as rich as ours ...." *Id* ¶ 375.

Defendants' conduct creates barriers to entry by competitors, some of whom have to "make good" to venues who lose business from Defendants' reprisals for dealing with them. *Id.* ¶ 386. They acquire rival promoters and venues and have expanded into the secondary market. *Id.* ¶¶ 417c.ii, iii.

Acts such as the above and others listed in the 4AC support that Defendants have market power and willfully acquired and maintain it not just by "a superior product, business acumen, or historic accident." *Ayerst Labs.*, 850 F.2d at 915. The 4AC describes how such acts raise prices and harm competition and plaintiffs. *Id.* ¶¶ 396-400, 420-21. These and many more facts alleged in the 4AC more than

---

[2] Defendants' dominance over the Primary Concert Ticketing Market spilled over into the U.S. Eras Tour Market for Taylor Swift concert tickets. 4AC ¶¶ 401-02, 419. Similar effects alleged in a so-called "single-brand" market were held sufficient to state a plausible monopoly claim in *Newcal Indus.*, *supra*, 513 F.3d at 1047-50, citing *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451 (1992), despite the Motion's suggestion otherwise.

plausibly support a "reasonable inference that the defendant is liable for the
misconduct alleged." *Iqbal*, 556 U.S. at 678, citing *Twombly*, 550 U.S. at 556.

> **b)** **Plaintiffs plead ample facts on their second claim to
> state a "contract, combination … or conspiracy, in
> restraint of trade" under Sherman Act § 1.**

The second claim, for violation of Section 1 of the Sherman Act, 15 U.S.C.
§ 1, requires plaintiffs to allege facts showing: (1) a contract, combination or
conspiracy among two or more persons or entities; (2) by which the persons or
entities intended to harm or restrain interstate commerce; and (3) which actually
injures competition. *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir.
2008), citing *Twombly*, 550 U.S. at 554-55 (other citation omitted). The Motion
does not contend the 4AC does not plead such facts, because it undeniably does.

This claim concerns the deals into which Defendants enter to restrain trade.
Plaintiffs plead throughout that Defendants have made agreements to acquire rivals
and to compel venues to host their artists and to offer tickets exclusively through
Ticketmaster. 4AC ¶¶ 2, 370-71, 376-78, 380-82, 427-29. They cite evidence that
Defendants have done so deliberately to tighten their stranglehold over the Primary
Concert Ticketing Market. *Id.* ¶¶ 370-71, 375, 377-79, 381, 429, 431. The facts
stated show this scheme has stifled competition and harmed plaintiffs. *Id.* ¶¶ 380-
83, 385-87, 430, 432. Such facts make a Section 1 claim for relief plausible, and
Defendants do not argue otherwise. The claim survives the Motion.

> **c)** **The 4AC likewise states facts that satisfy the elements
> of the California antitrust claim.**

"A trust is a combination of … acts by two or more persons … [t]o create or
carry out restrictions in trade or commerce." Cal. Bus. & Prof. Code § 16720(a).
"[E]very trust is unlawful" in California. *Id.* § 16726. Like its federal counterpart,
a claim for a combination in restraint of trade requires alleging facts showing (1)
an agreement or formation and operation of a conspiracy, (2) a wrongful act or acts

-6-

done pursuant thereto, and (3) the damage resulting therefrom. *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 47 (1998), as modified (Sept. 23, 1998). A service such as concert ticketing falls within its ambit. *Id.* at 48 (citation omitted).

Defendants do not separately move against this claim expressly. It largely follows its federal counterpart except expands the scope of relief. *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F. 3d 979, 991 (9th Cir. 2000), citing Cal. Bus. & Prof. Code § 16750(a). The bountiful reasons that the Motion fails as to the second claim compel its denial as to this claim as well.

### B.    Plaintiffs Adequately Plead Their Fourth Claim For Negligence.

Defendants signal their concern for the negligence claim, as they confront that fourth cause of action first, devoting nearly half the Motion to it. Their attack fails, however, as the 4AC avers cognizable injury caused by the violation of the duty of care owed by Defendants based on their special relationship with plaintiffs.

### 1.    Plaintiffs Allege Recoverable Damages from Negligence.

Defendants argue that the "economic loss rule" bars plaintiffs' negligence claim. Yet, that rule does not apply where, as here, a plaintiff alleges harm caused by a breach of a duty of care the defendant owes due to a "special relationship" with plaintiff in a situation that defendant controls.

