UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 23-1114-GW-DTBx** | Date | May 8, 2026 |
|---|---|---|---|
| Title | ***Julie Barfuss, et al. v. Live Nation Entertainment, Inc., et al***. | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | None Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:        IN CHAMBERS - ORDER RE DEFENDANTS' PARTIAL MOTION TO
DISMISS THE FIFTH AMENDED COMPLAINT**

Upon hearing oral argument on Defendants' Partial Motion to Dismiss the Fifth Amended Complaint ("5AC") (the "Motion"), *see* Docket No. 186, reviewing Defendants' supplemental brief in support of their Motion ("Defendants' Supp."), *see* Docket No. 197, and further consideration of the issues presented, the Court sees no reason to depart from the reasoning set forth in its Tentative Ruling. *See generally* Tentative Ruling, Docket No. 194. At this time, the Court would clarify its findings with respect to the two contract theories Defendants seek to dismiss from the 5AC.

As to Contract 445(b), the Court described in its Tentative Ruling (and at the hearing on the Motion) the various issues it had with the manner in which Plaintiffs have chosen to plead breach of this contract. *See id.* at 6-8. One particular issue raised by Defendants in their Motion relates to Plaintiffs' incorporation of Exhibit M, *see* Exhibit M, Docket No. 185-14, into the 5AC. Plaintiffs had alleged that "Ticketmaster allowed users without codes to participate in and buy tickets during the Verified Fan Presale, in breach of its promise to ***290 plaintiffs*** that it would not do that." 5AC ¶ 446(b) (emphasis in original) (citing Ex. M at 3). Defendants aver that "Plaintiffs' allegation of breach of the alleged 5AC ¶ 445(b) contract is based solely on a purported 'admission' that Ticketmaster supposedly made in Exhibit M, which was attached to the 5AC." Defendants' Supp. at 1; *see* Tentative Ruling at 7 (describing Plaintiffs' interpretation of Exhibit M). Both Defendants and this Court observed, however, other language contained in Exhibit M that appears to directly contradict this admission. *See* Ex. M at 3 (indicating that "ticket buyers also had to enter their unique code to complete their purchase"). In short, Plaintiffs' allegation that "Ticketmaster allowed users without codes to . . . *buy* tickets during the Verified Fan Presale" is contradicted by language contained in Exhibit M because the ability to complete a purchase required a code.

Upon further consideration of the rest of the allegations in the 5AC and construing the 5AC in the light most favorable to Plaintiffs, however, the Court finds that there is no contradiction by Exhibit M with

1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 23-1114-GW-DTBx** | | Date | May 8, 2026 |
|---|---|---|---|---|
| Title | ***Julie Barfuss, et al. v. Live Nation Entertainment, Inc., et al***. | | | |

respect to the allegation that "Ticketmaster allowed users without codes to *participate* in . . . the Verified Fan Presale." To take a step back, it is certainly plausible that there was a breach of Contract 445(b) if users without codes (or bots) gained *access* to the presale such that Verified Fans with codes were not afforded the "first access to tickets" – or the opportunity to purchase tickets ahead of users without such codes – that they were promised. It is expressly indicated in Exhibit M that there was a "staggering number of bot attacks as well as fans who didn't have invite codes [that] drove unprecedented traffic on [Ticketmaster's] site, resulting in 3.5 billion total system requests." Ex. M at 2. There is no language in Exhibit M that indicates that only Verified Fans *with* codes gained access to the presale; rather, the exhibit provides that "[n]o one who wasn't verified was allowed to enter the queue, but the huge traffic hitting the site overall meant we had to slow down queues to keep them stable." *Id.* at 3. As such, consistent with the 5AC, individuals (or entities) other than Verified Fans with codes were allowed to join the queue and "participate in . . . the Verified Fan Presale." *See* 5AC ¶ 446(b). The Court noted in its Tentative Ruling that "if any tickets were in fact initially sold to persons who were not Verified Fans with codes (or, heaven forbid, any bots) *or if such persons/bots were allowed to participate in the presales*, then it could be contended that Contract 445(b) was breached." *See* Tentative Ruling at 8 (emphasis added). The Court acknowledges the authorities cited by Defendants in their supplemental brief that suggest Plaintiffs may not deliberately omit parts of exhibits upon which their claims are based. *See* Defendants' Supp. at 2-3. Although Exhibit M contradicts certain allegations in the 5AC related to Contract 445(b), it does not render Plaintiffs' breach of contract claim as to this contract entirely impossible. Plaintiffs most certainly could have pled their breach of contact claim as to Contract 445(b) with greater precision and specificity, but the Court finds that there are sufficient allegations in the 5AC to render this claim plausible.

As to Contract 445(c), however, the Court finds that Plaintiffs cannot plead a plausible breach of contract claim. The Court previously took issue with Plaintiffs' failure to allege the nature of "preferred access" when it dismissed this contract theory from the Fourth Amended Complaint ("4AC"). *See* Docket No. 176, at 22 (citation omitted). It had been specifically alleged in the 4AC that a "boost," for example, meant "some enhanced access beyond Verified Fan status alone." *See* Docket No. 168, at ¶ 408. The allegations in the 5AC do not clarify this access any further. At the hearing on the Motion, Plaintiffs appear to have changed their contract theory by suggesting that the promise of "preferred access" or a "boost . . . in line" was tantamount to the promise of a code. The Court finds that this theory – which was neither pled in the 5AC nor expressly raised in Plaintiffs' brief in opposition to the Motion – has no merit. Plaintiffs do not identify any allegation in the 5AC or language in the exhibits attached that suggests satisfying the criteria for "preferred access" or a "boost" guaranteed Verified Fans a code for the presale. In their opposition brief to the Motion, Plaintiffs argued that "preferred access" meant "a 'higher' or 'better' 'position' than the Verified Fans . . . who were not Lover Fest Verified Fans" – that is, Verified Fans without "preferred access." *See* Docket No. 189, at 6. Although this argument is certainly consistent with the allegation that such access meant "some enhanced access beyond Verified Fan status alone," *see* 5AC ¶ 408, Plaintiffs cannot now argue that it also meant the guarantee of a code. Because the Court still does not understand what exactly was promised, it also does not understand how Contract 445(c) was breached. In other words, Plaintiffs' repeated failure to precisely articulate "(1) the nature of the 'preferred access' or 'boost' promised; and (2) how thirty-seven plaintiffs allegedly did not get what was promised" renders not plausible their breach of contract claim as to Contract 445(c). *See* Tentative Ruling at 11 (footnote

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 23-1114-GW-DTBx** | Date | May 8, 2026 |
|---|---|---|---|
| Title | ***Julie Barfuss, et al. v. Live Nation Entertainment, Inc., et al.*** | | |

omitted).

In sum, the Court **DENIES** the Motion as to Contract 445(b) and **GRANTS** without leave to amend the Motion as to Contract 445(c).

**IT IS SO ORDERED.**

3