"The economic loss rule" that Defendants urge generally requires a plaintiff to recover only in contract for "economic loss due to disappointed expectations, *unless* he can demonstrate *harm above and beyond a broken contractual promise*." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004) (emphases added). In the cited case, the California Supreme Court held that the court below had improperly ruled that the economic loss rule barred plaintiff's tort claims for fraud and intentional misrepresentation; defendant had an independent duty not to mislead plaintiff so that the latter's fraud and intentional misrepresentation claims themselves arose independently from its cause of action for breach of contract. *Id.* at 991, citing *Erlich v. Menezes*, 21 Cal. 4th 543, 552-54 (1999).

Plaintiffs have so alleged here.  More particularly, they plead Defendants owed a duty to plaintiffs independent of any alleged contract due to their "special relationship" with plaintiffs, discussed in greater detail in the section below.  More to the point on this section, the economic loss rule does not bar negligence claims where a defendant owes a duty based on a special relationship.  Indeed, in *Kalitta Air, L.L.C. v. Cent. Texas Airborne Sys., Inc.,* 315 Fed. Appx. 603 (9th Cir. 2008), cited in the Motion, the Ninth Circuit reversed the District Court's order granting defendant's motion for judgment as a matter of law by express reference to that exception.  *Id.* at 605, citing *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799 (1979).

Defendants drop a footnote attempting to distinguish *Kalitta Air* and *J'Aire Corp.* because they involve parties not in contractual privity.  Mtn. at 7 n.4.  The 4AC pleads a duty not arising from any contract.  To the extent it also includes a breach of contract claim, plaintiffs have a right to plead inconsistently or in the alternative.  *See*, *e.g.*, *Echo & Rig Sacramento, LLC v. AmGuard Ins. Co.*, 698 F. Supp. 3d 1210, 1219 (E.D. Cal. 2023) ("[A] plaintiff may plead inconsistent and alternative claims…. It would be improper to exclude the quasi contract claim on the basis that it cannot co-exist alongside a contract remedy *because the Court has yet to determine whether a contract remedy is available to Plaintiff*") (emphasis added, quotations and citation omitted).  Defendants here seek to dismiss the contract claim.  The Court cannot now rule in favor of one claim over another.

## 2. Plaintiffs Sufficiently Plead Defendants' Duty of Care.

Of the several elements necessary to state a negligence claim, Defendants contend only that plaintiffs "do not plead a proper duty of care."  Mtn. at 7:5-6.  The 4AC goes to great lengths, however, to do exactly that.  Plaintiffs adequately plead facts showing a special relationship from which that duty arises and excepts the negligence claim from the economic loss rule.  *Kalitta Air*, *J'Aire Corp.*, *supra*.

The special relationship starts from Defendants' sole control over ticketing.  4AC ¶¶445-47.  They curate it by hyping their industry leading secure technology,

generally and for Eras itself.  *Id.* ¶¶ 449, 460, 462 and Exs. G, H, R, V.  They have plentiful tools at their disposal, foresaw the demand for Eras Tour tickets and announced their readiness for it.  *Id.* ¶¶ 449, 451-57, 460 and Exs. F, G, H, M, O.  Plaintiffs relied entirely on these professed, available protections, having no choice but to seek Eras Tour admission through Ticketmaster.  *Id.* ¶¶ 446-47, 459.

This combination of control and dependency creates a special relationship that imposes a duty upon Defendants to provide a service that does as designed and without disruption from parties recognized by Defendants, *id.* ¶ 461 & Ex. P, as "not supposed to be there."  *Dix v. Live Nation Ent., Inc.*, 56 Cal. App. 5th 590, 605 (2020), citing *Regents of Univ. of Calif. v. Superior Ct.*, 4 Cal. 5th 607, 619 (2018).  The pleaded facts establishing that duty end the inquiry on and defeat the Motion.  Defendants will have the burden on the merits to establish an exception to that duty of care by evidence going to "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved."  *Dix*, 56 Cal. App. 5th at 610, quoting *Rowland v. Christian*, 69 Cal. 2d 108, 113 (1968).  The facts as alleged plausibly demonstrate Defendants' duty of care and breach of it for pleading purposes in the face of the overreaching Motion.

**C.    The Fifth And Sixth Claims For Relief Sufficiently Allege, Respectively, Intentional And Negligent Misrepresentation.**

An intentional misrepresentation claim must allege (1) a misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance, (4) actual and justifiable reliance, and (5) resulting damage.  *Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 230-31 (2013), citing *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996).  The

-9-

same elements apply to a negligent misrepresentation claim, except that knowledge

of falsity becomes a misrepresentation with no reasonable grounds to believe its

truth. *Id.* at 231, citing *Gagne v. Bertran*, 43 Cal. 2d 481, 488 (1954).

Defendants argue that the 4AC does not plead these claims adequately under

Fed. R. Civ. P. 9(b).[3]   The rule requires "the circumstances constituting fraud or

mistake [to] be stated with particularity," but "[m]alice, *intent*, *knowledge*, and

other *conditions of a person's mind may be alleged generally*." *Id.* (emphases

added).  Defendants concede that the 4AC adds the requisite detail of "who, what,

when, where and how," but contend that plaintiffs fail to state how "any specific

representation was *false when it was made*."  Mtn. at 12:9-10 (emphasis in original,

citation omitted).  The 4AC on its face belies this and meets the pleading standard.

First, Defendants promised that Verified Fans from Taylor Swift's shelved

2020 "Lover Fest" tour – consisting of "many" of the 290 plaintiffs who became

Verified Fans with access codes for "The Eras" tour at issue in this case – would

get "preferred access" over "Eras" tour Verified Fans, as their "spot in line will be

based on your total boosts from the previous … campaign."  4AC at 61:3-62:4 and

Exs. F, K.  They similarly assured 37 Verified Fans who bought merchandise with

the release of Ms. Swift's "Midnights" album. *Id.* at 62:5-17, 63:27-28.  Neither

happened, though, for the plaintiffs who thought based on Defendants' promises

that they would have an advantage over other Verified Fans. *Id.* 63:21-28.

The 4AC alleges that when Defendants made these promises, they knew of

their falsity or had no reasonable basis to believe their truth. *Id.* at 63:19-20, 67:6-

9.  Moreover, Defendants admitted that *only* Verified Fans got tickets, but did not

---

[3] They also spend five lines contending that the economic loss rule bars these
claims as well.  Mtn. at 11:20-12:2.  However, *Robinson Helicopter*, *supra*, rejects
this notion as to such claims specifically.  34 Cal. 4th at 991.  *See also Jacobs v.
Sustainability Partners LLC*, 2020 WL 5593200, at *15 (N.D. Cal. Sept. 18, 2020)
(a "claim for fraudulent inducement … suffic[es] to trigger an exception to the
economic loss rule"), citing *Lazar v. Superior Ct.*, 12 Cal. 4th 631, 638 (1996).

distinguish between those who had a boost and those who did not.  *Id.* at 64:5-7
and Exs. M at 3 and O at 2 ("All 2 million tickets for the Verified Fan onsale were
sold to Verified Fans").  That Verified Fans got tickets whether or not boosted, and
boosted Verified Fans (such as most plaintiffs herein) did not, evinces an utter lack
of concern on Defendants' part as to what, or whether they ever intended to act as,
they had promised – as opposed to a good faith intent to perform as promised and
then finding themselves unable to do so for some innocent reason.

The same considerations apply to Defendants' promise that "[o]nly fans who
have been verified and invited to shop by receiving an access code [would] have
the opportunity to purchase tickets" during the Verified Fan Presale.  *See* 4AC at
64:1-4 and Ex. F at 5.  Defendants admitted that some Verified Fans without codes
got tickets, having changed the Ticketmaster blog to say that only Verified Fans
got tickets when it previously had said that only Verified Fans *with codes* did.  *Id.*
at 64:5-7 and Exs. M at 3, O at 2.  That some Verified Fans without codes gained
access to and bought tickets while others *with* codes could not even get in again
more strongly supports an intent not to perform as and when promised – more so
than, for example, not giving out codes beyond a certain number of sign-ups and
then allowing only those *with* codes the opportunity to buy tickets.

The 4AC also alleges that bots disrupted the presale despite representations
that Defendants created the Verified Fan process to get tickets "into the hands of
fans who want to attend the show and … out of the hands of bots."  *Id.* at 64:14-15.
That pleaded fact – admitted by Defendants, *id.* Exs. P, T – shows that Defendants
knew or at least should have known that their promises to keep out bots and their
repeated touting of their security technology (*e.g. id.* Ex. V) falsely portrayed what
they could and ultimately did do when it came to The Eras Tour presale.

As to the truncated Capital One presale and the aborted general onsale, the
4AC alleges facts regarding standards in the industry for holding back tickets that
would lead concertgoers to expect and rely on such tiered offerings.  *Id.* at 63:6-18.

Had they intended to allow such sales as promised, Defendants could have acted as they had represented and allotted tickets for each tranche of sales. That they did not indicates they did not intend such sales or care whether they provided them.

Plaintiffs thus sufficiently "allege[ ] generally" Defendants' knowledge of falsity. Further, specificity gets "relaxed as to matters within the opposing party's knowledge…. [I]n cases of corporate fraud, plaintiffs will not have personal knowledge of all of the underlying facts…. To overcome such difficulties in cases of corporate fraud, the allegations should include the *misrepresentations themselves* with particularity …." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) (emphasis added, quotations and citations omitted). *See also Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480, 493-94 (9th Cir. 2019) ("[U]nder the more rigid pleading standard of Federal Rule of Civil Procedure 9, however, the pleader is not required to allege facts that are peculiarly within the opposing party's knowledge, and allegations based on information and belief may suffice, so long as … accompanied by a statement of facts upon which the belief is founded") (quotations and citations omitted).

Plaintiffs do allege Defendants' misrepresentations with particularity, and their intent to the degree the law requires. Defendants, by contrast, cite nonbinding District Court rulings that cite California authority requiring facts creating a triable issue on summary judgment, not at the pleading stage. *See*, *e.g.*, *UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1108 (C.D. Cal. 2015), citing *Tenzer v. Superscope, Inc.*, 39 Cal. 3d 18, 30-31 (1985) (noting that plaintiff must "adduce[ ] … evidence of fraudulent intent" other than "proof of nonperformance" to "reach a jury," and reversing summary judgment against plaintiff). The facts alleged reflect that Defendants gave, repeated and reinforced bold assurances about The Eras and other tours' Verified Fan programs that they performed at times but not with respect to plaintiffs. Such allegations circumstantially establish intent not to perform or knowledge of falsity when Defendants promised and represented as

they did.  *See, e.g., Aliya Medcare Fin., LLC v. Nickell*, 156 F. Supp. 3d 1105, 1125 (C.D. Cal. 2015) (allegation supports inference of knowledge of falsity when representation made, denying 12(b)(6) motion); *Dallas & Lashmi, Inc. v. 7-Eleven, Inc.*, 112 F. Supp. 3d 1048, 1058-59 (C.D. Cal. 2015) (denying motion to dismiss promissory fraud claim as allegations of later conduct supported inference of intent not to perform when promised), quoting *Miller v. Nat'l Amer. Life Ins. Co. of Cal.*, 54 Cal. App. 3d 331, 338 (1976) (intent not to perform a promise can be "inferred from … subsequent conduct"), *Tenzer*, 39 Cal. 3d at 30 ("intent has been inferred from such circumstances as ... hasty repudiation of the promise, … failure even to attempt performance, or … continued assurances ….").

**D.    The Seventh Claim Factually Pleads All Contractual Elements.**

Defendants accurately articulate the factors for breach of contact: (1) the contract, (2) plaintiffs' performance or excuse for not performing, (3) Defendants' breach, and (4) resulting damages.  Mtn. at 14:25-28 (citation omitted).  They recognize that the 4AC pleads the contract element as the Ticketmaster terms of use amended by later communications and course of dealing resulting in different sets of terms for certain numbers of specifically identified plaintiffs.  *Id.* at 15:3-16:2.  Yet, they characterize two contracts as inadequately pled, another with no breach plausibly alleged, and the last as "vague and conclusory."  *Id.* at 16:3-17:2.

In the first contract, Ticketmaster promised "Verified Fans with codes first access to tickets … on November 15, 2022," which applied to 290 plaintiffs.  4AC ¶ 483b and Exs. F at 4-5, H.  However, it admitted selling to Verified Fans *without* codes on that date.  *Id.* ¶ 484a and Ex. M at 3.  The Motion argues only the absence of a contract promising no bots, but completely ignores the express requirement of a code that Ticketmaster breached.  Mtn. at 16:4-11.

The second contract promised access to Capital One cardholders after the presale, which Ticketmaster did not provide for 101 plaintiffs.  4AC ¶¶ 475b, 483c

-13-

and Exs. F-1 at 3, X, Y.  Again, Defendants focus on the bot issue rather than the breach of their express promise of access to cardholders.  Mtn. at 16:4-11.

The third contract promised 37 plaintiffs "preferred access" and a "boost … in line" to acquire Eras Tour tickets.  4AC ¶¶ 475c, 483d and Exs. F at 2, I-L.  The Motion argues that these terms cannot support a contract because plaintiffs do not explain what they understood them to mean.  Mtn. at 16:12-17.  But they do; they expected that prior "boosts" would put them ahead of all other Verified Fans.  4AC at 35:15-16.  Unless every successful ticket buyer had such boosts and preferred access over every other Verified Fan, 37 plaintiffs validly claim breach.

Finally, three plaintiffs actually bought tickets that Ticketmaster simply took out of their accounts afterwards.  4AC ¶ 483a.  While one can hardly imagine a clearer allegation, Defendants call it "vague and conclusory" because it does not include the terms of the purchases.  Mtn. at 16:20-17:2.  Yet it makes no difference whether they paid $2 or $2,000, for one ticket or half a dozen, for Yankee Stadium or Timbuktu Hyena Flats; three plaintiffs did everything they needed to do, and in fact got their tickets, consummating their deal on whatever terms they got.  That Defendants snatched them back states a claim for breach, if not larceny.

**E.  The 4AC Sufficiently Pleads Inadequacy Of Legal Remedy On Its Eighth Claim Under Cal. Bus. & Prof. Code § 17200 *et seq.***

"[T]he unfair competition law (Bus. & Prof. Code, § 17200 et seq.) … prohibits anything that can properly be called a business practice and that at the same time is forbidden by law.  As a result, to state a claim under [the UCL] …, plaintiff must establish that the practice is either unlawful (i.e., is forbidden by law), unfair (i.e., harm to victim outweighs any benefit) or fraudulent (i.e., is likely to deceive members of the public)."  *Albillo v. Intermodal Container Servs., Inc.*, 114 Cal. App. 4th 190, 206 (2003) (quotations and citations omitted).  The Motion does not challenge any of the three UCL prongs substantively.  Rather, it argues that the claim fails because it does not establish an inadequate remedy at law.

-14-

Plaintiffs allege that they frequently attend concerts and that damages cannot make them whole because they will have to deal with Defendants' unlawful, unfair and fraudulent practices well into the future unless the Court enjoins such conduct. 4AC ¶ 492. That includes the threatening venues and making exclusive deals that drive up the price of tickets, and the failure to implement available technology to prevent the kind of debacle that plaintiffs experienced here. The Court has the power to grant such relief, on which one cannot accurately place a dollar value. Plaintiff thus plead their lack of an adequate remedy at law. *E.g.*, *Roberts v. Colorado State Bd. of Agric.*, 998 F.2d 824, 833 (10th Cir. 1993).

### F.    The Court Should Allow Plaintiffs to Amend If Needed.

If the Court grants any part of the Motion, it should allow amendment. "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). This policy of the Federal Rules "is to be applied with extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir.1990).

A district court granting a motion to dismiss "should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment." *Carey v. J.A.K.'s Puppies, Inc.*, No. 5:21-CV-02095-WLH-DTB, 2025 WL 368973, at *15 (C.D. Cal. Jan. 27, 2025), citing Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). It considers whether plaintiff has unduly delayed, displayed bad faith or dilatory motive or repeatedly failed to cure deficiencies by amendments allowed earlier, and whether amendment would unduly prejudice the opposing party or be futile. *Id.* (factors stated in *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

The 4AC represents the first substantive amendment plaintiffs have made to their pleading. The Court has an obligation to apply the test for amendment and cannot deny leave to amend unless it finds – which it cannot – that "the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (reversing dismissal, requiring leave to amend).

1

## IV.    CONCLUSION

2        For the foregoing reasons, the Motion should be denied.  Plaintiffs have

3   more than plausibly stated facts sufficient for each of its claims for relief, and

4   should get leave to amend should any minor issues remain.

5   DATED:  October 2, 2025                    Respectfully submitted,

6

7                                        ___/s/ John Genga_____

8                                             John M. Genga
                                        GENGA & ASSOCIATES, P.C.

9                                        Attorneys for Plaintiffs
                                        JULIE BARFUSS *et al.*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>CERTIFICATE OF WORD COMPLIANCE</u>

2

The undersigned, counsel of record for plaintiffs Julie Barfuss, *et al.*, hereby

3

certifies that the foregoing memorandum contains 5,611 words, which complies

4

with the word limit of Local Civil Rule 11-6.1.

5

DATED:  October 2, 2025              ___/s/ John Genga_____

6

John M. Genga

7

GENGA & ASSOCIATES, P.C.
Attorneys for Plaintiffs

8

JULIE BARFUSS *et al.*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-17-